1  IJay Palansky (SBN 187917)                    Stephen J. Siegel (*pro hac vice*)
   ipalansky@atllp.com                           ssiegel@atllp.com
2  ARMSTRONG TEASDALE LLP                        Yvette Mishev (*pro hac vice*)
   4642 S. Ulster Street, Suite 800              ymishev@atllp.com
3  Denver, Colorado 80237                        Elizabeth C. Wolicki (*pro hac vice*)
   (720) 200-0676                                ewolicki@atllp.com
4                                                Jack C. Butz (*pro hac vice*)
                                                 jbutz@atllp.com
5  Dana J. Finberg (SBN 257459)                  ARMSTRONG TEASDALE LLP
   dfinberg@ohaganmeyer.com                      100 North Riverside Plaza
6  O'HAGAN MEYER, LLC                            Chicago, IL 60606
   One Embarcadero Center, Suite 2100            (312) 419-6900
7  San Francisco, CA 9411
   (415) 578-6902
8

9  *Attorneys for Defendant Dr. Brown's Company*
10 *f/k/a Handi-Craft Company, Inc.*

11

12                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**

13 TULIISA MILLER, et al.                    )
                                            )
14                         Plaintiffs,       )
                                            )   Case No. 24-cv-03782-YGR
15         v.                                )
                                            )   **DEFENDANT'S MOTION TO DISMISS**
16 HANDI-CRAFT COMPANY, INC.                )   **AND MOTION TO STRIKE**
                                            )
17                          Defendant.       )
                                            )   Hearing Date: October 15, 2024
18                                          )   Hearing Time: 2:00 p.m.
                                            )   Courtroom: 1 – 4th Floor
19                                          )   Judge: Hon. Yvonne Gonzalez Rogers

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ......................................................................................... 1

ISSUES FOR THE COURT'S DECISION ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

A.   Microplastics Are "Inescapable," And Their Effects Are Uncertain, At Best ..................... 2

B.   Plaintiffs' Theory And Claims .................................................................. 3

LEGAL STANDARD .......................................................................................... 5

ARGUMENT ....................................................................................................... 5

I.   Counts One, Two And Three Fail On Multiple Grounds. ............................... 5

    A.   The Labels' Statements Are Not False, Deceptive, Or Misleading. ....................... 5

    B.   The Complaint Fails To Allege That The Products Pose Either An "Unreasonable Safety Hazard" Or A Defect "Central To The Product's Function." ...................... 8

        1.   The microplastics issue is not "central to the product's function." ............ 8

        2.   The Complaint does not allege an "unreasonable safety hazard." .............. 9

    C.   The Complaint Fails To Allege Defendant Knew Or Should Have Known That The Products Released Microplastics Or That Any Such Microplastics Caused Harm, As Required To Plead CLRA, UCL, Or FAL Claims. ...................... 12

    D.   Count One's "Unfair" And "Unlawful" UCL Claims Fail. ....................... 14

    E.   The CLRA Demand Letter Is Defective, Defeating Count Three. ................ 15

    F.   Count Three Does Not Allege The Intent Element Of A CLRA § 1770(a)(9) Claim. ...................... 15

II.   Count Four (Breach Of Warranty) Fails On Several Grounds. ........................ 15

i

A.    The Express Warranty Claim Should Be Dismissed Because There Was Neither A Breach Nor Any Pre-Suit Notice. ........................................ 15

    1.  No express warranty was breached. ............................................. 15

    2.  Plaintiffs did not provide the required pre-suit notice................... 16

B.    The Implied Warranty Claim Fails Because The Products Are Merchantable And Plaintiffs Are Not In Privity With Defendant. ...................... 17

III.    Count Five's Unjust Enrichment Claim Should Be Dismissed........................................... 18

    A.    The Parties' Rights Are Governed By Contract. ..................................... 18

    B.    The Unjust Enrichment Claim Must Be Dismissed If The Other Claims Are Dismissed. ................................................................. 18

IV.    Plaintiffs Lack Standing To Assert Claims Relating To Products They Did Not Purchase............................................................................................ 19

V.    Plaintiffs Lack Standing To Seek Injunctive Relief Because There Is No Reasonable Likelihood Of Future Injury.......................................................... 20

VI.    The Court Should Strike The Complaint's Requests To Certify Nationwide Breach Of Warranty And Unjust Enrichment Classes. .................................................. 21

    A.    Material Differences In the 50 States' Laws Preclude Certifying A Nationwide Unjust Enrichment Class. ...................................................... 22

    B.    The Court Should Strike The Complaint's Requests For Nationwide Express And Implied Warranty Classes On Similar Grounds. ............................ 23

CONCLUSION..................................................................................................... 23

Defendant's Motion To Dismiss And Motion To Strike
Case No. 24-cv-03782-YGR

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

<u>Cases</u>

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................. 12, 13

*Allen v. ConAgra Foods, Inc.*,
   331 F.R.D. 641 (N.D. Cal. 2019)........................................................................... 22, 23

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) .......................................................................... 16, 17, 18

*Ang v. Bimbo Bakeries USA, Inc.*,
   2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)...................................................... 19, 20

*Arroyo v. Chattem, Inc.*,
   926 F. Supp. 2d 1070 (N.D. Cal. 2012) ..................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................... 5

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015).............................................................................. 23

*Brown v. Nature's Path Foods, Inc.*,
   No. 21-cv-05132-HSG, 2023 WL 2699978 (N.D. Cal. Mar. 29, 2023) ................... 19

*Bruton v. Gerber Prods. Co.*,
   703 F. App'x 468 (9th Cir. 2017) ........................................................................ 14, 15

*Camey v. Force Factor, LLC*,
   No. 14-14717-RWZ, 2016 WL 10998440 (D. Mass. May 16, 2016).................... 23, 24

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
   631 F.3d 939 (9th Cir. 2011) .................................................................................... 20

*Clark v. Am. Honda Motor Co.*,
   No. CV20-03147 AB (MRWx), 2021 WL 4260232 (C.D. Cal. Sept. 14, 2021) ...................... 18

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ................................................................. 17

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ................................................................... 23

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
   No. 16-CV-02941-LHK, 2017 WL 86033 (N.D. Cal. Jan. 10, 2017) ............................... 12, 13

*Corbett v. PharmaCare U.S., Inc.*,
   567 F. Supp. 3d 1172 (S.D. Cal. 2021) ...................................................... 15

*Correia v. Johnson & Johnson Consumer Inc.*,
   No. CV 18-9918 PSG (ASX), 2019 WL 2120967 (C.D. Cal. May 9, 2019) .......................... 7

*Cortina v. Goya Foods, Inc.*,
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) ....................................................... 17

*Crown Cell Inc. v. Ecovacs Robotics Inc.*,
   No. 21-CV-07890-SI, 2022 WL 4087512 (N.D. Cal. Sept. 6, 2022) ............................. 17

*Darisse v. Nest Labs, Inc.*,
   No. 5:14-CV-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) .......................... 24

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................... 5, 6

*Granfield v. NVIDIA Corp.*,
   2012 WL 2847575 (N.D. Cal. July 11, 2012) ................................................. 19

*Grausz v. Hershey Co.*,
   691 F. Supp. 3d 1178 (S.D. Cal. 2023) ..................................................... 8, 10

*Grausz v. Hershey Co.*,
   No. 23-CV-00028-AJB-SBC, 2024 WL 312688 (S.D. Cal. Jan. 25, 2024) .......................... 5

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................................................... 7

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................................................... 5

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
   No. 23-CV-03862-HSG, 2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) ........................... 10, 17

*Hensley-Maclean v. Safeway, Inc.*,
   No. CV 11-01230 RS, 2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) ........................................ 12

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ................................................................................................ 8, 9

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) .................................................................................................. 24

*In re PFA Ins. Mktg. Litig.*,
   696 F. Supp. 3d 788 (N.D. Cal. 2021) ....................................................................................... 20

*In re Plum Baby Food Litig.*,
   No. 4:21-cv-00913-YGR, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024) ...................... passim

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
   No. CV-16-1442 PSG (MRWx), 2017 WL 4676585 (C.D. Cal. Oct. 10, 2017) ............... 18, 19

*In re Sony PS3 "Other OS" Litig.*,
   551 F. App'x 916 (9th Cir. 2014) ............................................................................................. 15

*In re Trader Joe's Co. Dark Chocolate Litig.*,
   2024 WL 1319725 .................................................................................................... 8, 9, 10, 11

*Joslin v. Clif Bar & Co.*,
   No. 18-cv-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ............................. 20, 21

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .................................................................................................. 11

*Kowalsky v. Hewitt-Packard Co.*,
   771 F. Supp. 2d 1156 (N.D. Cal. 2011) ..................................................................................... 12

*Lam v. General Mills, Inc.*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) ................................................................................... 6, 7

*Lee v. Nature's Path Food, Inc.*,
   No. 23-CV-00751-H-MSB, 2023 WL 7434963 ................................................................. 17, 18

*Lengen v. Gen. Mills, Inc.*,
   185 F. Supp. 3d 1213 (E.D. Cal. 2016) ...................................................................................... 17

*Lopez v. Johnson & Johnson*,
   654 F. Supp. 3d 997 (C.D. Cal. 2023) ....................................................................................... 17

*Maloney v. Microsoft Corp.*,
   Civ. No. 09-2047, 2011 WL 5864064 (D.N.J. Nov. 21, 2011) ................................................ 23

*May v. Makita U.S.A., Inc.*,
   No. 1:22-CV-79-SNLJ, 2023 WL 3619354 (E.D. Mo. May 24, 2023)............................. 15, 16

*Miller v. Ford Motor Co.*,
   620 F. Supp. 3d 1045 (E.D. Cal. 2022).................................................................................. 13

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ................................................................................................ 6, 8

*Moreno v. Vi-Jon, LLC*,
   No. 20cv1446 JM (BGS), 2023 WL 4611823 (S.D. Cal. July 18, 2023) ................................ 6

*Nilsen v. Tesla, Inc.*,
   No. 22-CV-07472-BLF, 2023 WL 7346071 (N.D. Cal. Nov. 6, 2023)................................... 16

*Olmos v. T. Marzetti Co.*,
   No. LACV21-03159 JAK (MRWx), 2022 WL 18358950 (C.D. Cal. Oct. 11, 2022)............. 18

*Organic Cannabis Found., LLC v. Commissioner of Internal Revenue*,
   962 F.3d 1082 (9th Cir. 2020) .............................................................................................. 3

*Panacci v. A1 Solar Power, Inc.*,
   No. 15-CV-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15, 2015) ........................... 21, 22

*Phan v. Sargento Foods, Inc.*,
   No. 20-CV-09251-EMC, 2021 WL 2224260 (N.D. Cal. June 2, 2021) ................ 21, 22, 23, 24

*Pistacchio v. Apple Inc.*,
   No. 4:20-CV-07034-YGR, 2021 WL 949422 (N.D. Cal. Mar. 11, 2021).............................. 22

*Rugg v. Johnson & Johnson*,
   No. 17-CV-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) ..................... 15, 16, 17

*Shu v. Toyota Motor Sales USA, Inc.*,
   669 F. Supp. 3d 888 (N.D. Cal. 2023) .................................................................................. 15

*Shubin v. Universal Vacation Club*,
   622 F. Supp. 3d 849 (C.D. Cal. 2022),
   *aff'd*, No. 23-55016, 2024 WL 1367176 (9th Cir. Apr. 1, 2024)  ......................................... 16

*Silverman v. Wells Fargo & Co.*,
   No. 18-CV-03886-YGR, 2018 WL 6046209 (N.D. Cal. Nov. 19, 2018)............................... 18

*Slowinski v. Bluetriton Brands, Inc.*,
  No. 24-CV-513, 2024 WL 3757097 (N.D. Ill. Aug. 9, 2024) ......................................... 2, 7, 21

*Smith v. Allmax Nutrition, Inc.*,
  No. 1:15-CV-00744-SAB, 2015 WL 9434768 (E.D. Cal. Dec. 24, 2015) .............................. 18

*Smith v. General Motors LLC*,
  988 F.3d 873 (6th Cir. 2021) ......................................................................... 13

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .......................................................................... 5

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................... 13, 14

*Tromble v. W. Digital Corp.*,
  No. 4:20-CV-08102-YGR, 2021 WL 2165796 (N.D. Cal. May 27, 2021) ............................. 22

*Tsonev v. Kia Motors Am., Inc.*,
  No. SACV 16-01020-CJC(DFMx), 2016 WL 10000244 (C.D. Cal. Nov. 9, 2016) ............... 24

*United States ex rel. Lesnik v. Eisenmann*,
  No. 16-CV-01120-LHK, 2021 WL 4267904 (N.D. Cal. Sept. 19, 2021) ............................... 11

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .......................................................................... 5

*Vitiosus v. Alani Nutrition*, LLC,
  No. 21-CV-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. July 5, 2022) ..................... 6, 7

*Watkins v. MGA Ent., Inc.*,
  574 F. Supp. 3d 747 (N.D. Cal. 2021) .............................................................. 18

*Williams v. Apple, Inc.*,
  449 F. Supp. 3d 892 (N.D. Cal. 2020) .............................................................. 14

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ........................................................................ 12

*Young v. Neurobrands, LLC*,
  No. 18-CV-05907-JSW, 2020 WL 11762212 (N.D. Cal. Oct. 15, 2020) ............................... 24

## Statutes

Cal. Bus. & Prof. Code § 17200 ............................................................................ 15
Cal. Civ. Code § 1770(a) ...................................................................................... 16
Cal. Civ. Code § 1782(a)(2) ................................................................................. 15
Cal. Com. Code § 2313 ................................................................................... 16, 17
Cal. Civ. Code § 1770(a)(9) .................................................................................. 16
Wis. Stat. Ann. § 100.335 (West) ........................................................................... 7
21 C.F.R. § 177.1520 ............................................................................. 3, 4, 14, 15

## Rules

Federal Rules of Civil Procedure Rule 8, 9(b), 12(b), 12(f), and 23 ........................... 1
Federal Rules of Civil Procedure Rule 23 ................................................................ 2

Defendant's Motion To Dismiss And Motion To Strike
Case No. 24-cv-03782-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **October 15, 2024**, at **2:00 p.m.**, or as soon thereafter as the matter may be heard before the Honorable Judge P. Yvonne Gonzalez Rogers, at Courtroom 1, 4th Floor, Oakland Federal Courthouse, located at 1301 Clay Street, Oakland, CA 94612, Defendant Dr. Brown's Company, f/k/a Handi-Craft Company, Inc. ("Defendant" or "Dr. Brown's"), will, and hereby does, move this Court for an order granting this Motion to Dismiss Plaintiffs' Class Action Complaint and Motion to Strike, pursuant to Federal Rules of Civil Procedure, 8, 9(b), 12(b), 12(f), and 23. The motion is based on this Notice and the Memorandum of Points and Authorities.

## ISSUES FOR THE COURT'S DECISION

1.      Have Plaintiffs stated claims against Dr. Brown's for: (a) violation of the UCL (Count One); (b) violation of the FAL (Count Two); (c) violation of the CLRA (Count Three); (d) breaches of express and implied warranties (Count Four); and (e) unjust enrichment (Count V)?

2.      In light of Plaintiffs now being aware of the subject products' allegedly inherent and readily identifiable problems, do Plaintiffs have standing to seek injunctive relief?

3.      Given the numerous, significant differences across state warranty and unjust enrichment laws, should the Court strike requests to certify nationwide classes for those claims?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Complaint alleges that, when heated, Dr. Brown's polypropylene baby bottles and sippy cups (the "Products"), release potentially dangerous "microplastics." But the foundation of this sprawling "overpayment" consumer fraud class action consists of misrepresentations of the science cited in the Complaint, utterly implausible interpretations of the Products' labels, and multiple other pleading failures.

The Complaint cites no testing showing that Dr. Brown's Products actually release microplastics at all. Even if it included such allegations, the FDA and the materials cited in the Complaint agree that microplastics in food have *not* been demonstrated to pose a health risk—

1

contradicting the Complaint's central premise. Nor does the Complaint address the intractable problem of assigning liability when microplastics are so ubiquitous and "inescapable" that humans constantly ingest and inhale them from countless sources. And the Complaint does not allege that Dr. Brown's knew either that its Products release microplastics or that such releases pose a health risk; indeed, how could it have such "knowledge," when the very articles on which the Complaint relies show that no such link between microplastics and health risks has been established, and the FDA has approved polypropylene for use in food containers?

These foundational defects prevent the Complaint from stating any plausible claim for relief, as another federal court recently held in a stinging dismissal of a similar microplastics case. *Slowinski v. Bluetriton Brands, Inc.*, No. 24-CV-513, 2024 WL 3757097, at *2 (N.D. Ill. Aug. 9, 2024).

Finally, the Court should strike the Complaint's request for certification of nationwide unjust enrichment, implied warranty, and express warranty classes, because—as this Court has repeatedly held with respect to unjust enrichment, *see infra* at pp 22-25—material differences in state laws as to these common law claims preclude satisfaction of Rule 23's requirements.

## BACKGROUND

### A.     Microplastics Are "Inescapable," And Their Effects Are Uncertain, At Best

"Microplastics" are "small particles [of plastic] less than 5 millimeters in diameter." *Compl.* ¶ 17. "Some microplastics are just 1 nanometer. [ ] By point of comparison, a strand of human hair is about 80,000 nanometers wide." *Slowinski*, 2024 WL 3757097, at *2.

Microplastics are ubiquitous. They "have been found in every ecosystem on the planet from the Antarctic tundra to tropical coral reefs." *Id.* They are in food. *Id.* They are in the air. *Id.* They are in tap water. *Id.* at *3. They are "*inescapable.*" *Id.* at *2 (emphasis added).

The Complaint contends that among the multitude of sources of microplastics are goods made of polypropylene plastic, including the Products. *Compl.* ¶¶ 24-25. It also alleges that, over time, ingesting some—unspecified—amount of microplastics "cause[s] long-term health complications for children." *Compl.* ¶ 3. But, as indicated by the materials the Complaint cites,

the science regarding microplastics is new, undeveloped, and highly uncertain. Those materials conclude that, although microplastics "are emerging as a *potential* risk factor … in preclinical studies[,] *[d]irect evidence that this risk extends to humans is lacking.*" Raffaele Marfella et al., *Microplastics and Nanoplastics in Atheromas and Cardiovascular Events,* 390 NEW ENGLAND J. MED. 900–910 (Mar. 6, 2024) (cited in *Compl.* n.4) (emphasis added).

The Complaint's Chicken Little characterization of the risks from microplastics also stands in stark contrast to the FDA's view. The FDA has approved polypropylene for use in food containers. *See* 21 C.F.R. § 177.1520. And, on July 25, 2024—after a recent rash of high-profile microplastics class actions—the FDA released a statement on "Microplastics and Nanoplastics in Foods," stating that:

- "There is not sufficient scientific evidence to show that microplastics … from plastic food packaging migrate into foods and beverages";

- "Current scientific evidence does not demonstrate that levels of microplastics … detected in foods pose a risk to human health"; and

- "[M]any of the scientific studies have used methods of variable, questionable, and/or limited accuracy."[1]

### B.        Plaintiffs' Theory And Claims

The Complaint cites no testing showing that the Products release microplastics. Nor does it make any allegations about the level of microplastics the Products release; whether or how much of any such microplastics were ingested by anyone; whether those levels present a safety risk; or that microplastics from the Products have caused anyone physical harm.

The Complaint's theory is that allegedly deceptive statements on, and omissions from, the Products' labels injured Plaintiffs by causing them to pay "an unwarranted premium." *Compl.* ¶ 83. *First*, the Complaint asserts that Plaintiffs were misled by the labels' express statements that

---

[1]     https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-nanoplastics-foods (last visited August 12, 2024). The Court may take judicial notice of government websites. *Organic Cannabis Found., LLC v. Commissioner of Internal Revenue*, 962 F.3d 1082, 1096 (9th Cir. 2020).

the baby bottles are "#1 Pediatrician Recommended" and the bottles and sippy cups are "BPA Free."[2] The Complaint does not (and cannot) allege these statements are false; rather, the Complaint asserts that the reasonable consumer supposedly (mis)understands the statements to mean that the Products are "*guaranteed ... to not contain harmful substances*" and "*do not pose any risk.*" *Compl.* ¶¶ 5, 6 (emphasis added). In fact, the labels say nothing about "risks," "hazardous substances," "guarantees," or microplastics. The Complaint's constructions of the labels' discrete, clear, and true statements are unsupported by the labels themselves, are implausible on their face, and rest on nothing more than counsel's *ipse dixit*.

*Second*, the Complaint brings omission claims asserting the Products should have included a warning about microplastics. But the Complaint does not plead multiple elements essential to omission claims, including (i) that the Products pose an unreasonable safety hazard, and (ii) facts showing that Defendant knew or should have known that the Products release microplastics and that microplastics pose long-term health risks. Perhaps this is because there is no basis for any such allegations. The FDA has approved polypropylene for use in food containers. *See* 21 C.F.R. § 177.1520. And, as noted above, the FDA has recently taken the unusual step of releasing a statement emphasizing that "[c]urrent scientific evidence does not demonstrate that levels of microplastics … detected in foods pose a risk to human health." *See* n.1, *supra*.

Plaintiffs assert claims for violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumer Legal Remedies Act ("CLRA") on behalf of a putative class consisting of all California residents who purchased the Products during the last four years; and claims for unjust enrichment, and breach of express and implied warranty, on behalf of a putative class consisting of all residents of the United States "within the applicable statute of limitations periods." *Id.* ¶ 49.

---

[2] The Complaint makes the blanket assertion that the "#1 Pediatrician Recommended" and "BPA Free" statements appear on *all* of the Products. *See id.* ¶¶ 5, 23. That is incorrect. As the labels reproduced in the Complaint show, the "#1 Pediatrician Recommended" statement appears only on the baby bottles, not the sippy cups. *See id.* ¶ 9, pp. 7-10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must disregard legal conclusions, even when disguised as facts. *See id.* at 681.

## ARGUMENT

### I. COUNTS ONE, TWO AND THREE FAIL ON MULTIPLE GROUNDS.

#### A. The Labels' Statements Are Not False, Deceptive, Or Misleading.

The primary element of any CLRA, FAL, or UCL claim asserting consumers have been misled is a materially false or deceptive statement or omission. *See, e.g.*, *Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2024 WL 312688, at *3 (S.D. Cal. Jan. 25, 2024); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022). Moreover, "a plaintiff must plead all three claims with particularity as required by [Rule 9(b)]." *Hammerling*, 615 F. Supp. 3d at 1081 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).

The Complaint points to the labels' statements that the bottles are "#1 Pediatrician Recommended" and the Products are "BPA Free." *Compl.* ¶¶ 5-6, *passim*. But it does not (and cannot) allege that either statement is false. Instead, in an effort to plead that the statements (while true) are nevertheless deceptive, the Complaint theorizes that the "#1 Pediatrician Recommended" statement "conveys to consumers … that the Products *do not pose risks*" and that "the reasonable consumer interprets the 'BPA Free' statement to mean the Product is *guaranteed … to not contain harmful substances*." *Id.* ¶¶ 5-6 (emphasis added).

The Complaint offers no factual allegations supporting these inventive interpretations, and they should be rejected. The reasonable consumer test controls interpretation of deceptive marketing claims. To meet this test, a plaintiff "must show that members of the public are *likely* to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotations omitted;

5

emphasis added). "This is not a negligible burden." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). A plaintiff must demonstrate "more than a mere possibility that [a defendant]'s label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a *probability* that a *significant portion* of the general consuming public or of targeted consumers, *acting reasonably* in the circumstances, could be misled." *Ebner*, 838 F.3d at 965 (internal quotation omitted) (emphasis added).[3]

For example, in *Vitiosus v. Alani Nutrition, LLC*, No. 21-CV-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. July 5, 2022), the plaintiffs alleged the labeling of the defendant's "FIT" snack bars was deceptive because it falsely led the plaintiffs to believe the bars had "protein benefits" and would help them lose weight. *Id.* at *14. The court dismissed the CLRA, FAL, UCL, breach of express warranty, and unjust enrichment claims, holding that "the word 'FIT' does not convey anything specific or measurable to the reasonable consumer regarding protein and weight loss…. There is simply no deception in the word 'FIT' regarding the Bars' protein or weight loss benefits such that Plaintiffs can plausibly plead the reasonable consumer would be deceived in these respects." *Id.* at *14-15.

Similarly, in *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012), the plaintiff claimed that "gluten free" labeling on defendant's Fruit Roll-Ups led the plaintiffs to believe they were healthy. *Id.* at 1103. The Court rejected this argument:

> The Court finds that the statement "gluten free" cannot support Plaintiff's claims under the UCL, CLRA, or FAL. The statement is objectively true and communicates nothing more than the absence of gluten in the product…. A reasonable consumer is unlikely to interpret the statement "gluten free" to mean that the Fruit Snacks contain no partially hydrogenated oils, low amounts of sugar or corn-syrup, or that the Fruit Snacks are otherwise healthful.

---

[3] When a complaint's interpretations of marketing representations are unreasonable, "a court can properly make this determination and resolve such claims based on its review of the product packaging [in ruling on a motion to dismiss]." *Moreno v. Vi-Jon, LLC*, No. 20cv1446 JM (BGS), 2023 WL 4611823, at *5 (S.D. Cal. July 18, 2023); *see also, e.g., Moore*, 4 F.4th at 882.

Defendant's Motion To Dismiss And Motion To Strike
Case No. 24-cv-03782-YGR

*Id.* at 1103-04; *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1093–94 (N.D. Cal. 2017) (dismissing CLRA, FAL, and UCL claims because no reasonable consumer would interpret the statement 'MADE WITH Real Fruit' to indicate the absence of trans fats).

Finally, in a microplastics case similar to this one, the *Slowinski* court pulled no punches. As a matter of law, it rejected the plaintiffs' theory that the statement "100% Natural Spring Water" on the defendant's water bottles meant that the water was free of microplastics, finding that "[n]o reasonable consumer would … think that [bottled water manufacturers] w[ere] making a guarantee at the molecular level," and "[n]o reasonable consumer would expect a disclosure about the presence of microscopic particles." *Slowinski*, 2024 WL 3757097, at *13-14. The court concluded: "At the end of the day, microplastics are in just about everything.…When simply breathing air puts you at risk of inhaling microplastics, it's unreasonable to assume that your spring water won't have any microplastics." *Id.* at *14.

The holdings and reasoning of *Vitiosus*, *Lam*, *Hadley*, and *Slowinski* apply here. Just as "gluten free" on a label "communicates nothing more than the absence of gluten in the product," *Lam*, 859 F. Supp. 2d at 1103-04, the term "BPA Free" communicates nothing more than the absence of BPA.[4] And just as the word "FIT" conveyed nothing regarding the product's protein content or weight loss, *Vitiosus*, 2022 WL 2441303, at *14, the Complaint's construction of "#1 Pediatrician Recommended" to be tantamount to a guarantee that "the Products do not pose risks," *Compl.* ¶ 5, impermissibly "invents … misrepresentation[s] that Defendant did not make." *Correia v. Johnson & Johnson Consumer Inc.*, No. CV 18-9918 PSG (ASX), 2019 WL 2120967, at *4 (C.D. Cal. May 9, 2019).

In an effort to plead a misrepresentation claim, the Complaint stretches the labels' meanings far past their breaking points. Contrary to the Complaint's interpretations, the labels do not mention "risks," "harmful substances," or any "guarantee," much less microplastics

---

[4] At least one state *requires* baby bottle and sippy cup labels to state that the bottles are BPA free. *See* Wis. Stat. Ann. § 100.335 (West) ("A manufacturer or wholesaler who sells … a child's container … shall ensure the container is conspicuously labeled as not containing [BPA]").

specifically. *See Compl.* ¶ 9. Put simply, the statements do not say what the Complaint claims they do. The statements are precise, clear, and true, and cannot serve as the basis for Plaintiffs' claims. *See Moore*, 4 F.4th at 882 (affirming dismissal of deceptive labeling claims, noting "a plaintiff's unreasonable assumptions about a product's label will not suffice").

**B.      The Complaint Fails To Allege That The Products Pose Either An "Unreasonable Safety Hazard" Or A Defect "Central To The Product's Function."**

To plead a deception claim under the CLRA, UCL, or FAL, a complaint must allege, *inter alia*, "either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material [and] central to the product's function.'" *In re Plum Baby Food Litig.*, No. 4:21-cv-00913-YGR, 2024 WL 1354447, at *4 (N.D. Cal. Mar. 28, 2024) (*Rogers, J.*); *In re Trader Joe's Co. Dark Chocolate Litig.*, 2024 WL 1319725, at *10; *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1194 (S.D. Cal. 2023). The Complaint satisfies neither requirement.

**1.      The microplastics issue is not "central to the product's function."**

Briefly addressing the second factor first, the Complaint does not allege—even in conclusory form—that the "defect [is] … central to the product's function." *Id.*

Nor could the Complaint make any such allegation. "To satisfy the 'central function' prong, plaintiffs must establish that the defect renders the product 'incapable of use by any consumer'" *In re Plum Baby Food Litigation*, 2024 WL 1354447, at *6 (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018)).[5] The Products' functions are to deliver milk, formula, or other liquids to children, and there is no allegation that a release of microplastics impairs, let alone "renders … incapable," any such use. *Id.* This case parallels *In re Plum Baby Food*, where this Court held that the presence of heavy metals was not a defect central to the function of defendant's baby food because, "even if consumers find the presence of these trace

---

[5] *In re Plum Baby Food* was decided on a motion for summary judgment, but the standard and analysis are equally applicable on a motion to dismiss. A plaintiff must allege facts showing that the product was incapable of use.

contaminants to be of material concern, the Baby Food continues to function as food." *Id.* The same analysis applies here.

### 2.    The Complaint does not allege an "unreasonable safety hazard."

Nor does the Complaint allege that the purported release of microplastics poses "an unreasonable safety hazard." *Id.* To be sure, the Complaint alleges that polypropylene products release microplastics when heated and that microplastics generally "may cause long-term health complications." *Compl.* ¶ 19. But such allegations of "general harms possible" are insufficient. *In re Trader Joe's Co. Dark Chocolate Litig.*, *Litig.*, No. 3:23-cv-0061-RBM-KSC, 2024 WL 1319725, at *11 (S.D. Cal. March 27, 2024). The Complaint must allege that microplastics "are unreasonably hazardous *at the particular levels in the specific Products at issue in this case.*" *Id.*; *see also Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1079 (N.D. Cal. 2012) (dismissing CLRA and UCL claims because plaintiff "d[id] not plead with the required particularity what level of hexavalent chromium makes [the product] unsafe"). In other words, the complaint must allege (a) what levels of microplastics are unsafe, and (b) that the levels of microplastics children ingested from the Products, and that remain in their bodies, exceed that level. The Complaint alleges neither.[6]

*In re Trader Joe's* is squarely on point. Consumers brought a putative class action asserting that the defendant grocery store's failure to disclose the presence of heavy metals in its dark chocolate products was deceptive. 2024 WL 13199725, at *1. The complaint alleged that "even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions." *Id.* at *2. And, going well beyond the Complaint here,

---

[6] The Complaint alleges that "the Products … 'release microplastics with values as high as 16,200,000 particles per litre,'" quoting an article by Dunzu Li. *Compl.* ¶ 24. But the Li article *does not indicate what brand of baby bottles it tested.* The study does not even mention Dr. Brown's or its products. The Complaint's allegation about the supposed amount of microplastics released from the Products is therefore utterly baseless, and should be disregarded. In any event, even if it were assumed that these measurements related to the Dr. Brown's bottles—which there is no basis to do—the Complaint still fails to allege that those levels are unreasonably unsafe.

1    the *In re Trader Joe's* complaint alleged that the dark chocolate products exceeded the Maximum

2    Allowable Dose Levels ("MADLs") for at least lead and cadmium. *Id.*

3        The plaintiffs argued that whether the products posed "an unreasonable safety hazard"

4    presented a "hotly contested issue of fact," not ripe for determination on a motion to dismiss. *Id.*

5    at *11. The court disagreed. It held that, to defeat a motion to dismiss, the complaint must allege

6    facts "to *connect the health risks alleged to the levels of Heavy Metals in these Products* and they

7    have to be significant enough to be unfit for human consumption or an unreasonable safety

8    hazard." *Id.* (emphasis added). Finding that the complaint failed to do so, the court dismissed the

9    CLRA, UCL, and FAL omissions claims. *Id.*; *see also Hayden v. Bob's Red Mill Nat. Foods, Inc.*,

10   No. 23-CV-03862-HSG, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) (dismissing CLRA

11   and UCL claims because the complaint failed to "explain[ ] why cadmium poses a health threat

12   *at the levels that it appears in the Products* rather than at undefined 'high' levels") (emphasis in

13   original); *Grausz*, 691 F. Supp. 3d at 1195 (dismissing CLRA, UCL, and FAL omissions claims

14   that "d[id] not plead that the amounts of the substances in [the defendant's] Products have caused

15   harm or create an unreasonable safety hazard.").

16       This Court followed the same approach earlier this year in *In re Plum Baby Food Litig.*,

17   2024 WL 1354447. There, the plaintiff adduced evidence that the defendant's baby food

18   "contain[ed] detectable levels of arsenic, cadmium, lead, mercury … and/or perchlorate, all

19   known to pose health risks to humans, and particularly to infants and children," and that

20   "[b]ecause heavy metals can bioaccumulate in the body … regular consumption of small amounts

21   can increase the risk of various health issues." Despite this evidence, the Court granted summary

22   judgment for the defendant on the CLRA, UCL, and FAL claims because plaintiffs "d[id] not

23   establish that the amount of heavy metals and perchlorate in defendant's Baby Food poses an

24   *unreasonable* safety hazard. Without more evidence, the theory that regular consumption of

25   defendant's Baby Food over a period of time may lead to potentially dangerous accumulations of

26   these chemicals is simply too conjectural." *Id.* at *1, *5 (emphasis in original).

27

28

The case at bar case is considerably weaker. Unlike the heavy metals at issue in *In re Plum Baby Food* and *In re Trader Joe's*, health effects from microplastics have not been established, as the FDA just stated. *See* pp 8-10, *supra*. Moreover, the Complaint fails to allege the levels or amounts of microplastics that: (i) are unsafe; (ii) are released from the Products; (iii) are ingested from the Products by infants; and (iv) remain in infants' bodies.

Not only does the Complaint not allege what level of released/ingested microplastics are unsafe, the studies cited in the Complaint show that it *cannot* make any such allegation. As one of those studies points out, "there was no adequate toxicological information to quantify the dose–response relationship between microplastic ingestion and the risk or adverse effects in humans." Kazi Albab Hussain et al., *Assessing the Release of Microplastics and Nanoplastics from Plastic Containers and Reusable Food Pouches: Implications for Human Health,* 57 ENV'T SCI. & TECH. 9782, 9784 (2023) (cited in *Compl.* fn. 23) (Palansky Declaration ¶ 2 and Ex. A thereto).[7] Another states that "research on the adverse effects of microplastics in humans remains limited. Little is known about the impact of microplastics on human health and the toxic effects that may vary depending on the type, size, shape, and concentration of microplastics." Yongjin Lee et al., *Health Effects of Microplastic Exposures: Current Issues and Perspectives in South Korea,* 64 YONSEI MED. J. 301, 301 (May 2023) (cited in *Compl.* fn. 20) (*Id.* at ¶ 3 and Ex. B thereto). A third emphasizes that "research on the risk assessment of MPs [microplastics] during early development is minimal, particularly on mammals and humans. The assessment of human risk exposure to MPs remains a research gap due to the lack of validated methodologies, approved reference materials, and uniformity across the employed analytical processes." Nur Hanisah Amran et al., *Exposure to Microplastics During Early Developmental Stage: Review of Current Evidence,* 10 TOXICS 596-97 (Oct. 10, 2022) (cited in *Compl.* fn. 6) (*Id.* at ¶ 4 and Ex. C thereto)

---

[7] "[C]ourts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint." *United States ex rel. Lesnik v. Eisenmann,* No. 16-CV-01120-LHK, 2021 WL 4267904, at *3 (N.D. Cal. Sept. 19, 2021) (citing *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005)).

11

Defendant's Motion To Dismiss And Motion To Strike
Case No. 24-cv-03782-YGR

Because there is no established unsafe level of microplastics, satisfaction of the unreasonable safety hazard test is impossible.

### C. The Complaint Fails To Allege Defendant Knew Or Should Have Known That The Products Released Microplastics Or That Any Such Microplastics Caused Harm, As Required To Plead CLRA, UCL, Or FAL Claims.

A CLRA, UCL, or FAL claim requires factual allegations showing that the defendant knew or should have known of the problem or purported defect at issue: "[A] representation will not violate the CLRA if the defendant did not know, or have reason to know, of the facts that rendered the representation misleading at the time it was made." *Hensley-Maclean v. Safeway, Inc.*, No. CV 11-01230 RS, 2014 WL 1364906, at *1 (N.D. Cal. Apr. 7, 2014) (quoting *Kowalsky v. Hewitt-Packard Co.*, 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011)); *see also Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2017 WL 86033, at *7 (N.D. Cal. Jan. 10, 2017) ("'[U]nder the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss.'") (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012)). Here, the supposed problem is that "when the Products are heated as intended for ordinary use, they leach harmful microplastics that cause long-term health complications for children." *Compl.* ¶ 3.

*The Complaint does not allege Defendant possessed any such knowledge*. The Complaint alleges that Defendant knew or should have known that the reasonable consumer would believe the Products don't release microplastics, *id.* ¶ 44.a; that Defendant did not disclose that the Products released microplastics, *id.* ¶ 44.b; that consumers would have found such information material, *id.* ¶ 44.c; and that Defendant had control over its Products' labels, *id.* ¶ 44.d. But the Complaint conspicuously does *not* allege what it must to plead its statutory claims: that Defendant knew or should have known that the Products release microplastics when heated, and that such released microplastics cause long-term health complications for children.

Moreover, even if the Complaint made such an assertion (which it doesn't), a conclusory allegation would not be enough. A complaint "must proffer specific allegations regarding the content of information [and] how defendants had access to this information." *Ahern v. Apple Inc.*,

12

411 F. Supp. 3d 541, 575 (N.D. Cal. 2019). Otherwise, "any unsatisfied customer could make a similar claim every time a product malfunctioned." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010).

Such specific allegations often reference government investigations or inquiries, product recalls, large numbers of consumer complaints, and internal test results. For example, in *Tietsworth*, the plaintiffs asserted CLRA, UCL, and unjust enrichment claims, alleging that defendants Sears and Whirlpool failed to disclose a defect in their washing machines' electrical systems. 720 F. Supp. 2d at 1128-29. After earlier complaints had been dismissed, the second amended complaint passed muster by alleging that:

> [1] Defendants knew about the defect and the problems it was causing consumers based upon the fact that the Machines already had the highest rate of return by customers due to complaints about the electronic controls …, (2) the [relevant] error code was the leading number of service calls and the Electronic Control Boards were the most frequently replaced part on the Machines …, due to the defect; (3) Defendants concluded that software modification was required to solve the problem and began reprogramming boards to correct [the defect]; (4) Defendants mutually acknowledge[d] that units equipped with the defective Electronic Control Boards, required repair/replacement; and (5) Sears and Whirlpool … worked together to track and develop ways to address customer complaints … [and] Sears sought compensation … for the "catastrophic failure."

*Id.* at 1134 (internal quotations omitted).

In *Smith v. General Motors LLC*, 988 F.3d 873 (6th Cir. 2021), the Sixth Circuit recently affirmed dismissal of state consumer protection, unjust enrichment, and fraudulent concealment claims on this issue. The court found that the plaintiff's allegations that GM knew of an alleged defect based on pre-release testing, increased warranty claims, and hundreds of complaints to NHTSA, "d[id] not rise above mere speculation." *Id.* at 884; *see also Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1070 (E.D. Cal. 2022) (finding allegations of defendant's knowledge of engine defect insufficient even where plaintiff alleged that there were 23 complaints to NHTSA and "[d]efendant designed and manufactured the engine, had quality control measures, and possessed aggregate testing data").

The Complaint here is devoid of any such allegations. At most, it points to obscure

materials about microplastics—which at most warn of the possibility that microplastics *might* be harmful—without showing that Defendant: (i) was, or should have been, aware of those materials or their analyses, data, or findings (all are recent and some are dated after Plaintiffs' purchases, see *Compl.*, fns. 3-12, 17-28); or (ii) had any other basis—such as consumer complaints, internal testing, government inquiries, etc.—to know that, when heated, its Products release microplastics that cause long-term health complications for children. To the contrary, Defendant believed the Products were safe, relying on the FDA's longstanding approval of polypropylene for use in food containers. 21 C.F.R. § 177.1520. Without alleging facts showing that Defendant knew or should have known of the alleged risks, Plaintiffs' CLRA, UCL, and FAL claims must be dismissed.

### D.   Count One's "Unfair" And "Unlawful" UCL Claims Fail.

Under the UCL a plaintiff may assert claims alleging that the defendant's conduct was "fraudulent," "unfair," or "unlawful." Cal. Bus. & Prof. Code § 17200. The Complaint asserts the same alleged misrepresentations and omissions violate all three prongs. When an "unfair prong claim overlap[]s entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive if the fraudulent prong claim fails." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 910 (N.D. Cal. 2020) (internal quotations omitted); *see also In re Plum Baby Foods*, 2024 WL 1354447, at *7 (holding that when the same conduct is alleged for all three prongs, "the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive") (internal quotations omitted). For the reasons set out in Sections I.A-C above, the Complaint's claim under the UCL's fraudulent prong fails. The "unfairness" prong claim necessarily fails along with it. *See id.*

Similarly, if the Court dismisses the CLRA and FAL claims—the predicate violations underlying Plaintiffs' "unlawful" prong UCL claim, *see Compl.* ¶ 93—then no basis for the UCL unlawful claim remains. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 471-472 (9th Cir. 2017).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.   The CLRA Demand Letter Is Defective, Defeating Count Three.

Before filing a CLRA claim for damages, a plaintiff must provide notice to the defendant at "the place where the transaction occurred or [ ] the person's principal place of business *within California*." Cal. Civ. Code § 1782(a)(2) (emphasis added). Plaintiff Cortez's notice letter fails to comply because it was sent to Dr. Brown's *Missouri* offices, not its principal place of business in California. *Compl.* ¶ 120. Non-compliance with § 1782(a)(2) is grounds for dismissing a CLRA claim. *See May v. Makita U.S.A., Inc.* No. 1:22-CV-79-SNLJ, 2023 WL 3619354, at *8 (E.D. Mo. May 24, 2023) ("A plaintiff's failure to follow the clear text of the [CLRA] and to send notice to the proper place is an independently sufficient ground for granting a motion to dismiss."); *Corbett v. PharmaCare U.S., Inc.,* 567 F. Supp. 3d 1172, 1201 (S.D. Cal. 2021) (dismissing CLRA claim because notice was sent to defendant's agent in Delaware, not California).

### F.   Count Three Does Not Allege The Intent Element Of A CLRA § 1770(a)(9) Claim.

The CLRA proscribes 28 categories of "deceptive acts or practices." Cal. Civ. Code § 1770(a). Section 1770(a)(9) prohibits "[a]dvertising goods or services with *intent* not to sell them as advertised." *Id.* § 1770(a)(9) (emphasis added). Thus, by its terms, Section 1770(a)(9) "specifically requires [pleading] intent to defraud, which, in turn, implies knowledge of the falsity." *In re Sony PS3 "Other OS" Litig.*, 551 F. App'x 916, 921 (9th Cir. 2014); *Shu v. Toyota Motor Sales USA, Inc.*, 669 F. Supp. 3d 888, 901 (N.D. Cal. 2023) (same). As set out in Section I.C above, the Complaint does not allege that Defendant knew or should have known that its representations or omissions were false, in turn making it impossible for the Complaint to allege Defendant "intend[ed] to defraud" consumers, as required to state a § 1770(a)(9) claim.

## II.   COUNT FOUR (BREACH OF WARRANTY) FAILS ON SEVERAL GROUNDS.

### A.   The Express Warranty Claim Should Be Dismissed Because There Was Neither A Breach Nor Any Pre-Suit Notice.

#### 1.   *No express warranty was breached.*

"To prevail on a breach of express warranty claim, Plaintiffs must prove: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the

statement was part of the basis of the bargain; and (3) the warranty was breached." *Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2018 WL 3023493, at *4 (N.D. Cal. June 18, 2018).

As an initial and fundamental failure, Count Four does not allege that the purported express warranty arose from express statements, but rather because "the Products do not conform to the Material Omission." *Compl.* ¶ 128. An *express* warranty cannot be based on an *omission*. *See, e.g.*, Cal. Com. Code § 2313 ("Express warranties by the seller are created as follows: (a) Any *affirmation of fact or promise* made by the seller to the buyer which relates to the goods … (b) Any *description* of the goods which is made part of the basis of the bargain….") (emphasis added); *Shubin v. Universal Vacation Club*, 622 F. Supp. 3d 849, 855 (C.D. Cal. 2022), *aff'd*, No. 23-55016, 2024 WL 1367176 (9th Cir. Apr. 1, 2024) ("To adequately allege … an express warranty, a plaintiff must identify a specific and unequivocal *written statement*….") (emphasis added). On this basis alone, the express warranty claim fails.

The only affirmative statements raised by the Complaint—and so the only statements that could constitute express warranties—are that the Products are "BPA Free" and the baby bottles are "#1 Pediatrician Recommended." As discussed in Section I.A, these statements do not say what the Complaint claims they do; they say nothing about safety generally or microplastics specifically, let alone guaranteeing that the Products do not pose risks or contain harmful substances, as the Complaint insists. *See Compl.* ¶¶ 5-6. To the extent the statements created an express warranty, the warranty is that the Products contain no BPA and are the most recommended. Both statements are limited, precise, clear, substantiated, and true. No such warranty has been breached. *See Rugg*, 2018 WL 3023493, at *4 (dismissing false-labeling breach of warranty claim due to "[p]laintiff's implausible definition" of the terms at issue).

### 2.  *Plaintiffs did not provide the required pre-suit notice.*

"To avoid dismissal of a … breach of warranty claim in California, [a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (internal quotations omitted); *Nilsen v. Tesla, Inc.*, No. 22-CV-07472-BLF, 2023 WL 7346071, at *3 (N.D. Cal. Nov.

6, 2023) (same). The Complaint does not allege Plaintiffs provided the required notice; therefore, their breach of express warranty claim must be dismissed.[8]

## B. The Implied Warranty Claim Fails Because The Products Are Merchantable And Plaintiffs Are Not In Privity With Defendant.

Count Four appears to assert that an implied warranty was breached because the alleged release of microplastics renders the Products unsafe. *See Compl.* ¶¶ 3, 127. For the reasons set out in Section I.B.2 above, the Complaint fails to allege facts showing the Products are not reasonably safe, thus defeating Count Four's claim that the Products were not merchantable. *See Hayden*, 2024 WL 1643696 at *10 (dismissing implied warranty claim because "Plaintiff has not plausibly pled that the Products are unsafe for consumption because Plaintiff fails to allege that the level of cadmium allegedly present in the Products constitute a level at which the complained-of health risks occur.").

In addition, "a plaintiff alleging a breach of implied warranty claim must be in vertical privity with the defendant." *Lee v. Nature's Path Food, Inc.*, No. 23-CV-00751-H-MSB, 2023 WL 7434963, at *4; *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (same). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain. Thus, an end consumer ... who buys from a retailer is not in privity with a manufacturer."

---

[8] Courts are split regarding whether notice must be provided before bringing an express warranty claim if the defendant is a manufacturer from which a plaintiff did not purchase the product. *See Lengen v. Gen. Mills, Inc.*, 185 F. Supp. 3d 1213 (E.D. Cal. 2016) (holding consumers' failure to provide pre-suit notice to manufacturer defendant required dismissal of breach of express warranty claim); *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1196 (S.D. Cal. 2015) (same). *But see Lopez v. Johnson & Johnson*, 654 F. Supp. 3d 997, 1016 (C.D. Cal. 2023) ("[W]here, as here, a breach of express warranty claim is brought by injured consumers against manufacturers with whom they have not dealt, then notice is not required."). Respectfully, cases holding that notice is not required are wrong. As the Ninth Circuit emphasized, "[t]he purpose of giving notice of breach is to allow the breaching party to cure the breach." *Alvarez*, 656 F.3d at 932. More fundamentally, "a breach of express warranty claim is not premised on defects alone, but rather, *on how the seller responds to the buyer's request to remedy those defects* pursuant to the terms of the express warranty." *Crown Cell Inc. v. Ecovacs Robotics Inc.*, No. 21-CV-07890-SI, 2022 WL 4087512, at *5 (N.D. Cal. Sept. 6, 2022) (emphasis added). In other words, there can be no breach until *the warranting party fails to observe the warranty's terms*. Absent notice, a defendant has no opportunity to meet the warranty's terms, and so cannot have breached.

Defendant's Motion To Dismiss And Motion To Strike
Case No. 24-cv-03782-YGR

*Lee*, 2023 WL 7434963, at \*4; *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 754 (N.D. Cal. 2021). Plaintiffs purchased the Products from Target and Amazon, *Compl.* ¶¶ 13.b, 14.b. Thus, they are not in privity with Defendant, and their implied warranty claim fails as a matter of law and should be dismissed with prejudice. *See Lee*, 2023 WL 7434963, at \*4–5.

**III.    COUNT FIVE'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.**

    **A.    The Parties' Rights Are Governed By Contract.**

"[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Olmos v. T. Marzetti Co.*, No. LACV21-03159 JAK (MRWx), 2022 WL 18358950, at \*13 (C.D. Cal. Oct. 11, 2022); *Silverman v. Wells Fargo & Co.*, No. 18-CV-03886-YGR, 2018 WL 6046209, at \*4 (N.D. Cal. Nov. 19, 2018) (*Rogers, J.*) (same).

A valid contract governing Plaintiffs' recourse (if any) exists here. *First*, "Plaintiff[s'] damages in this action result from [their] direct purchase of the Product which, under the California Commercial Code, creates an express contract between the buyer and seller." *Smith v. Allmax Nutrition, Inc.*, No. 1:15-CV-00744-SAB, 2015 WL 9434768, at \*9–10 (E.D. Cal. Dec. 24, 2015). *Second*, the Complaint asserts a claim for breach of express warranty, thus necessarily alleging a contract governing the parties' rights, in the form of a warranty. *See Olmos*, 2022 WL 18358950, at \*13 (dismissing unjust enrichment claim when "Plaintiff's purchase of the Products … is covered by the express warranty that Plaintiff alleges was breached in the breach of express warranty claim"); *Clark v. Am. Honda Motor Co.*, No. CV20-03147 AB (MRWx), 2021 WL 4260232, at \*5 (C.D. Cal. Sept. 14, 2021) (similar). Because the parties' rights are governed by contracts, there is no place for an unjust enrichment claim.

    **B.    The Unjust Enrichment Claim Must Be Dismissed If The Other Claims Are Dismissed.**

An unjust enrichment claim must be dismissed if other claims premised on the same facts are dismissed. *See Lee*, 2023 WL 7434963, at \*6 (collecting cases); *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. CV-16-1442 PSG (MRWx), 2017 WL 4676585, at \*9

1  (C.D. Cal. Oct. 10, 2017). The basis for Plaintiffs' unjust enrichment claim is identical to

2  Plaintiffs' other claims. *See Compl.* ¶¶ 131-136. If the Court grants Defendant's motion to dismiss

3  Plaintiffs' other claims, then the unjust enrichment claim must be dismissed as well.

4  **IV.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS RELATING TO PRODUCTS THEY DID
       NOT PURCHASE.**

5

6         Plaintiffs allege that they each purchased a specific type of baby bottle. *See Compl.*

7  ¶¶ 13.b, 14.b. Nevertheless, they assert claims with respect to *all* Dr. Brown's bottles *and sippy*

8  *cups Id.* ¶¶ 2, 8. In the absence of binding Ninth Circuit guidance, some courts have concluded

9  that, pursuant to constitutional principles, a plaintiff lacks standing to assert claims regarding

10  products they did not purchase, because they could not have been harmed by any alleged

11  misrepresentations about those unpurchased products. *See, e.g.*, *Granfield v. NVIDIA Corp.*, 2012

12  WL 2847575, at *6 (N.D. Cal. July 11, 2012). However, Dr. Brown's recognizes that the majority

13  of courts in this district hold that a plaintiff may have standing to assert claims relating to products

14  they did not purchase "so long as the products and alleged misrepresentations are substantially

15  similar." *Brown v. Nature's Path Foods, Inc.*, No. 21-cv-05132-HSG, 2023 WL 2699978, at *4

16  (N.D. Cal. Mar. 29, 2023) (citation omitted). "'That determination [of 'substantial similarity']

17  necessarily focuses on whether the resolution of the asserted claims will be identical between the

18  purchased and unpurchased products.'" *Id.* (quoting *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL

19  1024182, at *8–9 (N.D. Cal. Mar. 13, 2014).

20         Even if this Court is inclined to adopt the "substantial similarity" analysis here, Plaintiffs

21  lack standing to assert claims as to Dr. Brown's sippy cups. Plaintiffs allege that the Products are

22  deceptively labeled because they leach microplastics *when heated*. But, unlike the baby bottles

23  Plaintiffs purchased, sippy cups are used to hold *non-heated* liquids such as juice or water. *See*

24  Compl. ¶ 24 (alleging "consumers understand that the regular and ordinary use of *baby bottles*

25  involves holding heated liquids") (emphasis added). Thus, it cannot be said "the resolution of the

26  asserted claims will be identical" as between the baby bottles and the sippy cups. *Ang*, 2014 WL

27  1024182, at *8–9 (dismissing claims as to unpurchased products where "fact-specific analyses of

28

1   each product will be required"). Because neither Plaintiff purchased sippy cups, and sippy cups

2   do not satisfy the "substantial similarity" test, Plaintiffs lack standing to assert claims as to those

3   Products.

4   **V.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF BECAUSE THERE IS NO
        REASONABLE LIKELIHOOD OF FUTURE INJURY.**

5

6         To seek injunctive relief, "the threat of [future] injury" must be "actual and imminent, not

7   conjectural or hypothetical," *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 788, 805 (N.D. Cal.

8   2021) (*Rogers, J.*). A plaintiff must "demonstrate a real and immediate threat of repeated injury

9   in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 946 (9th Cir. 2011).

10        Plaintiffs cannot meet these requirements. The Complaint makes boilerplate allegations

11  that Plaintiffs face possible future injuries because—absent label changes—they "are likely to

12  believe that the Products have been reformulated to address the issue of microplastic leaching,

13  making them safe for babies and young children"; and this belief would "lead Plaintiffs to

14  purchase the Products again, exposing them to the same harm they initially experienced." *Compl.*

15  ¶ 15. But these allegations of potential future injury are utterly implausible and should be rejected

16  for at least two independent reasons.

17        *First*, the Complaint's vague allegation that Plaintiffs "desire to purchase the Products

18  again" at some unspecified time, *id.*, is insufficient. As this Court recently held, "[a] 'some day'

19  intention[ ]—without any description of concrete plans, or indeed even any specification of *when*

20  the some day will be—do[es] not support a finding of the actual or imminent' injury that' Article

21  III requires. Nor does a statement that a plaintiff would 'consider buying' products satisfy this

22  standard." *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4 (emphasis in original).

23        *Second*, Plaintiffs are now fully aware of, *and can easily identify and avoid*, the supposed

24  risk. When a plaintiff "do[es] not need to purchase the Products again in order to know [whether

25  the alleged problem persists]," and fails to "explain why he will be deceived by [the alleged

26  problem] in the future, now that he knows that he can easily determine [whether it persists]," there

27  is no likelihood of future injury and no standing to pursue injunctive relief. *Joslin v. Clif Bar &*

28

Defendant's Motion To Dismiss And Motion To Strike
Case No. 24-cv-03782-YGR

*Co.*, No. 18-cv-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) (internal quotation omitted); *see also Slowinski*, 2024 WL 3757097, at *6 (dismissing demand for injunctive relief in microplastics water bottle case because defendant's "labeling can't trick Plaintiffs anymore.").

The foundation of Plaintiffs' theory is that all polypropylene products release microplastics when heated. *See Compl.* ¶¶ 24-27. According to the Complaint, the release of microplastics is an *unavoidable, inherent* characteristic of *all* polypropylene products. *See, e.g. id.* ¶ 25 ("Heating Polypropylene Releases Harmful Microplastics"). Because, allegedly, all polypropylene products release microplastics, there is no modification of the Products that could correct this supposed issue. If the issue cannot be corrected, there is no possibility that Plaintiffs could reasonably "believe that the Products have been reformulated to address the issue of microplastic [release]," *id.* ¶ 15, no likelihood that that they would purchase them again, and no possibility of future harm. Plaintiffs can simply purchase glass or silicone bottles instead.

Plaintiffs cannot plausibly allege that there is any future risk they will purchase the Products in the future oblivious to whether they release microplastics; therefore, they lack standing to seek injunctive relief.

## VI.   THE COURT SHOULD STRIKE THE COMPLAINT'S REQUESTS TO CERTIFY NATIONWIDE BREACH OF WARRANTY AND UNJUST ENRICHMENT CLASSES.

Although class certification is generally determined after some discovery has occurred, "[a] court may strike class allegations prior to discovery where the complaint shows that a class action cannot be maintained on the facts alleged." *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *4 (N.D. Cal. June 15, 2015) (quotation omitted). In particular, "[i]f the issue is purely legal in nature, then it may make little sense to wait until class certification proceedings to resolve it …." *Phan v. Sargento Foods, Inc.*, No. 20-CV-09251-EMC, 2021 WL 2224260, at *7 (N.D. Cal. June 2, 2021) (cleaned up).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A. Material Differences In the 50 States' Laws Preclude Certifying A Nationwide Unjust Enrichment Class.

If a nationwide class were certified, each class member's claims would be governed by the law of the state where they purchased the Product and were allegedly injured. *See, e.g.*, *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 657-58 (N.D. Cal. 2019) ("Given that it would be unconstitutional to apply California unjust enrichment law to the claims of a nationwide class, the laws from all 50 states would have to apply.") (*rev'd* on other grounds); *Phan*, 2021 WL 2224260, at *6 ("the law applicable to each class member is the law of the state in which they purchased the … Product").

This Court has repeatedly held that nationwide unjust enrichment classes cannot be certified because significant differences across state laws preclude satisfaction of Rule 23's requirements. In *Pistacchio v. Apple Inc.*, No. 4:20-CV-07034-YGR, 2021 WL 949422, at *3 (N.D. Cal. Mar. 11, 2021) (*Rogers, J.*), this Court "str[uck] from the complaint the nationwide class allegations related to the unjust enrichment claim," explaining:

> Plaintiffs, though, cannot point to a single case in this Circuit to [certify a nationwide unjust enrichment class] since the Ninth Circuit addressed the issue in *Mazza v. American Honda Motor Co., Inc.*. This is unsurprising given that, in *Mazza*, the Ninth Circuit unequivocally held that the "elements necessary to establish a claim for unjust enrichment ... vary materially from state to state." It is hard to imagine a clearer directive from our Circuit on this issue.

*Id.* (citation omitted). The Court reiterated the same principle in *Tromble v. W. Digital Corp.*, No. 4:20-CV-08102-YGR, 2021 WL 2165796, at *2 (N.D. Cal. May 27, 2021) (*Rogers, J.*); and again in *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015) (*Rogers, J.*).[9] There is no

---

[9] Other courts in this and other districts have reached the same conclusion. *See, e.g.*, *Phan*, 2021 WL 2224260, at *7 ("the law on unjust enrichment … var[ies] too much from state to state such that individualized issues predominate"); *Allen*, 331 F.R.D. at 657 (holding differences in state unjust enrichment law mean that "plaintiffs cannot meet their burden to show that common questions of fact or law predominate over individualized questions as required by Rule 23(b)(3)."); *Camey v. Force Factor, LLC,* No. 14-14717-RWZ, 2016 WL 10998440, at *8 (D. Mass. May 16, 2016) (differences in state unjust enrichment law "massively overwhelm whatever issues the plaintiffs share, and it is for this reason that federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment") (internal quotation omitted).

reason to deviate from those consistent holdings here.

**B.    The Court Should Strike The Complaint's Requests For Nationwide Express And Implied Warranty Classes On Similar Grounds.**

As with unjust enrichment, differences in state express and implied warranty laws preclude certification of a nationwide class. One court has found *nine* outcome-determinative differences across the various states' implied warranty laws. *See Maloney v. Microsoft Corp.*, Civ. No. 09-2047, 2011 WL 5864064, at *8-10 (D.N.J. Nov. 21, 2011) (denying certification of nationwide class). Courts have reached similar conclusions regarding states' express warranty laws. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726-730 (5th Cir. 2007) (reversing certification of nationwide express and implied warranty classes due to material differences in states' laws regarding the definition of merchantability, whether the claims lie in tort or contract, reliance, notice, privity, whether plaintiffs may recover for unmanifested defects, and whether merchantability may be presumed). Courts routinely deny certification of nationwide express and implied warranty claims on this basis.[10]

<u>**CONCLUSION**</u>

For the foregoing reasons, all claims should be dismissed with prejudice. Alternatively, the Court should strike the Complaint's requests to certify nationwide unjust enrichment and

---

[10] *See, e.g.*, *Phan*, 2021 WL 2224260, at *9 (striking nationwide express warranty claim because differences in state law "[are] a predominance/manageability problem that precludes certification of a Rule 23(b)(3) class") (collecting cases); *Young v. Neurobrands, LLC*, No. 18-CV-05907-JSW, 2020 WL 11762212, at *9-10 (N.D. Cal. Oct. 15, 2020); *Tsonev v. Kia Motors Am., Inc.*, No. SACV 16-01020-CJC(DFMx), 2016 WL 10000244, at *5 (C.D. Cal. Nov. 9, 2016); *Darisse v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *11-12 (N.D. Cal. Aug. 15, 2016) (denying certification of nationwide warranty classes due to differences in state express warranty laws regarding privity, reliance, and notice, and differences in state implied warranty law regarding "privity, notice, the availability of class actions, and the definition of merchantability"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) (reversing certification of nationwide breach of warranty classes because variations in state law "have led us to hold that … warranty … suits may not proceed as nationwide classes"); *Camey*, 2016 WL 10998440, at *7 ("tremendous differences among state warranty laws … would dwarf any common questions … and would swamp this litigation to the point of unmanageability").

breach of warranty classes. Finally, the Court should grant Defendant such other and further relief as is appropriate.

Dated: September 6, 2024

/s/ *IJay Palansky*

IJay Palansky (SBN 187917)
ipalansky@atllp.com
ARMSTRONG TEASDALE LLP
4642 S. Ulster Street, Suite 800
Denver, Colorado 80237
(720) 200-0676

Stephen J. Siegel (*pro hac vice*)
ssiegel@atllp.com
Yvette Mishev (*pro hac vice*)
ymishev@atllp.com
Elizabeth C. Wolicki (*pro hac vice*)
ewolicki@atllp.com
Jack C. Butz (*pro hac vice*)
jbutz@atllp.com

ARMSTRONG TEASDALE LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Dana J. Finberg (SBN 257459)
dfinberg@ohaganmeyer.com
O'HAGAN MEYER, LLC
One Embarcadero Center, Suite 2100
San Francisco, CA 9411
(415) 578-6902

*Attorneys for Defendant Dr. Brown's Company*
*f/k/a Handi-Craft Company, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on September 6, 2024, he caused a true and correct copy of the foregoing ***Defendant's Motion to Dismiss and Motion to Strike*** to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system.


*/s/ IJay Palansky*

Defendant's Motion To Dismiss And Motion To Strike
Case No. 24-cv-03782-YGR