IJay Palansky (SBN 187917)
ipalansky@atllp.com
ARMSTRONG TEASDALE LLP
4642 S. Ulster Street, Suite 800
Denver, Colorado 80237
(720) 200-0676

Dana J. Finberg (SBN 257459)
dfinberg@ohaganmeyer.com
O'HAGAN MEYER, LLC
One Embarcadero Center, Suite 2100
San Francisco, CA 9411
(415) 578-6902

Stephen J. Siegel (*pro hac vice*)
ssiegel@atllp.com
Yvette Mishev (*pro hac vice*)
ymishev@atllp.com
Elizabeth C. Wolicki (*pro hac vice*)
ewolicki@atllp.com
Jack C. Butz (*pro hac vice*)
jbutz@atllp.com
ARMSTRONG TEASDALE LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

*Attorneys for Defendant Dr. Brown's Company
f/k/a Handi-Craft Company, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

TULIISA MILLER, et al.

                    Plaintiffs,

         v.

HANDI-CRAFT COMPANY, INC.

                    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 24-cv-03782-YGR

**DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT AND
MOTION TO STRIKE**

Hearing Date: February 11, 2025
Hearing Time: 2:00 p.m.
Courtroom: 1 – 4th Floor
Judge: Hon. Yvonne Gonzalez Rogers

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................... 1

ISSUES FOR THE COURT'S DECISION ............................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

    A.    Microplastics Are "Inescapable" And Have Not Been Shown To Impact Human Health. ......................................................................... 2

    B.    Plaintiffs' Theory And Claims. ........................................................... 3

LEGAL STANDARD ........................................................................................... 5

ARGUMENT ......................................................................................................... 5

I.    Counts One, Two, And Three Fail On Multiple Grounds. ........................... 5

    A.    The Labels' Statements Are Not False, Deceptive, Or Misleading. ...................... 5

    B.    The Complaint Fails To Allege Facts Showing That The Products Have a Defect That Either Poses An "Unreasonable Safety Hazard" Or Is "Central To The Product's Function." ............................................ 9

        1.    The microplastics issue is not "central to the product's function." ................. 9

        2.    The Complaint does not allege an "unreasonable safety hazard." ................. 10

    C.    The Complaint Fails To Allege That At The Time Of Plaintiffs' Purchases Defendant Knew Or Should Have Known That The Products Released Microplastics Or That Any Such Microplastics Caused Harm, As Required To Plead CLRA, UCL, Or FAL Claims. ......................... 13

    D.    Count One's "Unfair" And "Unlawful" UCL Claims Fail. ................. 15

    E.    The CLRA Demand Letter Is Defective, Defeating Count Three. ....... 16

    F.    Count Three Does Not Allege The Intent Element Under CLRA § 1770(a)(9). ...................................................................................... 16

II.    Count Four (Breach Of Warranty) Fails On Several Grounds. ................... 17

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

A.    The Express Warranty Claim Should Be Dismissed Because There Was Neither A Breach Nor Pre-Suit Notice. .............................................................. 17

1.    No express warranty was breached. ................................................. 17

2.    Plaintiffs did not provide the required pre-suit notice.................................. 18

B.    The Implied Warranty Claim Fails Because The Products Are Merchantable And Plaintiffs Lack Privity With Defendant. ................................. 19

III.    Count Five's Unjust Enrichment Claim Should Be Dismissed..........................................20

A.    The Parties' Rights Are Governed By Contract. ................................................. 20

B.    Dismissal Of The Other Claims Mandates Dismissal Of The Unjust Enrichment Claim. ................................................................................ 20

IV.    Plaintiffs Lack Standing To Assert Claims Relating To Products They Did Not Purchase.............................................................................................................. 21

V.    Plaintiffs Lack Standing To Seek Injunctive Relief Because There Is No Reasonable Likelihood Of Future Injury.................................................................... 22

VI.    The Court Should Strike The Complaint's Requests To Certify Nationwide Breach Of Warranty And Unjust Enrichment Classes. ........................................................ 23

A.    Material Differences In the 50 States' Laws Preclude Certification Of A Nationwide Unjust Enrichment Class. .................................................... 23

B.    The Court Should Strike The Complaint's Requests For Nationwide Express And Implied Warranty Classes For The Same Reason. ......................... 24

CONCLUSION.............................................................................................................. 25

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

1

## <u>TABLE OF AUTHORITIES</u>

2

3  Cases                                                                                 Page(s)

4  *Ahern v. Apple Inc.*,

5      411 F. Supp. 3d 541, 565 (N.D. Cal. 2019) ................................................................. 13, 14, 15

6  *Allen v. ConAgra Foods, Inc.*,

7      331 F.R.D. 641 (N.D. Cal. 2019)
       *rev'd on other grounds*, 2019 WL 5191009 (N.D. Cal. Oct. 15, 2019) ............................ 23, 24

8
9  *Alvarez v. Chevron Corp.*,
       656 F.3d 925 (9th Cir. 2011) ............................................................................................ 18

10
11 *Ang v. Bimbo Bakeries USA, Inc.*,
       No. 13 C 1196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) .................................. 21

12
13 *Arroyo v. Chattem, Inc.*,
       926 F. Supp. 2d 1070 (N.D. Cal. 2012) ............................................................................ 10

14
15 *Ashcroft v. Iqbal*,
       556 U.S. 662 (2009) ........................................................................................................... 5

16
17 *Bell Atl. Corp. v. Twombly*,
       550 U.S. 544 (2007) ........................................................................................................... 5

18
19 *Bias v. Wells Fargo & Co.*,
       312 F.R.D. 528 (N.D. Cal. 2015) ..................................................................................... 24

20
21 *Brown v. Madison Reed, Inc.*,
       622 F. Supp. 3d 786 (N.D. Cal. 2022)
       *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) ........................................................... 8

22
23 *Brown v. Nature's Path Foods, Inc.*,
       No. 21-cv-05132-HSG, 2023 WL 2699978 (N.D. Cal. Mar. 29, 2023) ............................... 21

24
25 *Bruton v. Gerber Prods. Co.*,
       703 F. App'x 468 (9th Cir. 2017) ...................................................................................... 16

26
27 *Camey v. Force Factor, LLC*,
       No. 14-14717-RWZ, 2016 WL 10998440 (D. Mass. May 16, 2016) .............................. 24, 25

28
   *Chapman v. Pier 1 Imports (U.S.) Inc.*,
       631 F.3d 939 (9th Cir. 2011) ............................................................................................ 22

*Clark v. Am. Honda Motor Co.*,
  No. CV20-03147 AB (MRWx), 2021 WL 4260232 (C.D. Cal. Sept. 14, 2021) .................... 20

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ........................................................................ 19

*Cole v. Gen. Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007) ........................................................................ 25

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
  No. 16-CV-02941-LHK, 2017 WL 86033 (N.D. Cal. Jan. 10, 2017) ........................... 13

*Corbett v. PharmaCare U.S., Inc.*,
  567 F. Supp. 3d 1172 (S.D. Cal. 2021) ............................................................. 16

*Correia v. Johnson & Johnson Consumer Inc.*,
  No. CV 18-9918 PSG (ASX), 2019 WL 2120967 (C.D. Cal. May 9, 2019) ..................... 9

*Cortina v. Goya Foods, Inc.*,
  94 F. Supp. 3d 1174 (S.D. Cal. 2015) .............................................................. 18

*Crown Cell Inc. v. Ecovacs Robotics Inc.*,
  No. 21-CV-07890-SI, 2022 WL 4087512 (N.D. Cal. Sept. 6, 2022) .......................... 18

*Darisse v. Nest Labs, Inc.*,
  No. 5:14-CV-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)....................... 25

*Davidson v. Apple, Inc.*,
  16-CV-4942-LHK, 2017 WL 3149305 (N.D. Cal. July 25, 2017).............................. 14

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ........................................................................ 7

*Granfield v. NVIDIA Corp.*,
  No. C-11-05403, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ............................. 21

*Grausz v. Hershey Co.*,
  691 F. Supp. 3d 1178 (S.D. Cal. 2023)............................................................. 9, 11

*Grausz v. Hershey Co.*,
  No. 23-CV-00028-AJB-SBC, 2024 WL 312688 (S.D. Cal. Jan. 25, 2024) ..................... 5

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................ 8

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................... 5

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
   No. 23-CV-03862-HSG, 2024 WL 1643696 (N.D. Cal. Apr. 16, 2024)................... 7, 8, 11, 19

*Hensley-Maclean v. Safeway, Inc.*,
   No. CV 11-01230 RS, 2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) ........................ 13

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ............................................................................... 9

*Ice Bowl, Inc. v. Spalding Sales Corp.*,
   133 P.2d 846 (Cal. Ct. App. 1943) ...................................................................... 19

*In re 5–Hour ENERGY Mktg. & Sales Practices Litig.*,
   MDL 13–2438, 2015 WL 12734796 (C.D. Cal. Jan. 22, 2015) ............................. 6

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) ............................................................................ 25

*In re PFA Ins. Mktg. Litig.*,
   696 F. Supp. 3d 788 (N.D. Cal. 2021) ................................................................ 22

*In re Plum Baby Food Litig.*,
   No. 4:21-cv-00913-YGR, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024) ....................... passim

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
   No. CV-16-1442 PSG (MRWx), 2017 WL 4676585 (C.D. Cal. Oct. 10, 2017)................ 20

*In re Sony PS3 "Other OS" Litig.*,
   551 F. App'x 916 (9th Cir. 2014) ........................................................................ 16

*In re Trader Joe's Co. Dark Chocolate Litig.*,
   No. 3:23-cv-0061-RBM-KSC, 2024 WL 1319725 (S.D. Cal. Mar. 27, 2024)......... 9, 10, 11, 12

*In re Trader Joe's Tuna Litig.*,
   289 F. Supp. 3d 1074 (C.D. Cal. 2017) ............................................................... 19

*Joslin v. Clif Bar & Co.*,
   No. 18-cv-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .................. 22

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................................. 3

*Lam v. General Mills, Inc.,*
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) ........................................................ 8

*Lee v. Nature's Path Food, Inc.,*
    No. 23-CV-00751-H-MSB, 2023 WL 7434963 ............................... 19, 20

*Lengen v. Gen. Mills, Inc.,*
    185 F. Supp. 3d 1213 (E.D. Cal. 2016) ..................................................... 18

*Lopez v. Johnson & Johnson,*
    654 F. Supp. 3d 997 (C.D. Cal. 2023) ...................................................... 18

*Maloney v. Microsoft Corp.,*
    Civ. No. 09-2047, 2011 WL 5864064 (D.N.J. Nov. 21, 2011) ............... 24

*May v. Makita U.S.A., Inc.,*
    No. 1:22-CV-79-SNLJ, 2023 WL 3619354 (E.D. Mo. May 24, 2023) ... 16

*Miller v. Ford Motor Co.,*
    620 F. Supp. 3d 1045 (E.D. Cal. 2022) ..................................................... 15

*Minkler v. Apple, Inc.,*
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ........................................................ 18

*Moore v. Trader Joe's Co.,*
    4 F.4th 874 (9th Cir. 2021) ................................................................... 7, 9

*Moreno v. Vi-Jon, LLC,*
    No. 20cv1446 JM (BGS), 2023 WL 4611823 (S.D. Cal. July 18, 2023) .............. 7

*Nilsen v. Tesla, Inc.,*
    No. 22-CV-07472-BLF, 2023 WL 7346071 (N.D. Cal. Nov. 6, 2023) ........ 18

*Olmos v. T. Marzetti Co.,*
    No. LACV21-03159 JAK (MRWx), 2022 WL 18358950 (C.D. Cal. Oct. 11, 2022) ............. 20

*Organic Cannabis Found., LLC v. Comm'r of Internal Rev.,*
    962 F.3d 1082 (9th Cir. 2020) ..................................................................... 3

*Panacci v. A1 Solar Power, Inc.,*
    No. 15-CV-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15, 2015) .......... 23

*Phan v. Sargento Foods, Inc.,*
    No. 20-CV-09251-EMC, 2021 WL 2224260 (N.D. Cal. June 2, 2021) ............ 23, 24, 25

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

*Pistacchio v. Apple Inc.*,
  No. 4:20-CV-07034-YGR, 2021 WL 949422 (N.D. Cal. Mar. 11, 2021)................................ 24

*Rodriguez v. Mondelez Global LLC*,
  703 F. Supp. 3d 1191 (S.D. Cal. 2023) .................................................................... 11

*Rugg v. Johnson & Johnson*,
  No. 17-CV-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) .............................. 17

*Shu v. Toyota Motor Sales USA, Inc.*,
  669 F. Supp. 3d 888 (N.D. Cal. 2023) ...................................................................... 16

*Shubin v. Universal Vacation Club*,
  622 F. Supp. 3d 849 (C.D. Cal. 2022),
  *aff'd*, No. 23-55016, 2024 WL 1367176 (9th Cir. Apr. 1, 2024) ................................... 17

*Silverman v. Wells Fargo & Co.*,
  No. 18-CV-03886-YGR, 2018 WL 6046209 (N.D. Cal. Nov. 19, 2018)............................... 20

*Slowinski v. Bluetriton Brands, Inc.*,
  No. 24-CV-513, 2024 WL 3757097 (N.D. Ill. Aug. 9, 2024) ....................................... 2, 8, 22

*Smith v. Allmax Nutrition, Inc.*,
  No. 1:15-CV-00744-SAB, 2015 WL 9434768 (E.D. Cal. Dec. 24, 2015) ........................... 20

*Smith v. General Motors LLC*,
  988 F.3d 873 (6th Cir. 2021) ............................................................................ 14, 15

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .................................................................................. 5

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  No. C-13-1803 EMC, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014)...................................... 19

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................... 14

*Tromble v. W. Digital Corp.*,
  No. 4:20-CV-08102-YGR, 2021 WL 2165796 (N.D. Cal. May 27, 2021)............................... 24

*Tsonev v. Kia Motors Am., Inc.*,
  No. SACV 16-01020-CJC(DFMx), 2016 WL 10000244 (C.D. Cal. Nov. 9, 2016) ................ 25

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

*United States ex rel. Lesnik v. Eisenmann,*
    No. 16-CV-01120-LHK, 2021 WL 4267904 (N.D. Cal. Sept. 19, 2021)................................. 3

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ................................................................................. 5

*Vitiosus v. Alani Nutrition,* LLC,
    No. 21-CV-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. July 5, 2022)................. 7, 8, 9

*Watkins v. MGA Ent., Inc.,*
    574 F. Supp. 3d 747 (N.D. Cal. 2021) ...................................................................... 19

*Williams v. Apple, Inc.,*
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ...................................................................... 15

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ................................................................................. 13

*Wood v. Motorola Mobility, Inc.,*
    No. C-11-04409-YGR, 2012 WL 892166 (N.D. Cal. Mar. 14, 2012)............................ 6

*Young v. Neurobrands, LLC,*
    No. 18-CV-05907-JSW, 2020 WL 11762212 (N.D. Cal. Oct. 15, 2020)...................... 25

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................................. 15
Cal. Civ. Code § 1782(a)(2)........................................................................................ 16
Cal. Civ. Code § 1770(a) ............................................................................................ 16
Cal. Com. Code § 2313 .............................................................................................. 17
Section 1770(a)(9) ..................................................................................................... 16
Wis. Stat. Ann. § 100.335 (West) ............................................................................... 6

**Rules**

Federal Rules of Civil Procedure, 8, 9(b), 12(b), 12(f), and 23 ..................................... 1

**Regulations**

21 C.F.R. § 177.1520.......................................................................................... 3, 4, 15
21 C.F.R. § 177.1580(d) .............................................................................................. 4

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **February 11, 2025**, at **2:00 p.m.**, or as soon thereafter as the matter may be heard before the Honorable Judge P. Yvonne Gonzalez Rogers, at Courtroom 1, 4th Floor, Oakland Federal Courthouse, located at 1301 Clay Street, Oakland, CA 94612, Defendant Dr. Brown's Company, f/k/a Handi-Craft Company, Inc. ("Defendant" or "Dr. Brown's"), will, and hereby does, move this Court for an order granting this Motion to Dismiss Plaintiffs' Amended Class Action Complaint and Motion to Strike, pursuant to Federal Rules of Civil Procedure, 8, 9(b), 12(b), 12(f), and 23. The motion is based on this Notice and the Memorandum of Points and Authorities.

## ISSUES FOR THE COURT'S DECISION

1.      Have Plaintiffs stated claims for: (a) violation of the UCL (Count One); (b) violation of the FAL (Count Two); (c) violation of the CLRA (Count Three); (d) breaches of express and implied warranties (Count Four); and (e) unjust enrichment (Count Five)?

2.      Do Plaintiffs have standing to assert claims as to products they did not purchase—specifically, Defendant's sippy cups—as to which, under Plaintiffs' theory, there are outcome determinative differences because sippy cups are not heated?

3.      In light of Plaintiffs now being aware of the subject products' allegedly inherent and readily identifiable problems, do Plaintiffs have standing to seek injunctive relief?

4.      Given the numerous, significant differences across state warranty and unjust enrichment laws, should the Court strike requests to certify nationwide classes for those claims?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Amended Complaint ("Complaint") (Dkt. #30) alleges that, when heated, Dr. Brown's polypropylene baby bottles and sippy cups (the "Products"), release potentially dangerous microplastics ("MPs"). But—even after having amending in response to Defendant's initial motion to dismiss (Dkt. #25)—the new Complaint stubbornly remains premised on misrepresentations of the science and utterly implausible interpretations of the Products' labels (the "Labels"), and otherwise fails to plead facts essential to Plaintiffs' sprawling "overpayment"

consumer fraud class action.

The Complaint cites no testing showing that Dr. Brown's Products release MPs. Even if it had included such allegations, the FDA and the materials cited in the Complaint agree that MPs released into food have *not* been demonstrated to pose a health risk—contradicting the Complaint's central premise and exposing the falsity of the Complaint's bare conclusions to the contrary. Nor does the Complaint address the intractable problem of assigning liability when MPs are so ubiquitous and "inescapable" that humans constantly ingest and inhale them from countless sources. And the Complaint alleges no facts indicating that at the times of Plaintiffs' purchases Dr. Brown's knew either that its Products release MPs or that such releases pose a health risk; indeed, how could it have such "knowledge," when the very articles on which the Complaint relies show that no such link between MPs and health risks has been established and the FDA has approved polypropylene for use in food containers?

These foundational defects prevent the Complaint from stating any plausible claim, as another court recently held in a stinging dismissal of a similar microplastics case. *Slowinski v. Bluetriton Brands, Inc.*, No. 24-CV-513, 2024 WL 3757097, at *2 (N.D. Ill. Aug. 9, 2024).

Finally, the Court should strike the Complaint's request to certify nationwide unjust enrichment, implied warranty, and express warranty classes, because—as this Court has repeatedly held with respect to unjust enrichment, *see infra* at pp. 23-25—material differences in state laws as to these common law claims preclude satisfaction of Rule 23's requirements.

## BACKGROUND

### A.    Microplastics Are "Inescapable" And Have Not Been Shown To Impact Human Health

"Microplastics" are "small plastic particles less than 5 millimeters in diameter." *Am. Compl.* ¶ 18. "Some microplastics are just 1 nanometer. [ ] By point of comparison, a strand of human hair is about 80,000 nanometers wide." *Slowinski*, 2024 WL 3757097, at *2.

Microplastics are ubiquitous. They "have been found in every ecosystem on the planet from the Antarctic tundra to tropical coral reefs." *Id.* They are in food. *Id.* They are in the air. *Id.* They are in tap water. *Id.* at *3. They are "*inescapable*," *id.* at *2 (emphasis added), and "*omnipresen[t]*," (*Am. Compl.* ¶ 45.a (emphasis added).)

The Complaint contends that among the vast sources of MPs are goods made of polypropylene plastic, including the Products. (*Id.* ¶ 31.) Plaintiffs allege that, over time, ingesting some—unspecified—amount of MPs "cause[s] long-term health complications for children." (*Id.* ¶ 3.) But, the scientific materials cited in the Complaint make clear that while MPs "are emerging as a *potential* risk factor … in preclinical studies[,] *[d]irect evidence that this risk extends to humans is lacking.*" Raffaele Marfella et al., *Microplastics and Nanoplastics in Atheromas and Cardiovascular Events,* 390 NEW ENGLAND J. MED. 900–910 (Mar. 6, 2024) (cited in *Am. Compl.* n.4; Palansky Declaration ¶ 2 and Ex. A thereto) (emphasis added).)[1]

The Complaint's Chicken Little characterization of the risks from MPs also stands in stark contrast to the FDA's view. The FDA has approved polypropylene for use in food containers. *See* 21 C.F.R. § 177.1520. And, after the recent rash of high-profile MP class actions, the FDA released a statement in July 2024 on "Microplastics and Nanoplastics in Foods," stating that:

- "There is not sufficient scientific evidence to show that microplastics … from plastic food packaging migrate into foods and beverages";

- "Current scientific evidence does not demonstrate that levels of microplastics … detected in foods pose a risk to human health"; and

- "[M]any of the scientific studies have used methods of variable, questionable, and/or limited accuracy."[2]

**B.     Plaintiffs' Theory And Claims**

Despite all of the following issues being raised in Defendant's initial motion to dismiss, the Complaint cites no testing showing that the Products release MPs, does not allege the level of MPs the Products release, whether or how much of any such MPs were ingested by anyone, whether those levels present a safety risk, or that MPs from the Products have ever caused anyone

---

[1] "[C]ourts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint." *United States ex rel. Lesnik v. Eisenmann,* No. 16-CV-01120-LHK, 2021 WL 4267904, at *3 (N.D. Cal. Sept. 19, 2021) (citing *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005)).

[2] https://www.fda.gov/food/environmental-contaminants-food/microplastics-and-nanoplastics-foods (last visited October 16, 2024). The Court may take judicial notice of government websites. *Organic Cannabis Found., LLC v. Comm'r of Internal Rev.*, 962 F.3d 1082, 1096 (9th Cir. 2020).

physical harm.

Instead, the Complaint's theory is that allegedly deceptive statements on, and omissions from, the Products' Labels injured Plaintiffs by causing them to pay "an unwarranted premium." (*Am. Compl.* ¶¶ 89, 97, 106.) *First*, the Complaint points to the Labels' statements that the baby bottles are "#1 Pediatrician Recommended"[3] and the bottles and sippy cups are "BPA Free."[4] But the Complaint does not (and cannot) allege these statements are false; rather, the Complaint asserts that the reasonable consumer supposedly (mis)understands the statements to mean that the Products are "*guaranteed … to not contain harmful plastic byproducts*" and "do not pose *any* risk of harm." (*Id.* ¶¶ 3, 5, 6 (emphasis added).) In fact, the Labels say nothing about "risks," "plastic byproducts," "guarantees," or MPs. The Complaint's constructions of the Labels' discrete, clear, and true statements are unsupported by the Labels themselves, are implausible on their face, and rest on nothing more than counsel's *ipse dixit*.

*Second*, the Complaint brings omission claims asserting that the Products should have included a warning about MPs. But the Complaint fails to plead multiple elements essential to omission claims, including facts plausibly showing that (i) the Products pose an unreasonable safety hazard, and (ii) at the time of Plaintiffs' purchases, Defendant knew both that the Products release MPs and that MPs pose long-term health risks. Perhaps this is because there is no basis for any such allegations. The FDA has approved polypropylene for use in food containers. *See* 21 C.F.R. § 177.1520. And, as noted at p. 3, *supra*, the FDA recently took the unusual step of releasing a statement emphasizing that "[c]urrent scientific evidence does not demonstrate that

---

[3] The Complaint alleges that the "#1 Pediatrician Recommended" statement appears on *all* of the Products. (*See id.* ¶¶ 5, 23.) Not so. As the Labels reproduced in the Complaint show, the "#1 Pediatrician Recommended" statement appears only on the bottles, not sippy cups. (*See id.* ¶ 9.)

[4] Unlike "microplastics—a generic term for *any plastic particle* less than 5 millimeters in diameter, regardless of their shape, size, chemical composition, or other qualities, (*see id.* ¶ 18)—BPA is a *specific chemical* (Bisphenol A) known to cause various adverse health effects. (*Id.* ¶ 6.) The FDA has outlawed use of BPA in baby bottles and sippy cups, *see* 21 C.F.R. § 177.1580(d), but has approved polypropylene, which does not contain BPA, for use as a food container. The Complaint admits the Products' "BPA Free" claim is "technically accurate." (*Am. Compl.* ¶ 36.)

levels of microplastics … detected in foods pose a risk to human health."

Plaintiffs assert claims for violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and Consumer Legal Remedies Act ("CLRA") on behalf of a putative class consisting of all California residents who purchased the Products during the last four years; and claims for unjust enrichment and breach of express and implied warranty on behalf of a putative class consisting of all residents of the United States "within the applicable statute of limitations periods." (*Am. Compl.* ¶ 54.)

## LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must disregard legal conclusions, even when disguised as facts. *See id.* at 681.

## ARGUMENT

**I.    COUNTS ONE, TWO, AND THREE FAIL ON MULTIPLE GROUNDS.**

**A.    The Labels' Statements Are Not False, Deceptive, Or Misleading.**

The primary element of any CLRA, FAL, or UCL claim asserting consumers have been misled is a materially false or deceptive statement or omission. *See, e.g.*, *Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2024 WL 312688, at *3 (S.D. Cal. Jan. 25, 2024); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022). "[A] plaintiff must plead all three claims with particularity as required by [Rule 9(b)]." *Hammerling*, 615 F. Supp. 3d at 1081 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).

Plaintiffs' UCL "fraudulent" prong claim (Count One), FAL claim (Count Two), and CLRA claim (Count Three) are limited to the alleged *omission* of a MP warning; they do not assert those claims as to any affirmative representation. (*See Am. Compl.* ¶¶ 91-93, 110-114, 122 (mentioning only the "Material Omission," not any affirmative statement).) Such omission claims are addressed in Argument sections I.B, I.C, and I.E, *infra*.

If the Court were nevertheless to interpret the Complaint to assert UCL, FAL, and CLRA claims alleging that the "#1 Pediatrician Recommended" and "BPA Free" statements are deceptive or misleading, such claims fail for multiple reasons.

*First*, the Complaint does not specifically allege that any Plaintiff saw, let alone relied on, the "BPA Free" statement; it contains only the generic allegation that each Plaintiff "relied upon … the Product's label or packaging." (*Id.* ¶¶ 13.c, 14.c, 15.c.) Rule 9(b) requires more: plaintiffs must specifically identify the statements on which they supposedly relied and which allegedly caused them harm. *See, e.g. In re 5–Hour ENERGY Mktg. & Sales Practices Litig.,* MDL 13–2438, 2015 WL 12734796, at *6-7 (C.D. Cal. Jan. 22, 2015) (dismissing UCL, CLRA, and FAL claims were plaintiffs "failed to indicate which particular statements … they relied on"); *Wood v. Motorola Mobility, Inc.,* No. C-11-04409-YGR, 2012 WL 892166, at *3 (N.D. Cal. Mar. 14, 2012) (*Rogers, J.*) (noting that for claims under the CLRA, UCL, and FAL, "Rule 9(b) requires that the complaint allege specific facts [showing] … the content of the alleged fraudulent representation" on which plaintiff relied).

Such specifics are particularly necessary here, considering the "BPA Free" statement on the Labels is so small that the Plaintiffs *felt it necessary to magnify* that part of the Labels for the statement to be visible in the Complaint. (*See Am. Compl.* ¶ 9.) The Complaint's vague and conclusory allegations of reliance on the "BPA Free" statement lack specificity, are implausible, and should be rejected.

*Second*, the Complaint does not (and cannot) allege that either statement is false. Instead, in an effort to plead that these *true* statements are nevertheless deceptive, the Complaint theorizes that the "#1 Pediatrician Recommended" statement broadly "conveys to consumers … that the Products *do not pose risks*" and that "the reasonable consumer interprets the 'BPA Free' statement to mean the Product is *guaranteed … to not contain harmful plastic byproducts*."[5] (*Id.* ¶¶ 5-6; *see*

---

[5] At least one state *requires* baby bottle and sippy cup labels to state that the bottles are BPA free. *See* Wis. Stat. Ann. § 100.335 (West) ("A manufacturer or wholesaler who sells … a child's container … shall ensure the container is conspicuously labeled as not containing [BPA]").

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

*also id.* ¶ 3 (alleging consumers are led to believe "that the Products do not pose *any* risk of harm") (all emphases added).)

The Complaint offers no factual allegations supporting these inventive interpretations, and they should be rejected. The reasonable consumer test controls. To meet this test, a plaintiff "must show that members of the public are *likely* to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotations omitted; emphasis added). "This is not a negligible burden." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). A plaintiff must demonstrate "more than a mere possibility that [a defendant]'s label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the reasonable consumer standard requires a *probability* that a *significant portion* of the general consuming public or of targeted consumers, *acting reasonably* in the circumstances, could be misled." *Ebner*, 838 F.3d at 965 (internal quotation omitted) (emphasis added).[6]

Courts have consistently held that labels making "discrete, factual claims"—like the "BPA Free" and "#1 Pediatrician Recommended" claims here—cannot be "implausibly extrapolated" into statements about other product characteristics. *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-CV-03862-HSG, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) (finding "Non-GMO" statement does not support CLRA and UCL claims that a product promised general healthiness). For example, in *Vitiosus v. Alani Nutrition*, LLC, No. 21-CV-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. July 5, 2022), the plaintiffs alleged the labeling of the defendant's "FIT" snack bars was deceptive because it falsely led the plaintiffs to believe the bars had "protein benefits" and would help them lose weight. *Id.* at *14. The court dismissed the CLRA, FAL, UCL, express warranty, and unjust enrichment claims, holding that "the word 'FIT' does not convey anything specific or measurable to the reasonable consumer regarding protein and weight loss.… There is simply no deception in the word 'FIT' regarding the Bars' protein or weight loss benefits

---

[6] When a complaint's interpretations of marketing representations are unreasonable, "a court can properly make this determination and resolve such claims based on its review of the product packaging [in ruling on a motion to dismiss]." *Moreno v. Vi-Jon, LLC*, No. 20cv1446 JM (BGS), 2023 WL 4611823, at *5 (S.D. Cal. July 18, 2023); *see, e.g.*, *Moore*, 4 F.4th at 882.

7

such that Plaintiffs can plausibly plead the reasonable consumer would be deceived in these respects." *Id.* at *14-15.

Similarly, in *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097 (N.D. Cal. 2012), the plaintiff claimed that "gluten free" labeling led the plaintiffs to believe defendant's Fruit Roll-Ups were healthy. *Id.* at 1103. The court rejected this argument:

> The Court finds that the statement "gluten free" cannot support Plaintiff's claims under the UCL, CLRA, or FAL. The statement is objectively true and communicates nothing more than the absence of gluten in the product…. A reasonable consumer is unlikely to interpret the statement "gluten free" to mean that the Fruit Snacks contain no partially hydrogenated oils, low amounts of sugar or corn-syrup, or that the Fruit Snacks are otherwise healthful.

*Id.* at 1103-04; *see also Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 802-03 (N.D. Cal. 2022), *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) (dismissing CLRA, UCL, and FAL claims where "Ammonia Free" representations "d[id] not make any assertions about the health, safety, or gentleness of the products"); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1093–94 (N.D. Cal. 2017) (dismissing CLRA, FAL, and UCL claims because no reasonable consumer would interpret 'MADE WITH Real Fruit' to indicate the absence of trans fats).

Finally, in a MP case similar to this one, the *Slowinski* court pulled no punches. As a matter of law, it rejected the plaintiffs' theory that the statement "100% Natural Spring Water" on the defendant's water bottles meant that the water was free of MPs, finding that "[n]o reasonable consumer would … think that [bottled water manufacturers] w[ere] making a guarantee at the molecular level," and "[n]o reasonable consumer would expect a disclosure about the presence of microscopic particles." *Slowinski*, 2024 WL 3757097, at *13-14. The court concluded: "At the end of the day, microplastics are in just about everything….When simply breathing air puts you at risk of inhaling microplastics, it's unreasonable to assume that your spring water won't have any microplastics." *Id.* at *14.

The holdings and reasoning of *Vitiosus*, *Lam*, *Hayden*, *Brown*, *Hadley*, and *Slowinski* apply here. Just as "gluten free" on a label "communicates nothing more than the absence of gluten in the product," *Lam*, 859 F. Supp. 2d at 1103-04, the term "BPA Free" communicates nothing more than the absence of BPA; it says nothing about MPs. And just as the word "FIT"

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

conveyed nothing regarding the product's protein content or weight loss, *Vitiosus*, 2022 WL 2441303, at *14, the Complaint's construction of "#1 Pediatrician Recommended" to broadly warrant that the Products "do not pose risks," (*Am. Compl.* ¶¶ 3, 5), impermissibly "invents … misrepresentation[s] that Defendant did not make." *Correia v. Johnson & Johnson Consumer Inc.*, No. CV 18-9918 PSG (ASX), 2019 WL 2120967, at *4 (C.D. Cal. May 9, 2019).

In an effort to plead a misrepresentation claim, the Complaint stretches the labels' meanings far past their breaking points. Contrary to the Complaint's interpretations, the Labels do not mention "risks," "plastic byproducts," or any "guarantee," much less MPs specifically. (*See Am. Compl.* ¶ 9 (Product Labels).) Put simply, the statements do not say what the Complaint claims they do. The statements are precise, clear, and true, and cannot serve as the basis for Plaintiffs' claims. *See Moore*, 4 F.4th at 882 (affirming dismissal of deceptive labeling claims, noting "a plaintiff's unreasonable assumptions about a product's label will not suffice").

**B.      The Complaint Fails To Allege Facts Showing That The Products Have a Defect That Either Poses An "Unreasonable Safety Hazard" Or Is "Central To The Product's Function."**

To plead a deception claim under the CLRA, UCL, or FAL, a complaint must allege, *inter alia*, "either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material [and] central to the product's function.'" *In re Plum Baby Food Litig.*, No. 4:21-cv-00913-YGR, 2024 WL 1354447, at *4 (N.D. Cal. Mar. 28, 2024) (*Rogers, J.*); *In re Trader Joe's Co. Dark Chocolate Litig.*, No. 3:23-cv-0061-RBM-KSC, 2024 WL 1319725, at *10 (S.D. Cal. Mar. 27, 2024); *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1194 (S.D. Cal. 2023). The Complaint satisfies neither requirement.

*1.      The microplastics issue is not "central to the product's function."*

"To satisfy the 'central function' test, plaintiffs must establish that the defect renders the product 'incapable of use by any consumer.'" *In re Plum Baby Food Litigation,* 2024 WL 1354447, at *6 (quoting *Hodsdon v. Mars, Inc.,* 891 F.3d 857, 864 (9th Cir. 2018)). The Products' function is to deliver milk, formula, or other liquids to children, and there is no allegation that a release of MPs impairs, let alone "renders … incapable," any such use. *Id.* This case parallels *In re Plum Baby Food*, where this Court held that the presence of heavy metals was not a defect

central to the function of defendant's baby food because, "even if consumers find the presence of these trace contaminants to be of material concern, the Baby Food continues to function as food." *Id.* The same analysis applies here.[7]

      Further, as discussed next, the Complaint's failure to allege that the Products release MPs at levels that present an unreasonable safety hazard defeats the Complaint's conclusory assertions that that the release of MPs renders the Products unsafe and/or "negates the Products' [c]entral [f]unction." (*Am. Compl.* ¶ 34.)

### 2. *The Complaint does not allege an "unreasonable safety hazard."*

      The Complaint's allegation that "the Products Pose an Unreasonable Safety Hazard," (*Am. Compl.* ¶ 33), is nothing but an unsupported conclusion. While the Complaint alleges that polypropylene products release MPs when heated and that MPs generally "*may* cause long-term health complications," (*id.* ¶ 19 (emphasis added)),[8] such allegations of "general harms possible" are insufficient. *In re Trader Joe's Co. Dark Chocolate Litig.*, 2024 WL 1319725, at *11. The Complaint must allege that MPs "are unreasonably hazardous *at the particular levels in the specific Products at issue in this case.*" *Id.* (emphasis added); *see also Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1079 (N.D. Cal. 2012) (dismissing CLRA and UCL claims because plaintiff "d[id] not plead with the required particularity what level of hexavalent chromium makes [the product] unsafe"). In other words, the Complaint must allege (a) what levels of MPs are unsafe, and (b) that the levels of MPs children ingested from the Products, and that remain in their

---

[7] Indeed, the Complaint admits the Products are still capable of use. (*Am. Compl.* ¶ 16 ("If reformulation of the Products is impossible, Plaintiffs are still willing to purchase the Products for limited purposes … or as a more affordable option, if the Products' labels accurately reflected the risk of microplastics.").) The Complaint's theory proves too much: if followed, every product that supposedly contains microplastics—i.e., *everything* made of plastic, as well as food, bottled drinks, tap water, tea bags, *even breastmilk*, etc., is "incapable of use by any consumer."

[8] As discussed *infra* at pp. 12-13, the materials cited by the Complaint refute the allegations that the Products have been demonstrated to pose a risk to human health.

---

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

bodies, exceed that unsafe level. The Complaint meets neither requirement.[9]

*In re Trader Joe's* is squarely on point. Consumers brought a putative class action asserting that the defendant grocery store's failure to disclose the presence of heavy metals in its dark chocolate products was deceptive. 2024 WL 1319725, at *1. The complaint alleged that "even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions." *Id.* at *2. Going well beyond the Complaint here, the *In re Trader Joe's* complaint also alleged that the dark chocolate products exceeded the Maximum Allowable Dose Levels ("MADLs") for at least lead and cadmium. *Id.*

The plaintiffs argued that whether the products posed "an unreasonable safety hazard" presented a "hotly contested issue of fact," not ripe for determination on a motion to dismiss. *Id.* at *11. The court disagreed. It held that the complaint must allege facts "to *connect the health risks alleged to the levels of Heavy Metals in these Products* and they have to be significant enough to be unfit for human consumption or an unreasonable safety hazard." *Id.* (emphasis added). Finding that the complaint failed to do so, the court dismissed the CLRA, UCL, and FAL omissions claims. *Id.*; *see also Hayden*, 2024 WL 1643696, at *8 (dismissing CLRA and UCL claims because the complaint failed to "explain[ ] why cadmium poses a health threat *at the levels that it appears in the Products* rather than at undefined 'high' levels") (emphasis in original); *Grausz*, 691 F. Supp. 3d at 1195 (dismissing CLRA, UCL, and FAL omissions claims that "d[id] not plead that the amounts of the substances in [the defendant's] Products have caused harm or create an unreasonable safety hazard."); *Rodriguez v. Mondelez Global LLC*, 703 F. Supp. 3d 1191, 1210 (S.D. Cal. 2023) (dismissing CLRA, UCL, and FAL claims where, even though the complaint alleged that *any* level of lead is unsafe, it failed to allege that the level of exposure from the defendant's product posed an "*unreasonable* safety hazard") (emphasis in original).

---

[9] The Complaint alleges that "the Products … 'release microplastics with values as high as 16,200,000 particles per litre,'" quoting an article by Dunzu Li. (*Am. Compl.* ¶ 28.) But the Li article *does not indicate what brands of baby bottles it tested*. The study does not even mention Dr. Brown's. The Complaint's allegation about the supposed amount of MPs released from the Products is therefore utterly baseless and should be disregarded. In any event, even if it were assumed that these measurements related to Dr. Brown's bottles—which there is no basis to do—the Complaint still fails to allege that those levels pose an unreasonable safety hazard.

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

1     This Court followed the same approach earlier this year in *In re Plum Baby Food Litig.*,

2   2024 WL 1354447. There, the plaintiff offered evidence that the defendant's baby food

3   "contain[ed] detectable levels of arsenic, cadmium, lead, mercury … and/or perchlorate, all

4   known to pose health risks to humans, and particularly to infants and children," and that

5   "[b]ecause heavy metals can bioaccumulate in the body, even regular consumption of small

6   amounts can increase the risk of various health issues." *Id.* at *1. Despite this evidence, the Court

7   granted summary judgment on the CLRA, UCL, and FAL claims because plaintiffs "d[id] not

8   establish that the amount of heavy metals and perchlorate in defendant's Baby Food poses an

9   *unreasonable* safety hazard. Without more evidence, the theory that regular consumption of

10  defendant's Baby Food over a period of time may lead to potentially dangerous accumulations of

11  these chemicals is simply too conjectural." *Id.* at *1, 5 (emphasis in original).

12     The case at bar case is considerably weaker. Unlike the heavy metals at issue in *In re Plum*

13  *Baby Food* and *In re Trader Joe's*, health effects from MPs have not been established, as the FDA

14  just stated. *See* p. 3, *supra*. Moreover, the Complaint fails to allege the levels or amounts of MPs

15  that: (i) are unsafe; (ii) are released from the Products; (iii) are ingested from the Products; and

16  (iv) remain in infants' bodies.

17     Not only does the Complaint fail to allege what level of released/ingested MPs are unsafe,

18  the studies it cites show that Plaintiffs *cannot* make any such allegation. As one of those studies

19  points out, the effects of exposure to microplastics "during early periods of sensitivity," are

20  "nearly completely unknown." Amran et al., *Exposure to Microplastics During Early*

21  *Developmental Stage: Review of Current Evidence*, 10 Toxics 597, at 4 (Oct. 10, 2022) (cited in

22  *Am. Compl.* n.6; Palansky Decl. ¶ 3 and Ex. B thereto.) Another study notes that "there was no

23  adequate toxicological information to quantify the dose-response relationship between MP

24  ingestion and the risk or adverse effects in humans." Kazi Albab Hussain et al., *Assessing the*

25  *Release of Microplastics and Nanoplastics from Plastic Containers and Reusable Food Pouches:*

26  *Implications for Human Health,* 57 ENV'T SCI. & TECH. 9782, 9784 (2023). (Cited in *Am.*

27  *Compl.* n.45; Palansky Decl. ¶ 4 and Ex. C thereto.) Yet another candidly states that "[w]hether

28  the ingestion of MPs poses a substantial risk to human health is far from understood." Zehua Yan

et al., *Analysis of Microplastics in Human Feces Reveals a Correlation between Fecal Microplastics and Inflammatory Bowel Disease Status,* 56 Environmental Science & Technology 414 (2021). (Cited in *Am. Compl.* n.21; Palansky Decl. ¶ 5 and Ex. D thereto.) And a fourth emphasizes that "research on the risk assessment of MPs during early development is minimal…. The assessment of human risk exposure to MPs remains a research gap due to the lack of validated methodologies, approved reference materials, and uniformity across the employed analytical processes." Nur Hanisah Amran et al., *Exposure to Microplastics During Early Developmental Stage: Review of Current Evidence,* 10 TOXICS 596-97 (Oct. 10, 2022). (Cited in *Am. Compl.* n.6; Palansky Decl. ¶ 6 and Ex. E thereto.) Because there is no established unsafe level of MPs, satisfaction of the unreasonable safety hazard test is impossible.

## C. The Complaint Fails To Allege That At The Time Of Plaintiffs' Purchases Defendant Knew Or Should Have Known That The Products Released Microplastics Or That Any Such Microplastics Caused Harm, As Required To Plead CLRA, UCL, Or FAL Claims.

A CLRA, UCL, or FAL claim requires showing: (i) on *omission* claims, that at the time of the plaintiffs' purchases, the defendant had *actual* knowledge of the defect or falsity at issue, *see, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 565 (N.D. Cal. 2019) (noting that to plead an omission claim, "a defendant must have known of the defect at the time of sale") (collecting cases); and (ii) on *misrepresentation* claims, that the defendant *knew or should have known* of the defect or falsity. *See Hensley-Maclean v. Safeway, Inc.*, No. CV 11-01230 RS, 2014 WL 1364906, at *1 (N.D. Cal. Apr. 7, 2014) ("[A] representation will not violate the CLRA if the defendant did not know, or have reason to know, of the facts that rendered the representation misleading at the time it was made.") (citation omitted); *see also Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2017 WL 86033, at *7 (N.D. Cal. Jan. 10, 2017) (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012)).

Here, the supposed problem is that "when the Products are heated as intended for ordinary use, they leach harmful microplastics that cause long-term health complications for children." (*Am. Compl.* ¶ 3.) Yet, the Complaint alleges no *facts* showing Defendant possessed or should have possessed any such knowledge; the only allegations of Defendant's knowledge are purely

conclusory. (*Am. Compl.* ¶ 17 ("Defendant knew of the falsity of the Material Omission"); *id.* ¶ 49 ("Defendant knew, or should have known, that the Material Omission is misleading"); *id.* ¶¶ 70, 111, 123 (similar).) Such conclusory allegations are insufficient. A complaint "must proffer specific allegations regarding the content of information [and] how defendants had access to this information." *Ahern,* 411 F. Supp. 3d at 575. Otherwise, "any unsatisfied customer could make a similar claim every time a product malfunctioned." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010).

Specific allegations that are held sufficient often reference government investigations or inquiries, product recalls, large numbers of consumer complaints, or internal test results. In *Tietsworth*, plaintiffs asserted CLRA, UCL, and unjust enrichment claims, alleging that defendants Sears and Whirlpool failed to disclose an electrical defect in their washing machines. *Id.* at 1128-29. After several dismissals, an amended complaint passed muster by alleging:

> [1] Defendants knew about the defect and the problems it was causing consumers based upon the fact that the Machines already had the highest rate of return by customers due to complaints about the electronic controls …, (2) the [relevant] error code was the leading number of service calls and the Electronic Control Boards were the most frequently replaced part on the Machines …, due to the defect; (3) Defendants concluded that software modification was required to solve the problem and began reprogramming boards to correct [the defect]; (4) Defendants mutually acknowledge[d] that units equipped with the defective Electronic Control Boards, required repair/replacement; and (5) Sears and Whirlpool … worked together to track and develop ways to address customer complaints … [and] Sears sought compensation … for the "catastrophic failure."

*Id.* at 1134 (internal quotations omitted); *see also, Davidson v. Apple, Inc.,* 16-CV-4942-LHK, 2017 WL 3149305, at *15 (N.D. Cal. July 25, 2017) (finding defendant's knowledge sufficiently pled by specific allegations defendant performed pre-release testing for defect, detailing that testing, explaining how testing would have alerted defendant to defect, and noting extensive consumer complaints).

In *Smith v. General Motors LLC*, 988 F.3d 873 (6th Cir. 2021), the Sixth Circuit recently affirmed dismissal of state consumer protection, unjust enrichment, and fraudulent concealment claims on this issue. The court found allegations that GM knew of a defect based on pre-release testing, increased warranty claims, and hundreds of complaints to NHTSA, "d[id] not rise above

mere speculation." *Id.* at 884; *see also Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1070 (E.D. Cal. 2022) (finding allegations of defendant's knowledge of engine defect insufficient where plaintiff alleged there were 23 complaints to NHTSA and "[d]efendant designed and manufactured the engine, had quality control measures, and possessed aggregate testing data").

Similarly, *Ahern* found vague statements about industry research and general knowledge failed to allege that defendant Apple knew about the defect at issue and that even "Apple's statement that it tested its products extensively and simulated users' experiences" [were] insufficient, absent "descri[ption of] the details of this pre-release testing and explan[ation of] how this testing would have alerted [Apple] to the defect." *Ahern*, 411 F. Supp. 3d at 565 (granting motion to dismiss fraudulent concealment and UCL claims) (internal quotations omitted).

The Complaint here is devoid of any such factual allegations. It cites academic materials about MPs—which at most warn that MPs *might* be harmful—without showing that Defendant: (i) was aware of those materials or their analyses, data, or findings (all are recent and many were published after Plaintiffs' purchases); or (ii) had any other basis—such as consumer complaints, internal testing, government inquiries, etc.—to know that, when heated, its Products release MPs and do so at levels that cause long-term health complications. To the contrary, Defendant believed the Products were safe, relying on the FDA's longstanding approval of polypropylene for use in food containers. 21 C.F.R. § 177.1520. Without alleging facts showing Defendant knew or should have known of the alleged risks, Plaintiffs' CLRA, UCL, and FAL claims must be dismissed.

### D. Count One's "Unfair" And "Unlawful" UCL Claims Fail.

UCL claims must allege that the defendant's conduct was "fraudulent," "unfair," or "unlawful." Cal. Bus. & Prof. Code § 17200. The Complaint asserts that the same alleged misrepresentations and omissions violate all three prongs. For the reasons set out in Sections I.A-C *supra*, Plaintiffs' claim under the UCL's fraudulent prong fails. As such, the "unfairness" prong claim necessarily fails along with it. *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 910 (N.D. Cal. 2020) (when an "unfair prong claim overlap[]s entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive if the fraudulent prong claim fails.") (internal quotations omitted); *see also In re Plum Baby Foods*, 2024 WL 1354447, at *7 (holding when

same conduct is alleged for all three prongs, "the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive") (internal quotations omitted).

Similarly, if the Court dismisses the CLRA and FAL claims—the alleged violations underlying the "unlawful" prong UCL claim, *see Am. Compl.* ¶ 99—no basis for a UCL unlawful claim remains. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 471-472 (9th Cir. 2017).

### E.    The CLRA Demand Letter Is Defective, Defeating Count Three.

Before filing a CLRA claim for damages, a plaintiff must provide notice to the defendant at "the place where the transaction occurred or [] the person's principal place of business *within California.*" Cal. Civ. Code § 1782(a)(2) (emphasis added). Plaintiff Cortez's notice letter fails to comply because it was sent to Dr. Brown's *Missouri* offices, not its principal place of business in California. (*Am. Compl.* ¶ 128). Non-compliance with § 1782(a)(2) is grounds for dismissing a CLRA claim. *May v. Makita U.S.A., Inc.* No. 1:22-CV-79-SNLJ, 2023 WL 3619354, at *8 (E.D. Mo. May 24, 2023) ("A plaintiff's failure to follow the clear text of the [CLRA] and to send notice to the proper place is an independently sufficient ground for granting a motion to dismiss."); *Corbett v. PharmaCare U.S., Inc.,* 567 F. Supp. 3d 1172, 1201 (S.D. Cal. 2021) (dismissing CLRA claim because notice was sent to defendant's agent in Delaware, not California).

### F.    Count Three Does Not Allege The Intent Element Under CLRA § 1770(a)(9).

The CLRA proscribes 28 categories of "deceptive acts or practices." Cal. Civ. Code § 1770(a). Section 1770(a)(9) prohibits "[a]dvertising goods or services with *intent* not to sell them as advertised." *Id.* § 1770(a)(9) (emphasis added). By its terms, § 1770(a)(9) "specifically requires [pleading] intent to defraud, which, in turn, implies knowledge of the falsity." *In re Sony PS3 "Other OS" Litig.*, 551 F. App'x 916, 921 (9th Cir. 2014); *Shu v. Toyota Motor Sales USA, Inc.*, 669 F. Supp. 3d 888, 901 (N.D. Cal. 2023) (same). As set out in Section I.C *supra*, the Complaint does not allege that Defendant knew or should have known that its representations or omissions were false, making it impossible to allege Defendant "intend[ed] to defraud" consumers, as required to state a § 1770(a)(9) claim.

1

2

**II.    COUNT FOUR (BREACH OF WARRANTY) FAILS ON SEVERAL GROUNDS.**

**A.    The Express Warranty Claim Should Be Dismissed Because There Was Neither A Breach Nor Pre-Suit Notice.**

3

**_1._    _No express warranty was breached._**

4

5

6

7

"To prevail on a breach of express warranty claim, Plaintiffs must prove: (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." _Rugg v. Johnson & Johnson_, No. 17-CV-05010-BLF, 2018 WL 3023493, at *4 (N.D. Cal. June 18, 2018).

8

9

10

11

12

13

14

15

16

17

As an initial and fundamental failure, Count Four does not allege that the purported breach of express warranty arose from a failure to meet any _express_ statements, but rather because "the Products do not conform to the Material Omission." (_Am. Compl._ ¶ 137.) An express warranty cannot be based on an _omission_. _See, e.g._, Cal. Com. Code § 2313 ("Express warranties by the seller are created as follows: (a) Any _affirmation of fact or promise_ made by the seller to the buyer which relates to the goods … (b) Any _description_ of the goods which is made part of the basis of the bargain….") (emphasis added); _Shubin v. Universal Vacation Club_, 622 F. Supp. 3d 849, 855 (C.D. Cal. 2022), _aff'd_, No. 23-55016, 2024 WL 1367176 (9th Cir. Apr. 1, 2024) ("To adequately allege … an express warranty, a plaintiff must identify a specific and unequivocal _written statement_….") (emphasis added). On this basis alone, the express warranty claim fails.

18

19

20

21

22

23

24

25

26

27

The only affirmative statements the Complaint mentions—and so the only statements that could constitute express warranties—are that the Products are "BPA Free" and the baby bottles are "#1 Pediatrician Recommended." As discussed in Section I.A _supra_, these statements do not say what the Complaint claims they do: they say nothing about safety generally or MPs specifically, let alone guaranteeing that the Products do not pose risks or contain any harmful plastic byproducts, as the Complaint insists. (_See Am. Compl._ ¶¶ 3, 5-6.) To the extent the statements created an express warranty, the warranty is that the Products contain no BPA and are the most recommended. Both statements are limited, precise, clear, substantiated, and true. No such warranty has been breached. _See Rugg_, 2018 WL 3023493, at *4 (dismissing false-labeling breach of warranty claim due to "[p]laintiff's implausible definition" of the terms at issue).

28

---

17

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.    *Plaintiffs did not provide the required pre-suit notice.*

"To avoid dismissal of a … breach of warranty claim in California, [a] buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011); *Nilsen v. Tesla, Inc.*, No. 22-CV-07472-BLF, 2023 WL 7346071, at *3 (N.D. Cal. Nov. 6, 2023) (same).[10]

The Complaint points to a February 5, 2024, letter from Plaintiff's counsel to Defendant. (*Am. Compl.* ¶ 134; Palansky Decl. ¶ 7 and Ex. F thereto.) This letter and the associated allegations fail to satisfy the notice requirement for at least three reasons.

*First*, the letter does not mention breach of any warranty, only supposed violation of the CLRA. The letter therefore did not provide Defendant with notice of the warranty claims.

*Second*, the February 5, 2024 letter was not sent "within a reasonable time after discovery of the breach." Plaintiff Cortez—the only Plaintiff mentioned in the letter—allegedly purchased Dr. Brown's baby bottles "[i]n or around December 2022 and January 2023." (*Am. Compl.* ¶ 15.b.) The February 5, 2024 letter was not sent until over a year later. The Complaint does not plead when Cortez discovered the alleged breach nor does it suggest any justification for the extended delay; this alone is sufficient basis for dismissal. *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817–18 (N.D. Cal. 2014) (dismissing warranty claims where complaint did not allege the date of breach, preventing a determination of whether notice was provided in a reasonable time).

---

[10] Courts are split regarding whether notice must be provided before bringing an express warranty claim if the defendant is a manufacturer from which a plaintiff did not purchase the product. *See Lengen v. Gen. Mills, Inc.*, 185 F. Supp. 3d 1213, 1222-23 (E.D. Cal. 2016) (holding consumers' failure to provide pre-suit notice to manufacturer defendant required dismissal of breach of express warranty claim); *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1196 (S.D. Cal. 2015) (same). *But see Lopez v. Johnson & Johnson*, 654 F. Supp. 3d 997, 1016 (C.D. Cal. 2023) ("[W]here, as here, a breach of express warranty claim is brought by injured consumers against manufacturers with whom they have not dealt, then notice is not required."). Respectfully, cases holding that notice is not required are wrong. As the Ninth Circuit emphasized, "[t]he purpose of giving notice of breach is to allow the breaching party to cure the breach." *Alvarez*, 656 F.3d at 932. More fundamentally, "a breach of express warranty claim is not premised on defects alone, but rather, *on how the seller responds to the buyer's request to remedy those defects* pursuant to the terms of the express warranty." *Crown Cell Inc. v. Ecovacs Robotics Inc.*, No. 21-CV-07890-SI, 2022 WL 4087512, at *5 (N.D. Cal. Sept. 6, 2022) (emphasis added). In other words, there can be no breach until *the warranting party fails to observe the warranty's terms*. Absent notice, a defendant has no opportunity to meet the warranty's terms and so cannot have breached.

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

Delays in providing notice of a year or even a few months have been held untimely as a matter of law. *See, e.g.*, *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1093 (C.D. Cal. 2017) (dismissing warranty claim with prejudice where plaintiff waited more than one year before notifying defendant); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at *8 (N.D. Cal. Mar. 14, 2014) (finding notice 16 months after discovery of breach untimely, and dismissing warranty claim with prejudice); *Ice Bowl, Inc. v. Spalding Sales Corp.*, 133 P.2d 846, 921-22 (Cal. Ct. App. 1943) (holding notice given four months after purchase untimely).

*Third*, the February 5, 2024, letter was sent on behalf of Cortez only (Exhibit F, at 1); the Amended Complaint does not and cannot allege that Plaintiffs Miller and Wojciechowski provided any notice of their warranty claims. Absent such notice, the breach of warranty claims of those two Plaintiffs should be dismissed.

**B.    The Implied Warranty Claim Fails Because The Products Are Merchantable And Plaintiffs Lack Privity With Defendant.**

Count Four appears to assert that an implied warranty was breached because the alleged release of MPs renders the Products unsafe. (*See Am. Compl.* ¶¶ 3, 136.) For the reasons set out in Section I.B.2 *supra*, the Complaint fails to allege facts showing the Products are unsafe, thus defeating Count Four's claim that the Products were not merchantable. *See Hayden*, 2024 WL 1643696 at *10 (dismissing implied warranty claim where "Plaintiff has not plausibly pled that the Products are unsafe … because Plaintiff fails to allege that the level of cadmium allegedly present in the Products constitute a level at which the complained-of health risks occur.").

Moreover, "a plaintiff alleging a breach of implied warranty claim must be in vertical privity with the defendant." *Lee v. Nature's Path Food, Inc.*, No. 23-CV-00751-H-MSB, 2023 WL 7434963, at *4; *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (same). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain. Thus, an end consumer ... who buys from a retailer is not in privity with a manufacturer." *Lee*, 2023 WL 7434963, at *4; *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 754 (N.D. Cal. 2021). Plaintiffs purchased the Products at Target and Amazon, (*Am. Compl.* ¶¶ 13.b, 14.b., 15.b),

so they are not in privity with Defendant, and their implied warranty claim fails as a matter of law. *See Lee*, 2023 WL 7434963, at *4–5.

## III. COUNT FIVE'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

### A. The Parties' Rights Are Governed By Contract.

"[U]njust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Olmos v. T. Marzetti Co.*, No. LACV21-03159 JAK (MRWx), 2022 WL 18358950, at *13 (C.D. Cal. Oct. 11, 2022); *Silverman v. Wells Fargo & Co.*, No. 18-CV-03886-YGR, 2018 WL 6046209, at *4 (N.D. Cal. Nov. 19, 2018) (*Rogers, J.*) (same).

A valid contract defining the Parties' rights exists here. *First*, "Plaintiff[s'] damages in this action result from [their] direct purchase of the Product which, under the California Commercial Code, creates an express contract between the buyer and seller." *Smith v. Allmax Nutrition, Inc.*, No. 1:15-CV-00744-SAB, 2015 WL 9434768, at *9–10 (E.D. Cal. Dec. 24, 2015). *Second*, the Complaint asserts a claim for breach of express warranty, thus alleging a contract (warranty) governs the parties' rights. *See Olmos*, 2022 WL 18358950, at *13 (dismissing unjust enrichment claim when "Plaintiff's purchase of the Products … is covered by the express warranty that Plaintiff alleges was breached in the breach of express warranty claim"); *Clark v. Am. Honda Motor Co.*, No. CV20-03147 AB (MRWx), 2021 WL 4260232, at *5 (C.D. Cal. Sept. 14, 2021) (similar). Because the parties' rights are governed by contract, unjust enrichment fails.

### B. Dismissal Of The Other Claims Mandates Dismissal Of The Unjust Enrichment Claim.

An unjust enrichment claim must be dismissed if other claims premised on the same facts are dismissed. *See Lee*, 2023 WL 7434963, at *6 (collecting cases); *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. CV-16-1442 PSG (MRWx), 2017 WL 4676585, at *9 (C.D. Cal. Oct. 10, 2017). The basis for Plaintiffs' unjust enrichment claim is identical to Plaintiffs' other claims. (*See Am. Compl.* ¶¶ 142-148.) If the Court grants Defendant's motion to dismiss Plaintiffs' other claims, then the unjust enrichment claim must be dismissed as well.

**IV.  PLAINTIFFS LACK STANDING TO ASSERT CLAIMS RELATING TO PRODUCTS THEY DID NOT PURCHASE.**

The Complaint alleges Plaintiffs each purchased a specific type of baby bottle. (*Id.* ¶¶ 13.b, 14.b., 15.b.) Nevertheless, it asserts claims with respect to *all* Dr. Brown's bottles *and sippy cups*. (*Id.* ¶¶ 2, 8.) In the absence of Ninth Circuit precedent, some courts have concluded that a plaintiff lacks standing to assert claims regarding products they did not purchase, reasoning they could not have been harmed by alleged misrepresentations about unpurchased products. *See, e.g., Granfield v. NVIDIA Corp.*, No. C-11-05403, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012). This line of authority defeats Plaintiffs' claims as to sippy cups and unpurchased types of baby bottles.

Dr. Brown's recognizes that a majority of decisions in this district hold that plaintiffs may assert claims relating to products they did not purchase "so long as the products and alleged misrepresentations are substantially similar." *Brown v. Nature's Path Foods, Inc.*, No. 21-cv-05132-HSG, 2023 WL 2699978, at *4 (N.D. Cal. Mar. 29, 2023) (citation omitted). "That determination [of 'substantial similarity'] necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.*

Even if this Court adopted the "substantial similarity" standard here, Plaintiffs lack standing to assert claims as to Dr. Brown's sippy cups. Plaintiffs allege that the Products are deceptively labeled because they leach MPs *when heated*. (*See Am. Compl.* ¶ 28 (alleging "consumers understand that the regular and ordinary use of *baby bottles* involves holding heated liquids") (emphasis added).) Unlike baby bottles, sippy cups are used to hold liquids such as juice or water that are *not* heated. Thus, it cannot be said "the resolution of the asserted claims will be identical" as between baby bottles and sippy cups; to the contrary, the core premise of Plaintiffs' claims does not apply to sippy cups. *Ang v. Bimbo Bakeries USA, Inc.*, No. 13 C 1196-WHO, 2014 WL 1024182, at *8–9 (N.D. Cal. Mar. 13, 2014) (dismissing claims as to unpurchased products where "fact-specific analyses of each product will be required"). Because no Plaintiff purchased sippy cups, and sippy cups do not satisfy the "substantial similarity" test, Plaintiffs lack standing to assert claims as to sippy cup Products.

**V.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF BECAUSE THERE IS NO REASONABLE LIKELIHOOD OF FUTURE INJURY.**

To seek injunctive relief, "the threat of [future] injury" must be "actual and imminent, not conjectural or hypothetical," *In re PFA Ins. Mktg. Litig.*, 696 F. Supp. 3d 788, 805 (N.D. Cal. 2021) (*Rogers, J.*). A plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 946 (9th Cir. 2011).

Plaintiffs cannot meet these requirements. The Complaint makes boilerplate allegations that Plaintiffs face *possible future* injuries because—absent label changes—they "are likely to believe that the Products have been reformulated to address the issue of microplastics leaching, making them safe for babies and young children"; and this belief would "lead Plaintiffs to purchase the Products again, exposing them to the same harm they initially experienced." (*Am. Compl.* ¶ 16.) But these allegations of potential future injury are entirely unconvincing and should be rejected for at least two reasons.

*First*, the Complaint's vague allegation that Plaintiffs "desire to purchase the Products again" at some unspecified time, (*id.* ¶ 16; *see also id.* ¶¶ 13.g, 14.g, 15.g), is insufficient. As this Court recently held, "[a] 'some day' intention[ ]—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do[es] not support a finding of the actual or imminent' injury that' Article III requires. Nor does a statement that a plaintiff would 'consider buying' products satisfy this standard." *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4 (emphasis in original).

*Second*, Plaintiffs are now fully aware of, *and can easily identify and avoid*, the supposed risk. When a plaintiff "do[es] not need to purchase the Products again in order to know [whether the alleged problem persists]," and fails to "explain why he will be deceived by [the alleged problem] in the future, now that he knows that he can easily determine [whether it persists]," there is no likelihood of future injury and no standing to pursue injunctive relief. *Joslin v. Clif Bar & Co.*, No. 18-cv-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) (internal quotation omitted); *see also Slowinski*, 2024 WL 3757097, at *6 (dismissing demand for injunctive relief in MP water bottle case because defendant's "labeling can't trick Plaintiffs anymore").

The Complaint's core theory is that, when heated, *all* polypropylene products *unavoidably* release MPs. (*See Am. Compl.* ¶¶ 38-41 ("Heating Polypropylene Releases Harmful Microplastics").) Thus, no modification of the Products could correct this supposed issue. If the issue cannot be corrected, then there is no possibility Plaintiffs could reasonably "believe that the Products have been reformulated to address the issue of microplastic [release]," (*id.* ¶ 16), no likelihood that that they would purchase them again, and no possibility of future harm. For example, Plaintiffs can simply purchase glass or silicone bottles instead.[11]

Plaintiffs cannot plausibly allege that there is any risk they will purchase the Products in the future oblivious to whether they release MPs. They lack standing to seek injunctive relief.

## VI. THE COURT SHOULD STRIKE THE COMPLAINT'S REQUESTS TO CERTIFY NATIONWIDE BREACH OF WARRANTY AND UNJUST ENRICHMENT CLASSES.

Although class certification is generally determined after some discovery has occurred, "[a] court may strike class allegations prior to discovery where the complaint shows that a class action cannot be maintained on the facts alleged." *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *4 (N.D. Cal. June 15, 2015) (quotation omitted). In particular, "[i]f the issue is purely legal in nature, then it may make little sense … to wait until class certification proceedings to resolve it …." *Phan v. Sargento Foods, Inc.*, No. 20-CV-09251-EMC, 2021 WL 2224260, at *7 (N.D. Cal. June 2, 2021).

### A. Material Differences In The 50 States' Laws Preclude Certification Of A Nationwide Unjust Enrichment Class.

If a nationwide class were certified, each class member's claims would be governed by the law of the state where they purchased the Product and allegedly were injured. *See, e.g.*, *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 657-58 (N.D. Cal. 2019) ("Given that it would be unconstitutional to apply California unjust enrichment law to the claims of a nationwide class, the

---

[11] The Amended Complaint's allegation that "Plaintiffs' lack of expertise in plastic composition leaves them unable to independently verify whether the Products have indeed been modified to eliminate the risk of microplastic contamination," (*Am. Compl.* ¶ 16), is a red herring. The Complaint's core theory is that any plastic baby bottle or sippy cup releases MPs. *See* pp. 20-21 *supra*. No "expertise" is needed to identify such products; Plaintiffs need only be able to differentiate plastic Products from products made of glass or steel.

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

laws from all 50 states would have to apply."), *rev'd on other grounds*, 2019 WL 5191009 (N.D. Cal. Oct. 15, 2019); *Phan*, 2021 WL 2224260, at *6 ("the law applicable to each class member is the law of the state in which they purchased the … Product").

This Court has repeatedly held that nationwide unjust enrichment classes cannot be certified because significant differences across state laws preclude satisfaction of Rule 23's requirements. In *Pistacchio v. Apple Inc.*, No. 4:20-CV-07034-YGR, 2021 WL 949422, at *3 (N.D. Cal. Mar. 11, 2021) (*Rogers, J.*), this Court "str[uck] from the complaint the nationwide class allegations related to the unjust enrichment claim," explaining:

> Plaintiffs, though, cannot point to a single case in this Circuit to [certify a nationwide unjust enrichment class] since the Ninth Circuit addressed the issue in *Mazza v. American Honda Motor Co., Inc.* This is unsurprising given that, in *Mazza*, the Ninth Circuit unequivocally held that the "elements necessary to establish a claim for unjust enrichment ... vary materially from state to state." It is hard to imagine a clearer directive from our Circuit on this issue.

*Id.* (citation omitted). The Court reiterated the same principle in *Tromble v. W. Digital Corp.*, No. 4:20-CV-08102-YGR, 2021 WL 2165796, at *2 (N.D. Cal. May 27, 2021) (*Rogers, J.*); and again in *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015) (*Rogers, J.*).[12] There is no reason to deviate from those consistent holdings here.

### B.    The Court Should Strike The Complaint's Requests For Nationwide Express And Implied Warranty Classes For The Same Reason.

As with unjust enrichment, differences in state express and implied warranty laws preclude certification of a nationwide class. One court found *nine* outcome-determinative differences across the various states' implied warranty laws. *See Maloney v. Microsoft Corp.*, Civ. No. 09-2047, 2011 WL 5864064, at *8-10 (D.N.J. Nov. 21, 2011) (denying certification of

---

[12] Other courts in this and other districts have reached the same conclusion. *See, e.g., Phan*, 2021 WL 2224260, at *7 ("the law on unjust enrichment … var[ies] too much from state to state such that individualized issues predominate"); *Allen*, 331 F.R.D. at 657 (holding differences in state unjust enrichment law mean that "plaintiffs cannot meet their burden to show that common questions of fact or law predominate over individualized questions as required by Rule 23(b)(3)."); *Camey v. Force Factor, LLC*, No. 14-14717-RWZ, 2016 WL 10998440, at *8 (D. Mass. May 16, 2016) (differences in state unjust enrichment law "massively overwhelm whatever issues the plaintiffs share, and it is for this reason that federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment") (internal quotation omitted).

nationwide class). Courts have reached similar conclusions regarding states' express warranty laws. *See, e.g., Cole v. Gen. Motors Corp.,* 484 F.3d 717, 726-730 (5th Cir. 2007) (reversing certification of nationwide express and implied warranty classes due to material differences in states' laws regarding the definition of merchantability, whether the claims lie in tort or contract, reliance, notice, privity, recovery for unmanifested defects, and whether merchantability may be presumed). Courts routinely deny certification of nationwide express and implied warranty claims on this basis.[13]

## **CONCLUSION**

For the foregoing reasons, all claims should be dismissed. Considering this is Plaintiffs' amended pleading, that dismissal should be with prejudice. Alternatively, the Court should strike the Complaint's requests for injunctive relief and to certify nationwide unjust enrichment and breach of warranty classes.


Dated: November 12, 2024                    */s/ IJay Palansky*
                                            IJay Palansky (SBN 187917)
                                            ipalansky@atllp.com
                                            ARMSTRONG TEASDALE LLP
                                            4642 S. Ulster Street, Suite 800
                                            Denver, Colorado 80237
                                            (720) 200-0676

---

[13] *See, e.g., Phan*, 2021 WL 2224260, at *9 (striking nationwide express warranty claim because differences in state law "[are] a predominance/manageability problem that precludes certification of a Rule 23(b)(3) class") (collecting cases); *Young v. Neurobrands, LLC*, No. 18-CV-05907-JSW, 2020 WL 11762212, at *9-10 (N.D. Cal. Oct. 15, 2020); *Tsonev v. Kia Motors Am., Inc.*, No. SACV 16-01020-CJC(DFMx), 2016 WL 10000244, at *5 (C.D. Cal. Nov. 9, 2016); *Darisse v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *11-12 (N.D. Cal. Aug. 15, 2016) (denying certification of nationwide warranty classes due to differences in state express warranty laws regarding privity, reliance, and notice, and differences in state implied warranty law regarding "privity, notice, the availability of class actions, and the definition of merchantability"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) (reversing certification of nationwide breach of warranty classes because variations in state law "have led us to hold that … warranty … suits may not proceed as nationwide classes"); *Carney*, 2016 WL 10998440, at *7 ("tremendous differences among state warranty laws … would dwarf any common questions … and would swamp this litigation to the point of unmanageability").

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

Stephen J. Siegel (*pro hac vice*)
ssiegel@atllp.com
Yvette Mishev (*pro hac vice*)
ymishev@atllp.com
Elizabeth C. Wolicki (*pro hac vice*)
ewolicki@atllp.com
Jack C. Butz (*pro hac vice*)
jbutz@atllp.com

ARMSTRONG TEASDALE LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

Dana J. Finberg (SBN 257459)
dfinberg@ohaganmeyer.com
O'HAGAN MEYER, LLC
One Embarcadero Center, Suite 2100
San Francisco, CA 9411
(415) 578-6902

*Attorneys for Defendant Dr. Brown's Company
f/k/a Handi-Craft Company, Inc.*

Defendant's Motion To Dismiss Amended Complaint And Motion To Strike
Case No. 24-cv-03782-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on November 12, 2024, he caused a true and correct copy of the foregoing ***Defendant's Motion to Dismiss Amended Complaint and Motion to Strike*** to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system.

*/s/ IJay Palansky*