IJay Palansky (SBN 187917)
ipalansky@atllp.com
ARMSTRONG TEASDALE LLP
4642 S. Ulster Street, Suite 800
Denver, Colorado 80237
(720) 200-0676

Dana J. Finberg (SBN 257459)
dfinberg@ohaganmeyer.com
O'HAGAN MEYER, LLC
One Embarcadero Center, Suite 2100
San Francisco, CA 9411
(415) 578-6902

Stephen J. Siegel (*pro hac vice*)
ssiegel@atllp.com
Yvette Mishev (*pro hac vice*)
ymishev@atllp.com
Elizabeth C. Wolicki (*pro hac vice*)
ewolicki@atllp.com
Jack C. Butz (*pro hac vice*)
jbutz@atllp.com
ARMSTRONG TEASDALE LLP
100 North Riverside Plaza
Chicago, IL 60606
(312) 419-6900

*Attorneys for Defendant Dr. Brown's Company*
*f/k/a Handi-Craft Company, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

TULIISA MILLER, et al.

                Plaintiffs,

    v.

HANDI-CRAFT COMPANY, INC.

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 24-cv-03782-YGR

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT AND MOTION TO STRIKE**

Hearing Date: February 4, 2025
Hearing Time: 2:00 p.m.
Courtroom: 1 – 4th Floor
Judge: Hon. Yvonne Gonzalez Rogers

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................1

I.     The Opposition's Arguments On Counts One, Two, And Three Lack Merit. ...............1

     A.     Plaintiffs' Interpretation Of The Statements And Label Is Unreasonable. .........1

     B.     The Opposition All But Ignores The Controlling Requirements For Pleading "Central To The Product's Function" And "Unreasonable Safety Hazard." ................................................................................................3

     C.     The Opposition Ignores The Requirements For Pleading A Defendant's Knowledge ...................................................................................................9

     D.     It Is Undisputed That If The CLRA And FAL Claims Then UCL "Unfair" And "Unlawful" Claims Also Must Be Dismissed. .........................10

     E.     The CLRA Notice Letter Is Deficient. ...............................................................10

     F.     Count Three Does Not Allege The Intent Required By CLRA § 1770(a)(9). .................................................................................................11

II.     The Opposition's Warranty Arguments Fail. ...............................................................11

III.    The Opposition's Unjust Enrichment Arguments Fail. ...............................................12

IV.    Plaintiffs Lack Standing To Assert Claims As To Sippy Cups Because They Are Not "Substantially Similar" To Baby Bottles. ...............................................................13

V.     Plaintiffs Lack Standing To Seek Injunctive Relief Because The Complaint's Core Theory Precludes Any Likelihood Of Future Harm. ............................................14

VI.    Nationwide Unjust Enrichment And Warranty Classes Cannot Be Certified And So Should Be Stricken. ..............................................................................................15

CONCLUSION .....................................................................................................................15

i

1
2

## <u>TABLE OF AUTHORITIES</u>

3

Cases                                                                                            Page(s)

4

5

*Angiano v. Anheuser-Busch InBev Worldwide, Inc.*,
   532 F. Supp. 3d 911 (C.D. Cal. 2021) ................................................................. 12

6
7

*Ardente, Inc. v. Shanley*,
   No. 07-4479 MHP, 2010 WL 546485 (N.D. Cal. Feb. 10, 2010) ........................... 11

8
9

*Bland v. Sequel Nat. Ltd.*,
   No. 18-cv-04767, 2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) ............................. 5

10
11

*Brown v. Nature's Path Foods, Inc.*,
   No. 21-cv-05132-HSG, 2023 WL 2699978 (N.D. Cal. Mar. 29, 2023) .................. 13

12
13

*Chavez v. Blue Sky Nat. Beverage Co.*,
   340 F. App'x 359 (9th Cir. 2009) .......................................................................... 4

14
15

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ................................................................................................ 14

16
17

*Correia v. Johnson & Johnson Consumer Inc.*,
   No. CV 18-9918 PSG (ASX), 2019 WL 2120967 (C.D. Cal. May 9, 2019) ........... 3

18
19

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017) .............................................................................. 14

20
21

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) .............................................................................. 3

22
23

*Galaza v. Mayorkas*,
   61 F.4th 669 (9th Cir. 2023) ................................................................................. 11

24
25

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
   No. 23-cv-03862, 2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) ........................... 5

26

*Horsley v. Kaiser Found. Hosps., Inc.*,
   No. 23-CV-05628-AMO, 2024 WL 3956313 (N.D. Cal. Aug. 26, 2024) .......... 1, 11

27
28

*In re Lindt & Sprungli (USA), Inc.*,
   No. 23-cv-1186, 2024 WL 4107244 (E.D.N.Y. Sep. 6, 2024) ................................ 8

*In re Plum Baby Food Litig.*,
   No. 4:21-cv-00913-YGR, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024) ......................passim

*In re Trader Joe's Co. Dark Chocolate Litig.*,
   726 F. Supp. 3d 1150 (S.D. Cal. 2024)........................................................5, 7, 8, 9

*Krystofiak v. Bellring Brands, Inc.*,
   No. 23-cv-02819-AGT, 2024 WL 3012801 (N.D. Cal. June 14, 2024) ..................................6

*Lee v. Nature's Path Food, Inc.*,
   No. 23-CV-00751-H-MSB, 2023 WL 7434963 (S.D. Cal. Nov. 9, 2023) ...........................12

*Maner v. Dignity Health*,
   9 F.4th 1114 (9th Cir. 2021) ....................................................................................4

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ......................................................................................3

*Moreno v. Vi-Jon, LLC*,
   No. 20cv1446 JM (BGS), 2023 WL 4611823 (S.D. Cal. July 18, 2023) ..............................3

*Mui Ho v. Toyota Motor Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013) ......................................................................5

*Newsom v. Countrywide Home Loans, Inc.*,
   714 F. Supp. 2d 1000 (N.D. Cal. 2010) ...................................................................10

*Phan v. Sargento Foods, Inc.*,
   No. 20-CV-09251-EMC, 2021 WL 2224260 (N.D. Cal. June 2, 2021)................................15

*Pistacchio v. Apple, Inc.*,
   No. 20-cv-07034-YGR, 2021 WL 949422 (N.D. Cal. March 11, 2021)................................15

*Renn v. Otay Lakes Brewery, LLC*,
   No. 23-cv-1139-GPC, 2024 WL 331616 (S.D. Cal. Jan. 29, 2024) ................................14, 15

*Shin v. Sanyo Foods Corp. of Amer.*,
   No. 2:23-cv-10485, 2024 WL 4467603 (C.D. Cal. Aug 13, 2024) .........................................12

*Silverman v. Wells Fargo & Co.*,
   No. 18-CV-03886-YGR, 2018 WL 6046209 (N.D. Cal. Nov. 19, 2018)................................13

*Smith v. General Motors LLC*,
   988 F.3d 873 (6th Cir. 2021) ................................................................................9, 10

*Steiner v. Vi-Jon Inc.*,
    723 F. Supp. 3d 784 (N.D. Cal. 2024) ....................................................3

*Swartz v. Dave's Killer Bread, Inc.*,
    No. 4:21-cv-10053-YGR, 2023 WL 11965055 (N.D. Cal. Jan. 9, 2023)..............................13

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................9

*Tromble v. W. Digital Corp.*,
    No. 4:20-CV-08102-YGR, 2021 WL 2165796 (N.D. Cal. May 27, 2021) ...........................15

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..........................................................3

*Verde Media Corp. v. Levi*,
    No. 14-cv-00891-YGR, 2015 WL 374934 (N.D. Cal. Jan. 28, 2015)....................................12

*Vitiosus v. Alani Nutrition, LLC*,
    No. 21-CV-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. July 5, 2022)........................3

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ...................................................10

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) .........................................................6

*Zeiger v WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021) ..................................................8

Statutes

Cal. Civ. Code § 1782(a)(2) ...............................................................10, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant's Reply in Support of Motion to Dismiss and Motion to Strike
Case No. 24-cv-03782-YGR

1

**INTRODUCTION**

Plaintiffs' Opposition to Defendant's Motion to Dismiss and Motion to Strike (Dkt. #37) ("Opposition") repeatedly mischaracterizes the Motion (Dkt. # 33), the applicable pleading standards, and even the science on which Plaintiffs' own Amended Complaint (Dkt. #31) ("Complaint") and Opposition extensively rely. But Plaintiffs' attempts to run from or muddy the Motion's arguments and controlling authority fail. The following dispositive points are not meaningfully disputed: (1) the Complaint provides no basis for its self-serving interpretation of the Products' labels, including the "BPA Free" and "#1 Pediatrician Recommended" statements (the "Statements"), other than counsel's *ipse dixit*; (2) the Complaint does not (and cannot) allege that any level of ingestion of microplastics ("MPs") has been established as unsafe, let alone that the Products release levels of MPs that exceed such a threshold; and (3) the Complaint alleges no facts showing that, at the time of Plaintiffs' purchases, Defendant knew either that the Products released MPs or that MPs (supposedly) cause adverse health effects. These pleading failures, and others discussed in the Motion and below, require dismissal of all claims.

**ARGUMENT**

**I.    THE OPPOSITION'S ARGUMENTS ON COUNTS ONE, TWO, AND THREE LACK MERIT.**

**A.    Plaintiffs' Interpretation Of The Statements And Label Is Unreasonable.**

Front and center in any consumer fraud case is the supposed fraud or deception. Accordingly, that is the focus of the Motion's *first* argument. In contrast, the Opposition avoids addressing the point until page 15. Burying the issue does not make the Opposition's arguments any stronger, nor the Complaint's pleading failures any less apparent.

As a threshold matter, the Opposition does not dispute that the Complaint: (i) asserts UCL, FAL, and CLRA claims *only* as to the alleged *omission*, not any affirmative representation (*see* Motion at 5; Opp. at 15-16); and (ii) fails to allege that any Plaintiff saw, let alone relied on, the "BPA Free" statement. (*See* Motion at 6; Opp. at 15-16). These points are conceded, *see, e.g.*, *Horsley v. Kaiser Found. Hosps., Inc.*, No. 23-CV-05628-AMO, 2024 WL 3956313, at *5 (N.D. Cal. Aug. 26, 2024) ("Plaintiffs fail to oppose these arguments, and thus concede them"), thus requiring dismissal of any claim premised on the "BPA Free" or "#1 Pediatrician Recommended"

Statements, including any omission theory relying on the "BPA Free" Statement.

If, nonetheless, the Court finds that the Statements are in play, then the question becomes whether the Complaint's interpretation of the labels is reasonable; specifically, that the "#1 Pediatrician Recommended" statement "conveys … that the Products *do not pose risks"* and that the "BPA Free" statement "mean[s] the Product is *guaranteed … to not contain harmful plastic byproducts*." (*Am. Compl.* ¶¶ 5-6; Motion at 6) (emphasis added). Perhaps understandably, the Opposition distances itself from these implausible interpretations—it never mentions them. Instead, the Opposition argues that the two Statements work together to convey that the Products are "safe." (Opp. at 15). But the Opposition fails to explain how it arrives at that promise of "safety" independent of the Complaint's unreasonable interpretations of the Statements. The labels never mention "safety" or anything similar; the Opposition's speculation regarding how consumers understand the labels is based on the Complaint's speculation regarding how consumers interpret the "BPA Free" and "#1 Pediatrician Recommended" Statements. Those unreasonable interpretations are essential to the Complaint's theory of deception. (*Id.* ("Plaintiffs here expressly allege that the 'BPA Free' and '#1 Pediatrician Recommended' representations further consumer deception")).

Regardless, the Opposition's theory that the Statements and omission lead the reasonable consumer to believe the Products to be universally "safe" (at least from plastic-related harm) runs squarely into the contrary authority the Motion discusses. Just as in those cases, the consumer fraud claims here assert that specific, limited marketing representations are technically true but misleadingly convey a more general point, such as that a product is generally safe. Such theories are consistently dismissed, as courts hold as a matter of law that specific, limited statements cannot reasonably be interpreted to constitute the broad, general promises the consumer fraud claims imagine. (*See* Motion at 6-9).

The Opposition's attempt to distinguish those cases consists of nothing more than doubling down on the *ipse dixit* of which the Motion (at 4) complained. The Opposition's entire "analysis" is the statement that "Plaintiffs allege that [the Statements] convey[] a very specific message: that the Products are 'safe and free from harmful plastics.'" (Opp. at 16). That statement

Defendant's Reply in Support of Motion to Dismiss and Motion to Strike
Case No. 24-cv-03782-YGR

assumes the conclusion in question; it cannot substitute for facts or logic. Courts regularly grant motions to dismiss where claims are based on such expansive, unsupported, and unreasonable theories of deception. *See, e.g.*, *Moore v. Trader Joe's Co.,* 4 F.4th 874, 882-83 (9th Cir. 2021); *Moreno v. Vi-Jon, LLC,* No. 20cv1446 JM (BGS), 2023 WL 4611823, at *5 (S.D. Cal. July 18, 2023); *Vitiosus v. Alani Nutrition, LLC*, No. 21-CV-2048-MMA (MDD), 2022 WL 2441303, at *14 (S.D. Cal. July 5, 2022); *Correia v. Johnson & Johnson Consumer Inc.*, No. CV 18-9918 PSG (ASX), 2019 WL 2120967, at *4-5 (C.D. Cal. May 9, 2019).

**B.    The Opposition All But Ignores The Controlling Requirements For Pleading "Central To The Product's Function" And "Unreasonable Safety Hazard."**

***1.    The articles on which the Complaint and Opposition rely are fair game, and they conclude that a health risk from MPs has not been established.***

The Opposition repeatedly urges the Court to credit its arguments and the Complaint's allegations because they are supposedly backed by peer reviewed articles (*see, e.g.*, Opp. at 3, 6, 7, 10, 11). Yet, the Opposition also desperately implores the Court to ignore what those articles *actually* say. (Opp. at 1, 5). This improper attempt to insulate a complaint's mischaracterizations of documents on which it relies is the exact reason for the incorporation by reference doctrine. That doctrine gives "the court [ ] discretion to consider on a motion to dismiss 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Steiner v. Vi-Jon Inc.*, 723 F. Supp. 3d 784, 789 (N.D. Cal. 2024) (quoting *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts are not required to blindly accept a plaintiff's mischaracterization of documents that compose the foundation of their pleaded theory and claims.

The Motion's use of the Complaint's articles is perfectly consistent with the incorporation by reference doctrine's purpose. The Motion presents neither "an unjustified attack on Plaintiffs' science" (Opp. at 4), nor an "invitation [for the Court] to determine conclusively, at the pleading stage" any disputed scientific issue (*id.* at 4; *see also id.* at 2, 10, 15). Rather, the Motion quotes the Complaint's own articles for a limited purpose: illustrating that they unequivocally conclude that no link between MPs and adverse health effects has been established. This refutes both the

Defendant's Reply in Support of Motion to Dismiss and Motion to Strike
Case No. 24-cv-03782-YGR

Complaint's core theory and several elements of the claims, including that a safety threshold for MPs has been determined (as required to satisfy the "unreasonable safety hazard" test), and that Defendant knew or should have known that MPs are released from its Products at harmful levels. (*See* Motion at 12-13, 15).[1]

If, as the Opposition claims, the Motion's discussion of the articles were inaccurate, one would expect the Opposition to set out a litany of quotations categorically proving the Motion wrong. The absence of any such response tells the Court all it needs to know: the Motion's quotations of the Complaint's articles (*id.* at 3)[2] accurately describe the articles' conclusions. This isn't a "premature … battle of the experts" (Opp. at 5), but an altogether proper instance of Defendant showing that *the Complaint's own* "expert" articles do not say what the Complaint and Opposition claim they do. The articles Plaintiffs cite do not establish that MPs cause harm, thus rendering the Complaint's central premise unsupported.

### 2. *The Opposition ignores the test that controls whether MPs are central to the baby bottle's function.*

For an alleged problem to be "central to the product's function" the product must be "incapable of use by any consumer." (Motion at 9) (quoting *In re Plum Baby Food Litig.,* No. 4:21-cv-00913-YGR, 2024 WL 1354447, at *4, *6 (N.D. Cal. Mar. 28, 2024). Remarkably, the Opposition does not even mention that standard, let alone argue that the Complaint meets it.

---

[1] The Opposition cites *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359 (9th Cir. 2009), for its statement that "scientific evidence challenges [are] premature at the pleading stage." (Opp. at 10). As noted, the Motion does not challenge "scientific evidence," it just accurately recites it. Regardless, *Chavez*'s holding is not what the Opposition claims. *Chavez* does not even address scientific evidence. In passing, it makes the unexceptional observation that "[a] motion to dismiss is not a procedure for resolving a contest … about the facts or the substantive merits of the plaintiff's case." *Id.* at 360. That is not what the Motion asks the Court to do. The Motion focuses on whether the Complaint's conclusions and allegations are plausible given that they are not supported by the scientific authorities the Complaint itself invokes.

[2] The Opposition's argument that the Court should not consider the FDA's statement (Opp. at 11-12) is wrong. The Court may take judicial notice of the FDA's *positions*—including that "[c]urrent scientific evidence does not demonstrate that levels of microplastics … detected in foods pose a risk to human health" (Motion at 3)—without deciding if those positions are scientifically correct. *See Maner v. Dignity Health*, 9 F.4th 1114, 1126 (9th Cir. 2021) ("it is well established that courts may take judicial notice of an agency's position").

---

Instead, the Opposition proposes a vague alternate standard that a defect satisfies the "central to a product's function" test if it "pos[es] safety risks." The support it cites consists of two older cases, *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013), and *Bland v. Sequel Nat. Ltd.*, No. 18-cv-04767, 2019 WL 4674337 (N.D. Cal. Aug. 2, 2019). (Opp. at 6). But *Bland* discusses allegations required to state a claim *for breach of implied warranty*. 2019 WL 4674337, at *4. And *Mui Ho* addresses a different standard, which conflates the duty to disclose with whether the reasonable consumer would consider an alleged safety issue to be *material*. *Mui Ho*, 931 F. Supp. 2d at 997. Neither case addresses the test that controls here.

The Opposition's attempt to distinguish the *Hayden* and *Slowinski* cases is also misplaced. (*See* Opp. at 7). The Motion does not rely on either case on this issue. (*See* Motion at 9-10). In any event, *Hayden* held—on a motion to dismiss—that the plaintiff had not satisfied the "incapable of use" test despite alleging that levels of cadmium in the defendant's food product exceeded the MADL. *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, No. 23-cv-03862, 2024 WL 1643696, at *9-10 (N.D. Cal. Apr. 16, 2024). And *Slowinski* was decided under Seventh Circuit precedent and so did not address the central function test at all.

### 3. The Opposition's discussion of materiality and the *LiMandri* factors is irrelevant.

The Opposition devotes considerable space to whether the Complaint sufficiently alleges that the omission was material and satisfies the *LiMandri* factors. (Opp. at 7-10). This section is irrelevant; the Motion argues neither point.

### 4. The Complaint does not allege an "unreasonable safety hazard."

The "unreasonable safety hazard" test requires allegations that products "are unreasonably hazardous *at the particular levels in the specific Products at issue*." *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170 (S.D. Cal. 2024) (emphasis added). The Motion quotes recent case after recent case applying this standard, which demands allegations of both (i) the "level" (or "amount") of the allegedly hazardous substance released, and (ii) that such level exceeds the scientifically established safety threshold. (Motion at 10-13).

The Opposition does not contend that the Complaint satisfies this test. Nor could it. As the Motion explains, the Complaint does not allege either a scientifically established safety threshold or the level of MPs released from the Products.[3]

Instead, the Opposition again ignores the applicable test and argues that the Complaint need only plead a "*sufficient nexus* between the alleged defect and its safety impact," (Opp. at 10 (emphasis added)), citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). The Opposition advocates the wrong standard, and its reliance on *Williams* is misplaced. *Williams* involved an alleged design defect in outboard boat motors that caused premature corrosion. *Id.* at 1019. Unlike a mechanical product with a design defect, the Complaint here alleges that the Products release MPs at levels that harm human health. The litany of cases cited in the Motion address precisely the question raised by the latter fact pattern: how much of a substance must be ingested for the product to pose an "unreasonable safety hazard"? All of the Motion's cases answer that question identically: a complaint must allege that the *levels* of the substance ingested from the product exceed the scientifically established safety threshold. (Motion at 11-13); *see also Krystofiak v. Bellring Brands, Inc.*, No. 23-cv-02819-AGT, 2024 WL 3012801, at *8 (N.D. Cal. June 14, 2024) (dismissing UCL claim where plaintiffs failed to allege the safe level of lead, "[o]therwise, a conclusory allegation that lead content, measured at *any* level … could support a claim, which could produce a preposterous result.") (emphasis in original).

The error of the Opposition's proposed test is illustrated by its failure to offer any guidance regarding how a court should determine whether any nexus is "sufficiently close." *Williams*, 851 F.3d at 1028. By contrast, the Motion's cases provide just such guidance: when the safety issue

---

[3] The Opposition argues that "Defendant's Products … expos[e] [babies and infants] to ingestion of microplastics of up to 2,600 times the daily intake of adults." (Opp. at 13). This hyperbole is based on the Complaint's allegation that unidentified "polypropylene feeding bottle[s] can produce up to 16 million" MPs per liter. (*Am. Compl.* ¶ 31). As the Motion explains, that figure comes from an article that does not indicate that any of the tested products were Dr. Brown's. (Motion at 11, n.9). Moreover, the Complaint and Opposition cherry-pick data: The study in question found that the levels of MPs released from the tested bottles varied by *more than an order of magnitude*, with the 16 million MP number being by far the highest. Dunzhu Li et al., *Microplastic Release from the Degradation of Polypropylene Feeding Bottles During Infant Formula Preparation,* 1 NATURE FOOD 746 (Nov. 2020) (Palansky Decl. ¶ 2 and Exhibit G, thereto, at 747-48 and Supplementary Table 1).

Defendant's Reply in Support of Motion to Dismiss and Motion to Strike
Case No. 24-cv-03782-YGR

is ingestion of a harmful substance, the nexus is sufficiently close when the level of exposure from the product at issue exceeds the safety threshold. Unlike the Opposition's nebulous, unworkable approach, this sensible test is tailored to the nature of the alleged issue.

Given the Opposition's tacit admission that the Complaint does not satisfy the correct test set out in *In re Trader Joe's, In re Plum Baby Food*, and many other recent cases, rejection of the Opposition's incorrect alternative standard should decide the issue. However, even if the Opposition's incorrect standard applied, it is not satisfied. The Opposition argues that the Complaint alleges various harms supposedly caused by MPs, pointing to two articles in particular. (*Id.* at 11). Neither says what the Opposition claims it does. According to the Opposition, one study shows that "microplastics disrupt gut microbiota … even at minimal exposure levels." (*Id.*). To the contrary, the article's conclusion is virtually identical to the studies (cited in the Complaint) that are quoted in the Motion: "the effect of microplastics on the human gut microbiome is *uncertain*," and while "[t]his effect on colonic microbiota *might* negatively affect human health … [f]urther research is needed." Alba Tamargo et al., *PET Microplastics Affect Human Gut Microbiota Communities During Simulated Gastrointestinal Digestion, First Evidence of Plausible Polymer Biodegradation DuringHuman Digestion,* 12 SCI. REPS. 528, at 2, 11-12 (2022) ("Tamargo, et al.") (cited in *Am. Compl.* ¶ 18, n.5; Palansky Decl. ¶ 3 and Exhibit H, thereto) (emphasis added)).

The second article the Opposition cites also supports dismissal. First, it summarizes a litany of sources of MPs, including *through the placenta,* cosmetics, clothing, food, tap water, the air, and even *breastmilk*. Nur Hanisah Amran et al., *Exposure to Microplastics During Early Developmental Stage: Review of Current Evidence,* 10 TOXICS 597 (Oct. 10, 2022) at 2-5 (cited in *Am. Compl.* ¶ 19, n.6; Palansky Decl. ¶ 4 and Exhibit E, thereto)*.* Contrary to the claim that the article shows MPs harm fetuses (Opp. at 11), the article actually concludes:

> research on the risk assessment of MPs during early development *is minimal…. The assessment of human risk exposure to MPs remains a research gap* due to the lack of validated methodologies, approved reference materials, and uniformity across the employed analytical processes. Given the wide range of particle size, shape, and chemical composition of plastics, the potentially dangerous consequences of various forms of MPs on mammal and human health *remain unclear*.

---

(*Id.* at 13). The very articles on which the Opposition relies categorically refute that any nexus between MPs and adverse health effects has been established. (*See* Motion at 3, 12-13).[4]

Next, the Opposition asserts that two (of the six) cases on which the Motion relies are "inapposite," because the plaintiffs there supposedly did not allege "thresholds for heavy metals" or otherwise "link[] heavy metals to safety risks." (Opp. at 12-13). Again, the Opposition simply mischaracterizes the cases. The *In re Trader Joe's* complaint relied on a 2022 report finding that the chocolate at issue contained lead and cadmium in doses well above MADLs. *In re Trader Joe's Co.*, 2024 WL 1319725, at *2. And in *In re Plum Baby Food*, the plaintiff:

> [p]rovide[d] evidence that the Baby Food has been shown to contain detectable levels of arsenic, cadmium, lead, mercury, and/or perchlorate, *all known to pose health risks to humans, and particularly to infants and children*. Plaintiffs provide some evidence that at least lead—one of the "heavy metals"—*can be harmful in any amount*. Defendant does not effectively dispute these facts.

726 F. Supp. 3d at 1159 (emphasis added).[5] Thus, contrary to the Opposition's argument (at 12-13), both cases held that the "unreasonable safety hazard" test was not met even in the face of allegations or proof of "thresholds for heavy metals" and "linking heavy metals to safety risks."

Finally, the Opposition misconstrues the Motion to assert that ubiquity of MPs "absolve[s] manufacturers of disclosing material risks." (Opp. at 13). The Motion makes no such claim. As the Motion states, the ubiquity of MPs illustrates the intractability of assigning liability, and cautions that a vague, untethered "sufficient nexus" standard like the one the Opposition proposes would likely result in virtually every producer or seller of any plastic product facing lawsuits and

---

[4] The Opposition's reliance on *In re Lindt & Sprungli (USA), Inc.*, No. 23-cv-1186, 2024 WL 4107244 (E.D.N.Y. Sep. 6, 2024), and *Zeiger v WellPet LLC*, 526 F. Supp. 3d 652, 681 (N.D. Cal. 2021) (Opp. at 11), is thus misplaced, as both cases involved substances with proven adverse impacts. The Opposition's related argument that the necessary "nexus" is satisfied by the cumulative impact from MP exposure over time similarly fails because the Complaint's articles find no causal link between MPs and human health—at any level.

[5] The Opposition claims the Court's January 2022 *In re Plum Baby Food* decision "find[s] safety risk determinations to be factual issues unsuitable for dismissal." (Opp. at 13). Again, the Opposition's case description is unreliable. The Court held that the question of whether consumers found the presence of heavy metals in baby food to be *material* to the *reasonable consumer* was not ripe for resolution on a motion to dismiss. It did not discuss anything relating to safety risk determinations, let alone whether such determinations may be made in deciding a motion to dismiss, in particular where—as here—the Complaint's own articles clearly state that no safety risk has been established.

8

potentially crippling liability. In contrast, the test articulated in *In re Trader Joe's, In re Plum Baby Food*, and the other cases quoted in the Motion (at 10-12)—requiring a showing that products "are unreasonably hazardous at the particular levels in the specific Products at issue," *In re Trader Joe's*, 726 F. Supp. 3d at 1170—provides clear guidance regarding whether incremental exposure from any particular product is actionable.

### C.    The Opposition Ignores The Requirements For Pleading A Defendant's Knowledge

The Motion sets out the requirements for alleging the *scienter* required to support a CLRA, UCL, or FAL claim. (Motion at 13-15). It also explains in detail how the Complaint fails to meet those requirements, including the absence of any allegation that at the time of Plaintiffs' purchases Defendant was aware of the obscure articles (even which, as shown, do not establish that MPs harm infant health) or had any other basis to know of any risk from the Products.

The Opposition ignores all of that discussion. Instead, it first argues that Defendant does not dispute that it knew the Products are *made of polypropylene*. (Opp. at 14). That is the reddest of red herrings. The Complaint must allege facts showing Defendant knew or should have known that the Products *released MPs* and that MPs *cause long-term health hazards*. (Motion at 13-14). The Opposition does not point to a single such factual allegation.

The Opposition also claims that, as the designer and manufacturer, Defendant had unique knowledge of the supposed risks. (Opp. at 14). But that conclusory assumption is far too vague to satisfy the pleading standard, which requires material, specific factual allegations establishing the basis of a defendant's knowledge, such as consumer complaints, government inquiries, or product recalls. (*See* Motion at 14-15); *Tietsworth v. Sears,* 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010) ("a plaintiff cannot establish a duty [to disclose] by pleading, in a purely conclusory fashion, that a defendant was in a superior position to know the truth about a product and actively concealed the defect."); *see also Smith v. General Motors LLC,* 988 F.3d 873, 884 (6th Cir. 2021)

(finding insufficient allegations GM knew of an alleged defect because it was the one that changed the design, conducted pre-production testing, and presumably followed industry standards).[6]

Finally, the Opposition argues that Defendant's "choice" to use the "BPA Free" labeling "demonstrates its awareness of the [Products'] … risks." (Opp. at 14). That is an obvious *non sequitur*. The "BPA Free" statement is *required* by at least one state (*see* Motion at 6 n.5), and suggests nothing about Defendant's knowledge other than that the Products do not contain BPA.

### D. It Is Undisputed That If The CLRA And FAL Claims Then UCL "Unfair" And "Unlawful" Claims Also Must Be Dismissed.

The Opposition does not contest that the UCL "unlawful" claim must be dismissed if the underlying violations are dismissed. (*See* Motion at 16; Opp. at 16). The UCL unlawful prong claim therefore stands or falls with the CLRA and FAL claims. Similarly, when a UCL "unfair prong claim overlap[s] entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive if the fraudulent prong claim fails." (Motion at 15 (quoting *Williams v. Apple, Inc.,* 449 F. Supp. 3d 892, 910 (N.D. Cal. 2020), and citing *In re Plum Baby Food,* 2024 WL 1354447, at *7)). The Opposition does not contest that Plaintiffs' unfair prong claim overlaps entirely with their fraud claims. (*See, e.g.,* Opp. at 17). Its reliance on *Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1010 (N.D. Cal. 2010), for the principle that "[e]ach prong of the UCL is a separate and distinct theory of liability" (Opp. at 17), misses the mark. That general description of the UCL does nothing to call into question the rule applied in *Williams* and *In re Plum Baby Food*.

### E. The CLRA Notice Letter Is Deficient.

The Motion argues that Plaintiff's notice letter failed to satisfy Cal. Civ. Code § 1782(a)(2), because it was sent to Dr. Brown's offices in Missouri, rather than its principal place of business in California, as the statute specifically requires. (Motion at 16). In response, the

---

[6] This case is unlike one alleging a design defect in car brakes, for example. For cars, engineering principles are well known, and an inference that the designer/manufacturer understood certain risks might be reasonable. (Even as to cars, however, conclusory allegations like the Complaint's are insufficient. *See, e.g., Smith,* 988 F.3d at 884). MPs released from heating baby bottles is a very different proposition. There is no allegation that anyone suspected MPs were released from baby bottles until at least late 2020, much less that there was general knowledge such that manufacturers should be presumed to have known of the supposed risk—which, as discussed, *see* pp. 7-8, *supra,* has never been established.

Defendant's Reply in Support of Motion to Dismiss and Motion to Strike
Case No. 24-cv-03782-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Opposition points to two older cases holding that strict compliance with that aspect of the statute is not required. (Opp. at 17-18). Those cases are wrongly decided. Unambiguous statutory language must be strictly construed. *See, e.g.*, *Galaza v. Mayorkas*, 61 F.4th 669, 671 (9th Cir. 2023) ("When interpreting statutes, the court gives effect to the unambiguous words Congress actually used.… We are not at liberty to override congressional intent and read a statutory term contrary to its plain meaning.") (quotation omitted). Section 1782(a)(2) is unambiguous—notice must be provided either where the transaction occurred (i.e., *California*), or at the defendant's principal place of business *in California*. Sending notice to Missouri does not comply.

    **F. Count Three Does Not Allege The Intent Required By CLRA § 1770(a)(9).**

    Nothing in the Opposition affects the Motion's argument on this issue. (*See* Motion at 16).

**II. THE OPPOSITION'S WARRANTY ARGUMENTS FAIL.**

    The Opposition's express warranty arguments fail on multiple grounds. First, the Opposition does not dispute two of the Motion's arguments: (i) that the express warranty claim is impermissibly based on the alleged wrongful *omission*, rather than an affirmative representation; and (ii) that notice was not provided "within a reasonable time after discovery of the breach." (*See* Motion at 17-18). These arguments are conceded. *Horsley*, 2024 WL 3956313, at *5; *Ardente, Inc. v. Shanley*, No. 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010). Each requires dismissal of the express warranty claim.

    The Opposition argues that technical accuracy of marketing statements does not insulate them from breach of warranty claims if they are nevertheless misleading. (*See* Opp. at 19). But that is not at all what the Motion argues. The Motion contends that the labels do not warrant that the Products are generally safe (or safe from plastic-related harms), as is the basis for Plaintiffs' express warranty claim. The "BPA Free" and "#1 Pediatrician Recommended" Statements are limited, precise, clear, and true. No express warranty was breached. (*See* Motion at 17).[7]

    The Motion argues that the implied warranty claim should be dismissed because (i) the Products are merchantable; and (ii) Plaintiffs lack privity with Defendant. (Motion at 19-20).

---

[7] Defendant withdraws its argument that notice of an express warranty claim was not provided.

The Opposition's argument that the Products are unmerchantable stands or falls with its arguments regarding whether the Complaint has alleged the Products are unsafe. (Opp. at 20). As the Motion showed at 10-14 and 19, and *supra* at pp. 5-9, those arguments fail.

As to privity, the Opposition cites two cases holding that an exception exists when the plaintiff relies on the product's labeling. (Opp. at 20). That approach is not consistently followed. For example, one case quoted in the Motion recognizes no such exception and dismissed implied warranty claims based on product labels for lack of privity. (Motion at 19 (quoting *Lee v. Nature's Path Food, Inc.,* No. 23-CV-00751-H-MSB, 2023 WL 7434963, at *4 (S.D. Cal. Nov. 9, 2023)). Other cases follow suit. *See, e.g.*, *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532 F. Supp. 3d 911, 920 (C.D. Cal. 2021) ("the exception to vertical privity based on written labels or advertisements … does not apply to breach of implied warranty claims").

### III.    THE OPPOSITION'S UNJUST ENRICHMENT ARGUMENTS FAIL.

The Opposition does not contest that if Plaintiffs' other claims based on the same facts are dismissed, the unjust enrichment claim must also be dismissed. (*See* Motion at 20; Opp. at 21). The Opposition also appears to agree that unjust enrichment claims cannot stand if a contract governs the transaction; it focuses on cases where "the existence or enforceability of a contract is uncertain." (Opp. at 21). There is no uncertainty here. As the *Shin* case cited in the Opposition explains, "a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Shin v. Sanyo Foods Corp. of Amer.*, 2:23-cv-10485, 2024 WL 4467603, at *4 (C.D. Cal. Aug 13, 2024) (cited in Opp. at 21). Contracts governing Plaintiffs' rights exist in the form of both an express warranty and through the California Commercial Code. (Motion at 20). Neither party contests the existence or enforceability of those contracts.[8] (*See* Opp. at 21).

---

[8] The Opposition argues that the unjust enrichment claim may be pled in the alternative, citing *Verde Media Corp. v. Levi,* No. 14-cv-00891-YGR, 2015 WL 374934, at * 8 (N.D. Cal. Jan. 28, 2015). (Opp. at 21). But because there is no dispute as to the enforceability of contracts governing the parties' rights, there is no room for such alternative pleading here.

Therefore, the unjust enrichment claim cannot stand.[9]

### IV.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AS TO SIPPY CUPS BECAUSE THEY ARE NOT "SUBSTANTIALLY SIMILAR" TO BABY BOTTLES.

Even if the Court applies the substantial similarity test, Plaintiffs lack standing to assert claims as to sippy cups, which Plaintiffs did not purchase. The Opposition relies on *Swartz v. Dave's Killer Bread, Inc.*, for the standard for substantial similarity. That standard focuses on "whether the challenged products are of the same kind," whether they are comprised of largely the same ingredients, and whether they bear the same alleged mislabeling. *Swartz*, No. 4:21-cv-10053-YGR, 2023 WL 11965055, at *4 (N.D. Cal. Jan. 9, 2023). Whether products are "of the same kind" "necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." (Motion at 21 (quoting *Brown v. Nature's Path Foods, Inc.,* No. 21-cv-05132-HSG, 2023 WL 2699978, at *4 (N.D. Cal. Mar. 29, 2023)).

Sometimes the analysis is easy; for example, buns and bagels, despite having some differences, are "of the same kind" when they are similarly situated with respect to the material issues in the case. *Swartz*, 2023 WL 11965055, at *4. But here, the baby bottles and sippy cups are critically different with respect to at least one dispositive issue. The Opposition argues Defendant's baby bottles and sippy cups "carry identical [MP] risk." (Opp. at 22). But that assertion is contradicted by the Complaint, which expressly alleges that "[t]he amount of microplastics released increases with exposure to high water temperatures and sterilization." (*Am. Compl.* ¶ 31). While the Complaint goes on about baby bottles exposed to high temperatures (*Id.* ¶¶ 28-31), it does not allege the same for sippy cups.[10] This difference is critical here because the

---

[9] To the extent the Opposition suggests that the warranty and purchase agreement are not relevant because "Plaintiffs here did not purchase the Products directly from Defendant" (Opp. at 21), this mistakes the applicable rule. A contract *between the plaintiff and defendant* is not required; all that is required is *any* "binding agreement [that] defin[es] the rights of the parties." (Motion at 20 (quoting *Silverman v. Wells Fargo & Co.,* No. 18-CV-03886-YGR, 2018 WL 6046209, at *4 (N.D. Cal. Nov. 19, 2018) (*Rogers, J.*)).

[10] Paragraph 30 alleges vaguely that "[m]any [parents] also sterilize child feeding products like bottles and trainer cups by exposing them to heat, such as through boiling." (*Id.* ¶ 30). But the rest of paragraphs 28 through 31 address bottles, not sippy cups, and this one vague allegation is insufficient to support that "resolution of the asserted claims will be identical between the purchased and unpurchased products." *Nature's Path Foods, Inc.*, 2023 WL 2699978, at *4.

---

13

"unreasonable safety hazard" test focuses on whether the *amount* of MPs released exceeds the safety threshold. *See* pp.5-6, *supra*. Because bottles and sippy cups are handled differently as to "high water temperatures or sterilization"—which the Complaint asserts is a critical determinant of the level of MPs released (*id.* ¶ 31)—the resolution of the claims will not be "identical," the Products are not "of the same kind," and sippy cups are not substantially similar.

## V. PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF BECAUSE THE COMPLAINT'S CORE THEORY PRECLUDES ANY LIKELIHOOD OF FUTURE HARM.

The Opposition's arguments in favor of Plaintiffs' standing to pursue injunctive relief fail. First, the Opposition is incorrect that the Motion "disregards" *Davidson v. Kimberly-Clark Corp.,* 873 F.3d 1103 (9th Cir. 2017). (Opp. at 22). *Davidson* did not hold that plaintiffs always have standing to seek injunctive relief, the Ninth Circuit held that it was "not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false." *Id.* at 1115 (emphasis in original) (quotation omitted). A plaintiff "*may*" have standing, but only if he "show[s] a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* at 1113 (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 111 (1983)).

Despite making their Complaint's allegations, Plaintiffs argue they might be misled again to believe that "the polypropylene plastic has been *reformulated* to prevent microplastic leaching." (Opp. at 23 (emphasis added)). But this hypothetical is incompatible with the Complaint's central theory: that *all* polypropylene products (indeed, all plastics) *inherently* release MPs when heated. (*See* Motion at 23 (citing *Am. Compl.* ¶ 28)); *see also, e.g.* Tamargo, et. al. (Palansky Decl. ¶ 3 and Ex. H thereto, at 1 (discussing study of MP release from a variety of plastics). The Complaint suggests no "reformulation" that could prevent this universal characteristic of plastics. As such, this case is very similar to *Renn v. Otay Lakes Brewery, LLC*, No. 23-cv-1139-GPC, 2024 WL 331616 (S.D. Cal. Jan. 29, 2024), where the plaintiff alleged that the defendant's kombucha drinks were falsely marketed as healthy despite containing alcohol. *Id.* at *1. Because kombucha always contains alcohol, the court found "Plaintiff cannot plausibly

allege he will purchase the Products in the future if labeled correctly," and dismissed the injunctive relief claim. *Id.* at *8-9. That logic and holding apply here.[11]

## VI.     NATIONWIDE UNJUST ENRICHMENT AND WARRANTY CLASSES CANNOT BE CERTIFIED AND SO SHOULD BE STRICKEN.

Contrary to the Opposition, courts in the Ninth Circuit regularly grant motions to strike requests for class certification prior to discovery when it is clear that the class cannot be certified. (Motion at 23) (citing cases). This Court has done so on numerous occasions. *See, e.g.*, *Tromble v. W. Digital Corp.,* No. 4:20-CV-08102-YGR, 2021 WL 2165796, at *2 (N.D. Cal. May 27, 2021); *Pistacchio v. Apple, Inc.*, No. 20-cv-07034-YGR, 2021 WL 949422, at *3 (N.D. Cal. March 11, 2021). The older cases cited in the Opposition all considerably predate the Motion's cases and no longer reflect current law. As Judge Chen recently explained, "[i]f the issue is purely legal in nature, then it may make little sense … to wait until class certification proceedings to resolve it…." *Phan v. Sargento Foods, Inc.,* No. 20-CV-09251-EMC, 2021 WL 2224260, at *6 (N.D. Cal. June 2, 2021). That is precisely the case here.

The Opposition next argues that the Motion fails to describe the material differences in state express warranty laws in the same way that the cases cited in the Motion did. (Opp. at 25). But that is the point of citing those cases—they have already performed the analysis implicated here. Moreover, the Opposition's assertion that "[the Motion] offers only the conclusory statement that 'differences in state express and implied warranty laws preclude certification of a nationwide class' without saying what these purported differences might be," (Opp. at 25) is false. The Motion lists differences in state law that courts have held to preclude certification of nationwide classes, including "differences in state express warranty laws regarding privity, reliance, and notice; and differences in state implied warranty law regarding privity, notice, the availability of class actions, and the definition of merchantability." (Motion at 25 n.13).

## CONCLUSION

For the reasons above and in the Motion, all claims should be dismissed with prejudice, or the Court should strike the requests for injunctive relief and to certify nationwide classes.

---

[11] Plaintiffs are also unlikely to re-purchase the Products because their children are now too old to use baby bottles. (*See Am. Compl.* ¶¶ 13.b, 14.b, 15.b (alleging Plaintiffs' purchases were made in early 2022, January and May 2023, and December 2022 or January 2023)).

1

Dated: January 7, 2025               /s/ IJay Palansky
2                                     IJay Palansky (SBN 187917)
                                      ipalansky@atllp.com
3                                     ARMSTRONG TEASDALE LLP
                                      4642 S. Ulster Street, Suite 800
4                                     Denver, Colorado 80237
                                      (720) 200-0676
5                                     Stephen J. Siegel (*pro hac vice*)
                                      ssiegel@atllp.com
6                                     Yvette Mishev (*pro hac vice*)
                                      ymishev@atllp.com
7                                     Elizabeth C. Wolicki (*pro hac vice*)
                                      ewolicki@atllp.com
8                                     Jack C. Butz (*pro hac vice*)
                                      jbutz@atllp.com
9

10

11                                    ARMSTRONG TEASDALE LLP
                                      100 North Riverside Plaza
12                                    Chicago, IL 60606
                                      (312) 419-6900
13

14                                    Dana J. Finberg (SBN 257459)
                                      dfinberg@ohaganmeyer.com
15                                    O'HAGAN MEYER, LLC
                                      One Embarcadero Center, Suite 2100
16                                    San Francisco, CA 9411
                                      (415) 578-6902
17

18                                    *Attorneys for Defendant Dr. Brown's Company*
                                      *f/k/a Handi-Craft Company, Inc.*
19

20

21

22

23

24

25

26

27

28

Defendant's Reply in Support of Motion to Dismiss and Motion to Strike
Case No. 24-cv-03782-YGR

1

**<u>CERTIFICATE OF SERVICE</u>**

2      The undersigned attorney hereby certifies that, on January 7, 2025 he caused a true and

3 correct copy of the foregoing ***Defendant's Reply in Support of Motion to Dismiss Amended***

4 ***Complaint and Motion to Strike*** to be filed electronically with the Court's CM/ECF system, and

5 that notice of this filing was sent by electronic mail to all parties by operation of the Court's

6 electronic filing system.

7

8                          */s/ IJay Palansky*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Reply in Support of Motion to Dismiss and Motion to Strike
Case No. 24-cv-03782-YGR