1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALEJANDRINA CORTEZ, TULIISA MILLER, AND JAROSLAW WOJCIECHOWSKI,** individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>**HANDI-CRAFT COMPANY, INC.,**<br><br>          Defendant. | Case No.: 4:24-CV-3782-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; AND**<br><br>**DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>Re: Dkt. No. 33 |

Three plaintiffs, Tuliisa Miller, Alejandrina Cortez, and Jaroslaw Wojciechowski, bring a class action complaint against defendant Handi-Craft Company, Inc. (now known as Dr. Brown's Company) ("Handi-Craft" or "Dr. Brown's"),[1] alleging violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"), breach of warranty, and unjust enrichment. This action is one in a new wave of cases attempting to address microplastics in products, here those used by infants.

Defendant moves both to dismiss and to strike plaintiffs' requests for injunctive relief and nationwide class certification.

Having carefully considered the pleading and papers submitted, and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss **WITH LEAVE TO AMEND.** The Court **GRANTS** the motion to strike plaintiffs' request for injunctive relief **WITH**

---

[1] The First Amended Complaint ("FAC") is pled as to defendant Handi-Craft, although defendant's Motion is asserted on behalf of Dr. Brown's f/k/a Handi-Craft. Dkt. No. 33, Defendant's Motion to Dismiss Amended Complaint and Motion to Strike ("Mot."). Plaintiffs' opposition does not acknowledge any such distinction. Counsel shall confer and ensure that the revised complaint identifies the defendant properly.

LEAVE TO AMEND.  The Court DENIES the motion to strike plaintiffs' request for nationwide class certification.[2]

## I.    BACKGROUND

### A.    Factual Background

The FAC alleges as follows:

Handi-Craft is a Missouri corporation that sells and promotes Dr. Brown's-brand child feeding devices throughout the United States, including in California.  (FAC ¶ 17.)

Each of the three plaintiffs are California residents who purchased some Dr. Brown's-brand baby bottles in 2022 and in 2023.  (*Id.* ¶¶ 13–15.)

Dr. Brown's-brand baby bottles and sippy cups ("Products") are made of polypropylene plastic, which "release microplastics with values as high as 16,200,000 particles per litre." (*Id.* ¶ 28.)  Defendant instructs consumers to sterilize the Products before each use by placing them in boiling water, dishwashers, electric sterilizers, or microwave sterilizers.  (*Id.*)  Exposing polypropylene bottles to high temperatures, however, "significantly increase[s]" the amount of microplastics that leach into the bottles' contents.  (*Id.*)  When repeatedly ingested by children, microplastics bioaccumulate in their bodies, which causes long-term health complications such as damage to "digestive, reproductive, central nervous, immune, and circulatory systems." (*Id.* ¶ 20.)

Defendant does not inform consumers of this danger.  (*Id.* ¶ 35.)  Meanwhile, the Products' packaging displays the statements "BPA FREE" and "#1 Pediatrician Recommended."  (*Id.* ¶¶ 23, 36.)[3]  "BPA" refers to Bisphenol A, a chemical used to manufacture polycarbonate plastics that can cause negative health effects and can leach into food and beverages, especially when heated.  (*Id.* ¶ 6 & n.1.)  Plaintiffs allege the "BPA FREE" label, when combined with the Products' omissions, "reinforces consumers' reasonable belief that the Products are safe and free from harmful plastics," while the "BPA FREE" and "#1 Pediatrician Recommended" statements "work in tandem to . . .

---

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

[3] The Court notes that the images attached to the FAC do not reflect that all Products have both statements.

1  lead[ ] parents to believe that their children will be safe from the severe consequences of ingesting

2  microplastics." (*Id.* ¶¶ 23, 36.)

3      Plaintiffs desire to purchase the Products again if they no longer "pose severe health risks

4  for children," or if the Products' labels allowed plaintiffs "to make a fully informed purchase

5  decision." (*Id.* ¶¶ 3, 13(b), 14(b), 15(b).)  That said, plaintiffs lack the specialized knowledge and

6  skills necessary to be able to determine whether the Products are "truly a safe choice and free of

7  microplastics." (*Id.* ¶¶ 13(h), 14(h), 15(h).)

8      **B.    Procedural History**

9      The FAC asserts five causes of action, namely violations of (Count 1) the UCL's unfair,

10  unlawful, and fraudulent prongs; (Count 2) the FAL; and (Count 3) the CLRA; plus (Count

11  4) breach of express and implied warranty; and (Count 5) unjust enrichment.  Each is asserted on

12  behalf of a nationwide class and a California subclass and is premised on two theories: (1) the

13  "BPA FREE" and "#1 Pediatrician Recommended" labels constitute affirmative misrepresentations,

14  and (2) the Products' omission of their microplastic risks is fraudulent.  Plaintiffs seek declaratory

15  relief; an injunction ordering defendant to change its business practices; damages, restitution, and

16  disgorgement in the amount plaintiffs paid for the Products, and civil penalties.  (*Id.* ¶ 149.)[4]

17  **II.    MOTION TO DISMISS**

18      **A.    Legal Standard**

19      In evaluating a motion to dismiss, the Court accepts factual allegations in a complaint as

20  true and construes them in the light most favorable to the plaintiff.  *Interpipe Contracting, Inc. v.*

21  *Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018).  "To survive a motion to dismiss, a complaint must

22  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

23  face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

24  544, 570 (2007)).  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported

25  by mere conclusory statements, do not suffice."  *Id.*  To prevail, defendants must show either the

26  "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

27

28      [4] Plaintiffs also seek punitive damages, attorneys' fees and costs, pre/post-judgment interest, and any other relief as the Court deems just and proper.  FAC ¶ 149.

United States District Court
Northern District of California

1    theory." *See Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting

2    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

3           Claims based on a theory of fraud—like the UCL, FAL, and CLRA claims here—must

4    satisfy Rule 9(b)'s heightened pleading standard.  *See* Fed. R. Civ. P. 9(b); *see also Kearns v. Ford*

5    *Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to misrepresentation and

6    nondisclosure claims under UCL and CLRA); *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911

7    (N.D. Cal. 2020) (applying Rule 9(b) to misrepresentation claim under the FAL).  The complaint

8    must "identify the who, what, when, where, and how of the misconduct charged, as well as what is

9    false or misleading about the purportedly fraudulent statement, and why it is false."  *Moore v. Mars*

10    *Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (internal citations omitted).  "For claims

11    based on fraudulent omissions, the Rule 9(b) standard is 'somewhat relaxed,' but a plaintiff must

12    still 'describe the content of the omission and where the omitted information should or could have

13    been revealed.'"  *Zwerling v. Ford Motor Co.*, 2024 WL 37220, at *2 (N.D. Cal. Jan. 2, 2024)

14    (citations omitted); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (with

15    respect to omissions, reliance "can be presumed, or at least inferred, when the omission is

16    material").

17           **B.    UCL, FAL, and CLRA**

18           "The UCL [proscribes] business practices that are 'unlawful, unfair or fraudulent'. . . ." Cal.

19    Bus. & Prof. Code § 17200.  The FAL prohibits the dissemination of any advertising 'which is

20    untrue or misleading' . . . ." *Id.* § 17500.  The "CLRA prohibits a number of 'unfair methods of

21    competition and unfair or deceptive acts or practices,' including '[r]epresenting that goods or

22    services are of a particular standard.'"  *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1310–11 (9th

23    Cir. 2022) (quoting Cal. Civ. Code § 1770(a)(7)).

24           Defendant asserts (1) plaintiffs' theories of fraud, either by affirmative misrepresentation or

25    fraudulent omission, fail to state a claim under the UCL, FAL, or CLRA; (2) plaintiffs cannot

26    alternately state a claim under the UCL's unlawful and unfairness prongs; and (3) plaintiffs failed to

27    satisfy the CLRA's notice requirements. The Court addresses each.

28

1

### 1.     Fraud-Based Theories

Plaintiffs allege defendant violated the UCL, FAL, and CLRA by both affirmative misrepresentation and fraudulent omission.  "To allege a violation of the three statutes based on a fraudulent misrepresentation or omission, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, and (3) damages."  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011) and *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1091 (1993)).

Defendant moves to dismiss plaintiffs' fraud theories on four grounds.  As to affirmative misrepresentations, defendant argues that plaintiffs fail to allege both (i) reliance and (ii) that the alleged misrepresentations plausibly mislead the reasonable consumer.  As to misrepresentations by omission, defendant argues plaintiffs fail to allege (i) a duty to disclose the Products' alleged microplastic risks and (ii) the requisite scienter.[5]

### a)     Affirmative Statements

Courts have dismissed deceptive labeling claims when plaintiffs fail to allege they specifically relied on the alleged misrepresentation when making their purchase decision.  In *Kearns*, for example, the Ninth Circuit held that a plaintiff who allegedly enrolled in Ford's used-car program in reliance on misleading "television advertisements and sales material" must also allege what those advertisements "specifically stated" and which exact sales material he relied upon.  *Kearns*, 567 F.3d at 1125–26; *see also id.* at 1126 ("Nowhere in the [complaint] does Kearns specify . . . when he was exposed to [the representations] or which ones he found material.").  Similarly, in *Arroyo*, the court dismissed the plaintiff's deceptive labeling claims because she "[did] not allege that she read the packaging prior to purchasing the product," even though the complaint

---

[5] Also, defendant argues the FAC lacks particularity as required by Rule 9(b).  The Court disagrees.  For the alleged affirmative misrepresentations, plaintiffs' allegations are deficient solely with respect to pleading reliance, discussed separately below.

As to omissions, defendant does not dispute materiality with respect to fraudulent omissions.  Thus, reliance under Rule 9(b) can be inferred with respect to the alleged omissions.  *See Daniel*, 806 F.3d at 1225.

United States District Court
Northern District of California

1  "quote[d] from the packaging and describe[d] some of the circumstances surrounding her

2  purchase." *Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1080 (N.D. Cal. 2012).

3      Here, plaintiffs do not allege that any of them relied upon or even *saw* the "BPA FREE" or

4  "#1 Pediatrician Recommend" labels. Instead, the FAC generally alleges that plaintiffs "relied

5  upon . . . the representations on the Product's label or packaging," and that the "BPA FREE" and

6  "#1 Pediatrician Recommended" labels deceive "consumers." (FAC ¶¶ 6, 13(c), 14(c), 15(c), 36.)

7  Bald recital of elements alone do not satisfy Rule 9(b). *See Kearns*, 567 F.3d at 1124–26. Plaintiffs

8  must allege with particularity that they personally relied upon the specific statements "BPA FREE"

9  and/or "#1 Pediatrician Recommended" to pursue a deceptive labeling claim under the UCL, FAL,

10  and CLRA. *See id.*

11      Moreover, the allegations are unclear in terms of whether plaintiffs' misrepresentation

12  theory relies on the "BPA FREE" and "#1 Pediatrician Recommended" labels individually, or the

13  combined effect of the two. In some sections of the FAC, plaintiffs allege that the "BPA FREE"

14  and "#1 Pediatrician Recommended" labels *each* communicate something about microplastics,

15  (FAC ¶¶ 5, 36), but elsewhere allege that the labels "work in tandem" to deceive consumers. (FAC

16  ¶ 23.) This is further confused by the fact that plaintiffs assert claims against multiple products,

17  many of which do not even contain the "#1 Pediatrician Recommended" label. (*Id.* Ex. 1-3, 1-4, 1-

18  5, 1-6, 1-8, 1-9) Plaintiffs must replead to make explicit their theory of misrepresentation for each

19  cause of action.[6]

20      For the foregoing reasons, the Court **GRANTS WITHOUT PREJUDICE** defendant's motion to

21  dismiss the UCL, FAL, and CLRA claims as to the affirmative statements.

---

24      [6] Plaintiffs also allege that the "BPA FREE" label work "in tandem" with the Product's
25  *omissions* to deceive consumers. FAC ¶ 36. Under California law, misrepresentations by
    affirmative statement and omission are treated distinctly. *See Nava v. Kobe Steel, Ltd.*, 2019 WL
26  4729540, *2 (N.D. Cal. July 18, 2019) (citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir.
    2018) and *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012)). Plaintiffs must
27  replead to make clear whether they plead both theories of fraudulent misrepresentation and
    omission for each cause of action.

### b)     Fraudulent Omissions

To assert fraudulent omission under the UCL, FAL, and CLRA, a plaintiff must show that the defendant had (1) a duty to disclose the omitted information and (2) actual knowledge of the defect or falsity at issue.  *See In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4 (N.D. Cal. 2024) (citing *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022)); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 565 (N.D. Cal. 2019).  A duty to disclose arises when (a) "the defect at issue relates to an unreasonable safety hazard"; or (b) "the defect is material, central to the product's function, and the plaintiff alleges one of the four *LiMandri* factors."  *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4.

Defendant moves to dismiss on the grounds that plaintiffs have failed to allege, under (1) a duty to disclose, (a) an unreasonable safety hazard, or (b) a central function; and (2) actual knowledge.  Defendant does not, for the purposes of this motion, dispute materiality or the *LiMandri* factors.

### (1)(a)   Unreasonable Safety Hazard

"Where a plaintiff alleges a sufficiently close nexus between the claimed defect and the alleged safety issue, the injury risk need not have come to fruition."  *In re Plum Baby Food Litig.*, 2024 WL 1354447, at *5 (quoting *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1028 (9th Cir. 2017)).  However, the alleged "unreasonable safety hazard must describe more than merely conjectural and hypothetical injuries."  *Williams*, 851 F.3d at 1028 (internal citations omitted).

In cases that involve hazardous substances, courts have required plaintiffs to allege a connection between (1) the levels at which those substances are unsafe, and that (2) the defendant's product contains those unsafe levels.  *See In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170 (S.D. Cal. 2024) ("[A]lleging that Heavy Metals can pose human health risks at some unidentified level does not mean the levels in [defendants' chocolates] pose a human health risk."); *see also Hayden v. Bob's Red Mill Nat. Foods, Inc*., 2024 WL 1643696, at *9 (N.D. Cal. 2024) (pleadings insufficient where plaintiff alleges that defendant's flaxseed products contain cadmium levels legally warranting a warning label, but not that those levels are unsafe for human consumption); *cf. Bland v. Sequel Nat. Ltd*., 2019 WL 4674337, at *3 (N.D. Cal. 2019) (pleadings

7

1  sufficient where plaintiff alleges that a protein powder contains lead and cadmium levels legally

2  warranting a warning label, *and* that those levels pose an unreasonable safety hazard).

3         Here, plaintiffs allege that heating the Products releases "copious amounts of microplastics,"

4  but do not identify a threshold at which the amount of microplastics exposed to children become

5  unreasonably unsafe.  (FAC ¶ 32.)   Rather, plaintiffs mention a litany of general health risks

6  associated with microplastic bioaccumulation—which allegedly range from "inflammation" to

7  "death"—to argue that "the greater the amount of microplastics in one's body, the greater the

8  harm."  (*Id.* ¶ 25.)  The Court is therefore left to guess (1) the amount of microplastics that are

9  released by defendant's Products, exposed to children, and ultimately remain and bioaccumulate in

10  their bodies, (2) the negative health effects risked by that amount, and, consequently, (3) whether

11  that amount is unreasonable.

12         Insofar as plaintiffs suggest that *no amount* of microplastic exposure can be safe, such an

13  expansive theory of harm would impermissibly broaden the duty to disclose to any *potential*—and

14  not just unreasonable—safety hazard.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1029

15  (9th Cir. 2017) (holding that premature corrosion of a boat's dry exhaust, while "plausibly

16  hazardous", is not an unreasonable safety risk); *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d

17  782, 801 (N.D. Cal. 2024) ("[The statement] that there is no safe lead level . . . [would] render[ ]

18  literally *any* alleged level of lead actionable.") (emphasis in original); *Grausz v. Hershey Co.*, 713

19  F. Supp. 3d 818, 828 (S.D. Cal. 2024) ("Plaintiff does not plead the amounts of the substances in

20  Hershey's Products have created an *unreasonable* safety hazard. Plaintiff merely asserts that lead

21  and cadmium are carcinogens, that [t]here may be no safe level of exposure to a carcinogen and that

22  Hershey's products contain some amount of these substances.") (emphasis in original) (internal

23  cites omitted).

24         Accordingly, the Court finds that plaintiffs fail to plausible allege an unreasonable safety

25  hazard.

26                              **(1)(b)   Central Function**

27         In the alternative to alleging an unreasonable safety hazard, "plaintiffs must allege a product

28  defect that is 'central to the product's function.'"  *Cepelak v. HP Inc.*, 2021 WL 5298022, at *1

1    (N.D. Cal. 2021) (quoting *Hodsdon*, 891 F.3d at 864). A variety of a product features can be

2    central to the product's function: "On one end of the spectrum are cases that easily state a claim:

3    defects that 'render[] the product incapable of use by any consumer.'" *Id.* (alteration in original)

4    (quoting *Hodsdon*, 891 F.3d at 864). In *Celepak,* the court held that a printer's practice of refusing

5    to print anything once colored ink runs out defeats a printer's central function—its ability to print.

6    *Id.* "On the other end—cases that do not state a fraud-by-omission claim—are those defects that are

7    merely 'based on subjective preferences.'" *Id.* For example, the fact that a brand of chocolates was

8    produced by child and slave labor "is not a physical defect at all, much less one related to the

9    chocolate's function as chocolate." *Hodsdon*, 891 F.3d at 864.

10       Plaintiffs allege that the Products' central function is to "safely feed[] babies and infants."

11   (FAC ¶ 34.) Like in *In re Plum Baby Food Litig.*, where this Court held that "Baby Food continues

12   to function as food if it contains [heavy metal] contaminants," here, baby bottles and sippy cups

13   continue to deliver their liquid contents despite the presence of microplastics. 2024 WL 1354447,

14   at *6. Plaintiffs have failed to allege a defect that "renders the product 'incapable of use by any

15   consumer.'" *Id.* (quoting *Hodsdon*, 891 F.3d at 864).[7]

16       The FAC does not state a claim upon this theory. Because no amendment of the pleadings

17   would render plausible the theory that microplastics defeat the Products' central function, plaintiffs

18   may only proceed, if at all, on an unreasonable safety hazard theory.

                   **(2)    Actual Knowledge**

20       To plead an omission claim under the UCL or FAL, a plaintiff must show that the defendant

21   had actual knowledge of the defect or falsity at issue. *See Ahern*, 411 F. Supp. 3d at 565 (citing

22   cases); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("Plaintiffs must

23   allege [defendant's] knowledge of a defect to succeed on their claims of deceptive practices and

---

      [7] Additionally, including safety as a condition of proper functioning collapses the central function test into a question of whether the alleged defects pose an unreasonable safety hazard. In other words, the products' alleged microplastic risks necessarily defeat the function of safe feeding if they pose an unreasonable safety hazard. Plaintiffs cite two cases to suggest that safety can be an element of a product's central function: *Bland v. Sequel Natural Ltd.*, 2019 WL 4674337, at *4 (N.D. Cal. 2019) and *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997–98 (N.D. Cal. 2013). Neither of these cases discuss the central function test.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  fraud.").  Similarly, the CLRA requires a plaintiff to plead "an intent to defraud, which, in turn,

2  implies knowledge of the falsity."  *In re Sony PS3 "Other OS" Litig.*, 551 F. App'x 916, 921 (9th Cir.

3  2014) (interpreting Cal. Civ. Code § 1770(a)(9)).

4      Courts may infer actual knowledge from a defendant's exclusive knowledge of material

5  information related to the defect.  *See Ahern*, 411 F. Supp. 3d at 574.  "In cases finding that a

6  defendant had a duty to disclose based on exclusive knowledge of material facts, plaintiffs have

7  alleged, for example, that 'only [defendant] had access to the aggregate data from its dealers, only

8  [defendant] had access to pre-release testing data, and only [defendant] had access to the numerous

9  complaints from its customers.'"  *Id.* at 575 (citations omitted).  Rule 9(b) again applies so that

10  "[g]eneralized allegations with respect to exclusive knowledge are insufficient to defeat a dismissal

11  motion."  *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013).

12      Exclusive knowledge aside, courts are reluctant to impute actual knowledge of a product

13  defect based on "'vague, sweeping statements about industry research and general knowledge,'"

14  which "are 'insufficient to allege that [defendant] knew about any specific [defect].'"  *Ahern*, 411 F.

15  Supp. 3d at 565 (second alteration in original) (quoting *Hauck v. Advanced Micro Devices, Inc.*, 2019

16  WL 1493356, at *6 (N.D. Cal. 2019), *aff'd*, 816 F. App'x 39 (9th Cir. 2020)).

17      Here, plaintiffs allege that defendant, in controlling the "control of the manufacturing, design,

18  distribution, and safety testing of the Products," has exclusive knowledge of the Products'

19  microplastic risks.  (FAC ¶ 72.)

20      As to the requirement of "exclusive knowledge," the Court finds plaintiffs' allegations too

21  conclusory to satisfy Rule 9(b).  Plaintiffs' allegations lack the "specific substantiating facts" required

22  to support an inference of exclusive knowledge.  *Ahern*, 411 F. Supp. 3d at 576.  Plaintiffs rely on two

23  cases neither of which persuade.  *First*, in *Paperno v. Whirlpool Corp.*, the court held that plaintiffs

24  adequately alleged exclusive knowledge because they referenced "complaints consumers made online

25  and technical service pointers ('TSPs') that Whirlpool issued to its authorized retailers."  2024 WL

26  1091192, at *1 (N.D. Cal. 2024).  *Second,* in *Kulp v. Munchkin, Inc.,* the complaint not only contained

27  images of product reviews that mention the alleged defect, but also alleged that defendant monitors

28  and sometimes responds to those reviews.  678 F. Supp. 3d 1158, 1169–70 (C.D. Cal. 2023).

1 | Compared to these cases and others similar, the Court finds plaintiffs' allegations are too vague to

2 | establish any kind of exclusive knowledge.

3 |      *Next*, as to the requirement of general industry knowledge of the risk of harm presented by

4 | defendant's Products, plaintiffs rely on publicly available studies describing (i) how heating

5 | polypropylene products increases microplastic leaching and (ii) the correlation between increased

6 | microplastic exposure and certain adverse health consequences.  (*E.g.*, FAC ¶¶ 25, 28.)  These

7 | studies do not make specific references to defendant's Products, nor do they draw conclusions

8 | beyond the general, *potential* health risks associated with microplastics.[8]  Thus, plaintiffs' mere

9 | recitation of the research resembles the "vague, sweeping" statements of industry knowledge that

10 | rendered the complaints in *Ahern* and *Hauck* defective.  *See Ahern*, 411 F. Supp. 3d at 565–66

11 | ("Plaintiffs do not cite any Apple statements that support Plaintiffs' allegation that motherboard

12 | issues connected to dust exposure are 'well-known in the technology community' and apply to

13 | Apple's products."); *Hauck*, 2019 WL 1493356, at *6 ("Plaintiffs could only 'point to vague

14 | sweeping statements about industry research and general knowledge garnered from conference and

15 | academic papers' about *potential* security vulnerabilities.") (emphasis in original).

16 |      Because plaintiffs fail to plead a duty to disclose the Products' alleged microplastic risks

17 | and defendant's actual knowledge of those risks, the Court **GRANTS WITHOUT PREJUDICE**

18 | defendant's motion to dismiss plaintiffs' UCL, FAL, and CLRA claims of fraudulent omission.

19 |           **2.**    **Alternate UCL Theories**

20 |      Plaintiffs alternately plead that defendant has violated the UCL under its "unlawful" and

21 | "unfair" prongs.

22 |

23 |

24 |     [8] *See, e.g.*, Nur Hanisah Amran et al., *Exposure to Microplastics During Early Developmental Stage: Review of Current Evidence*, 10 TOXICS 597 (Oct. 10, 2022), https://doi.org/10.3390/toxics010

25 | 0597. ("[T]he potentially dangerous consequences of various forms of MPs on mammal and human health remain unclear.") (cited in FAC ¶¶ 18 n.6, 19 n.7, 21 n.12, 23 n.14); Kazi Albab Hussain et al.,

26 | *Assessing the Release of Microplastics and Nanoplastics from Plastic Containers and Reusable Food Pouches: Implications for Human Health*, 57 ENV'T SCI. & TECH. 9782 (2023) ("Our research has revealed that a significant quantity of micro- and nanoplastic particles are released from plastic baby

27 | food containers and reusable food pouches into the food, which has the potential to impact children's

28 | exposure to these particles.") (cited in FAC ¶ 22 n.45).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### a)    The "Unlawful" Prong

As this Court has previously explained:

> The unlawful prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (quotation marks and citations omitted).  "By proscribing 'any unlawful' business practice, the UCL permits injured [parties] to 'borrow' violations of other laws and treat them as unlawful competition that is independently actionable."  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1225 (N.D. Cal. 2014) (quoting *Cel-Tech Commc'ns.*, 20 Cal.4th at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527).

*Doe v. Epic Games, Inc*., 435 F. Supp. 3d 1024, 1049–50 (N.D. Cal. 2020) (alterations in original)

Plaintiffs allege that defendant's alleged misrepresentations and omissions violate the FAL and CLRA and are thus "unlawful" under the UCL.  Defendant contends—and plaintiffs do not dispute—that the alleged FAL and CLRA violations form the *sole* bases of plaintiffs' UCL "unlawful" claim.  Thus, because plaintiffs' "unlawful" theory under the UCL rises or falls with its FAL and CLRA claims, the Court **GRANTS WITHOUT PREJUDICE** defendant's motion to dismiss plaintiffs' claim of "unlawful" conduct under the UCL.

### b)    The "Unfair" Prong

As this Court has previously explained, "California courts have relied on three different tests for assessing unfair or unconscionable acts or practices," including the *Sperry* or *South Bay* balancing test, which weighs "the utility of the defendants conduct against the gravity of the harm to the alleged victim."  *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 899 (N.D. Cal. 2024) (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)).  "Each prong of the UCL is a separate and distinct theory of liability."  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1127 (9th Cir. 2009).  However, "where the plaintiffs' 'unfair prong claims overlap entirely with their claims of fraud,' the plaintiffs' unfair prong claim cannot survive" if their fraud claims also fail.  *Ahern*, 411 F. Supp. 3d at 561 (quoting *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. 2009), *aff'd*, 464 Fed. App'x 651 (9th Cir. 2011)).

United States District Court
Northern District of California

Plaintiffs suggest that their unfairness claim is separately viable from their fraud-based claims because they allege that defendant's conduct "pose great health risks to their young children while conferring no benefits." (Dkt. No. 37, Plaintiffs' Opposition to Defendant's Motion to Dismiss Amended Complaint and Motion to Strike ("Opp.") 17; FAC ¶ 81.) Although plaintiffs' allegation resembles the *Sperry* or *South Bay* balancing test in that both concern weighing harms against benefits, the conduct that allegedly "confer[s] no benefits" is the same conduct underlying plaintiffs' other state law claims—defendant's allegedly fraudulent omission. (Opp. at 17; FAC ¶ 81.) As with their claim under the "unlawful" prong, plaintiffs' claim under the UCL's "unfair" prong rises or falls with its fraud-based theories, and so the Court **GRANTS WITHOUT PREJUDICE** defendant's motion to dismiss on the "unfair" prong.

### 3.    CLRA Demand Letter

Before filing a CLRA claim for damages, a plaintiff must send a demand letter to the defendant's "principal place of business *within California*." Cal. Civ. Code § 1782(a)(2) (emphasis supplied). "Where a plaintiff fails to provide such notice, the damages claim must simply be dismissed until 30 days or more after the plaintiff complies with the dictates of section 1782." *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1201 (S.D. Cal. 2021) (dismissing CLRA claim where plaintiffs forwarded their letter to defendant's counsel in San Francisco but not its headquarters in San Diego) (internal citations omitted).

Plaintiff Cortez sent a demand letter to defendant's Missouri headquarters.

Given plaintiff Cortez's failure to comply with Section 1782(a)(2)'s notice requirements, the Court **GRANTS WITHOUT PREJUDICE** defendant's motion to dismiss plaintiff Cortez's CLRA claim. Plaintiffs may file an amended complaint on this issue once compliance has occurred.

### C.    Breach of Warranty

Defendant moves to dismiss plaintiffs' claim of breach of express and implied warranty.[9]

---

[9] On reply, defendant withdrew its argument that plaintiffs failed to provide the pre-suit notice required to assert a breach of express warranty claim. Dkt. No. 38, Defendant's Reply in Support of Motion to Dismiss Amended Complaint & Motion to Strike ("Reply") 11 n.7; *see also Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 92 (N.D. Cal. 2020) ("[Plaintiff] sent a pre-suit demand letter for the CLRA claims, which effectively apprised [defendant] of the grounds for the warranty claims. That is sufficient notice." (citation omitted)); *Hawkins v. Kroger Co.*, 512 F.

United States District Court
Northern District of California

1    "To prevail on a breach of express warranty claim, plaintiffs must prove: (1) the seller's

2    statements constitute an affirmation of fact or promise or a description of the goods; (2) the

3    statement was part of the basis of the bargain; and (3) the warranty was breached." *Rugg v.

4    Johnson & Johnson*, 2018 WL 3023493, at *4 (N.D. Cal. 2018) (citation omitted).  Plaintiffs must

5    allege that the "exact terms" of the express warranty were breached.  *Watkins v. MGA

6    Entertainment, Inc.*, 550 F. Supp. 3d 815, 830 (N.D. Cal. 2021).  A label may breach an express

7    warranty where it is misleading under the reasonable consumer test.  *See Moore v. EO Prods., LLC*,

8    2023 WL 6391480, at *8 (N.D. Cal. 2023) (citing cases with "breach of express warranty claims

9    based on allegedly misleading food labeling"); *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781,

10   at *7 (N.D. Cal. 2017) ("[C]laims for breach of an express warranty[] require a showing that alleged

11   statements or omissions are 'likely to deceive' reasonable consumers.").

12   "Under California law, '[t]he general rule is that privity of contract is required in an action

13   for breach of either express or implied warranty and that there is no privity between the original

14   seller and a subsequent purchaser who is in no way a party to the original sale.'"  *In re Clorox

15   Consumer Litig.*, 894 F. Supp. 2d 1224, 1236 (N.D. Cal. 2012) (alteration in original) (quoting *Burr

16   v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954)).[10]  "However, a 'particularized

17   exception' to the privity requirement exists as 'when the plaintiff relies on written labels or

18   advertisements of a manufacturer.'"  *Young v. Cree, Inc.*, 2018 WL 1710181, at *8 (N.D. Cal.

19   2018) (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)).

20   Here, plaintiffs argue that they qualify for the exception to the vertical privity requirement

21   because they relied on the Products' "BPA FREE" and "#1 Pediatrician Recommended" labels.

22   (Opp. at 18–20.)  As discussed above, however, plaintiffs do not plead that they actually relied upon

23

24

_____

25   Supp. 3d 1079, 1092 (S.D. Cal. 2021) ("[Defendant] cites no authority supporting its suggestion

26   that Plaintiff was required to specifically mention a breach of warranty in order to give sufficient
     notice.").

27
     [10] While privity applies to both express and implied breaches of warranty, defendant only

28   seeks dismissal on this ground with respect to plaintiffs' claim of breach of implied warranty.

1    those labels.  The complaint's failure to allege actual reliance thus requires dismissal of plaintiffs

2    express and implied warranty claims.

3        For the foregoing reasons, the Court **GRANTS WITHOUT PREJUDICE** defendant's motion to

4    dismiss plaintiffs' breach of express and implied warranty claims with leave to amend.

5        **D.    Unjust Enrichment**

6        "Unjust enrichment is a theory of recovery in quasi-contract, in which a plaintiff contends

7    the defendants received a benefit to which they were not entitled.  To state a claim for unjust

8    enrichment, plaintiff must allege receipt of a benefit and unjust retention of the benefit at the

9    expense of another."  *Verde Media Corp. v. Levi*, No. 14-CV-00891-YGR, 2015 WL 374934, at *8

10   (N.D. Cal. Jan. 28, 2015) (internal quotation marks and citations omitted).

11       "A claim for unjust enrichment 'does not lie when an enforceable, binding agreement exists

12   defining the rights of the parties.'"  *Id.* (quoting *Paracor Fin, Inc. v. General Elec. Capital Corp.*,

13   96 F.3d 1151, 1167 (9th Cir. 1996)).[11]  However, in the "early stage of the case, plaintiff may plead

14   in the alternative and 'assert claims based on both the existence and the absence of a binding

15   agreement between the parties.'"  *Id.* (quoting *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908

16   (N.D. Cal. 2011)).  When claims for unjust enrichment "are based on the same conduct on related

17   statutory claims, these claims rise and fall together."  *In re Plum Baby Food Litig.*, 2024 WL

18   1354447, at *9.

19       At the motion to dismiss stage, plaintiffs may plead unjust enrichment in the alternative

20   irrespective of whether a binding contract exists.  That said, plaintiffs base their unjust enrichment

21   and UCL, FAL, and CLRA claims on the same conduct—the alleged misrepresentations and

22

23

24   _____

25       [11] Some courts have held that "a plaintiff may not plead the existence of an enforceable
     contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts
26   suggesting that the contract may be unenforceable or invalid."  *Shin v. Sanyo Foods Corp. of Am.*,
     2024 WL 4467603, at *4 (C.D. Cal. 2024) (citing cases).  The existence of a contract may be
27   "inferred from a direct sale between a buyer and seller pursuant to the California Commercial Code."
     *Id.*
28

1 omission. Plaintiffs' claims for unjust enrichment thus rise and fall alongside their state law claims,

2 and defendant's motion to dismiss is **GRANTED** to the same extent.[12]

3       **E.     Unpurchased Products**

4       Plaintiffs allege they each purchased certain Dr. Brown's baby bottles but assert claims as to

5 all Dr. Brown's baby bottles *and* sippy cups. (FAC ¶¶ 2, 13(b), 14(b), 15(b).) Defendant argues

6 that plaintiffs cannot assert claims as to products they did not purchase.

7       Plaintiffs have standing to assert claims with respect to unpurchased products if those

8 products are "substantially similar" to plaintiffs' purchased products. *See, e.g.*, *Brown v. Nature's*

9 *Paths Foods, Inc.*, 2023 WL 2699978, at *4 (N.D. Cal. 2023); *Swartz v. Dave's Killer Bread, Inc.*,

10 2023 WL 11965055, at *4 (N.D. Cal. 2023); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021

11 (9th Cir. 2020). In assessing substantial similarity, courts have considered "factors" including

12 "whether the challenged products are of the same kind, whether they are comprised of largely the

13 same ingredients, and whether each of the challenged products bears the same alleged mislabeling."

14 *Wilson v. Frito–Lay N. Am.*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013); *see also Lanovaz v.*

15 *Twinings N. Am., Inc.*, 2013 WL 2285221, at *3 (N.D. Cal. May 23, 2013). Other courts have

16 assessed substantial similarity by "focus[ing] on whether the resolution of the asserted claims will

17 be identical between the purchased and unpurchased products." *Ang v. Bimbo Bakeries USA, Inc.*,

18 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014); *see also Brown*, 2023 WL 2699978, at *4.

19 "Some courts, including this one, frequently reserve this question for class certification." *Swartz*,

20 2023 WL 11965055, at *4 (N.D. Cal. 2023); *see also Kosta v. Del Monte Corp.*, 2013 WL

21 2147413, at *15 (N.D. Cal. 2013).

22

23 ─────────────

24       [12] Defendant also argues that, because plaintiffs plead a breach of express warranty, they
cannot also plead unjust enrichment. Mtn. at 20. The Court disagrees. Plaintiffs allege only the
25 existence of an express warranty, not an express agreement or contract. *See Shin*, 2024 WL 4467603,
at *4 n.3 ("[A]n express agreement is not necessarily required for an express warranty claim."). Nor
26 do plaintiffs allege to have purchased anything from defendant directly; on the contrary, both parties
acknowledge that plaintiffs purchased the Products from Target and Amazon. Mtn. at 19; FAC
27 ¶¶ 13(b), 14(b), 15(b). Thus, plaintiffs may—as this Court has allowed in the past—"assert claims
based on both the existence and the absence of a binding agreement between the parties." *Verde*
28 *Media Corp.*, 2015 WL 374934, at *8.

United States District Court
Northern District of California

1    Here, the parties' dispute over substantial similarity centers on the single issue of whether

2    defendant's sippy cups, like its baby bottles, are ordinarily exposed to heat and thus carry a similar

3    risk of leaching microplastics.  Although plaintiffs allege that both baby bottles and sippy cups are

4    ordinarily sterilized in boiling water, (FAC ¶¶ 29–30), plaintiffs also acknowledge that *only* baby

5    bottles are ordinarily used to prepare and deliver heated formula.  (*Id.* ¶¶ 28, 32.)  In other words,

6    plaintiffs' own allegations suggest that the two Products are not exposed to similar amounts of heat

7    during ordinary use, and thus do not leach similar amounts of microplastics and pose similar safety

8    risks.  Moreover, as discussed above, plaintiffs fail to identify any threshold at which microplastic

9    exposure becomes unreasonably unsafe. The Court therefore cannot determine whether repeated

10   sterilization of both products warrants identical relief, or any relief at all. *See Miller v. Ghirardelli*

11   *Chocolate Co.*, 912 F. Supp. 2d 861, 870–71 (N.D. Cal. 2012) (finding no substantial similarity

12   between defendant's "white chocolate" baking chips, wafers, and beverages because they were

13   different food items and displayed different labels, even though they shared "the similar material

14   omission that they did not [in fact] contain white chocolate").

15   　　　For the foregoing reasons, the Court **GRANTS WITHOUT PREJUDICE** defendant's motion to

16   dismiss plaintiffs' claims as to unpurchased products.

17   　　　**F.    Injunctive Relief**

18   　　　Plaintiffs seek injunctive relief to "stop Defendant's unlawful manufacture, marketing, and

19   sale" of the Products "to avoid or mitigate the risk of deceiving the public" into believing that the

20   Products do not pose "severe health risks for children."  (FAC ¶¶ 3, 10.)

21   　　　"For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual

22   and imminent, not conjectural or hypothetical.'"  *Davidson v. Kimberly-Clark Corp.*, 873 F.3d

23   1103, 1113 (9th Cir. 2017) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

24   Previously deceived consumers can show a threat of future harm meriting injunctive relief where

25   they plausibly alleges, for instance, that they (1) "will be unable to rely on the product's advertising

26   or labeling in the future, and so will not purchase the product although she would like to," or

27   (2) "might purchase the product in the future, despite the fact it was once marred by false

28

United States District Court
Northern District of California

1    advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was

2    improved."  *Id.* at 970.

3         Under *Davidson*, some courts have found plaintiffs adequately pled a threat of future harm

4    where the allegations include the intent to repurchase defendant's products if corrective changes to

5    the products' composition or labeling were made.  *See, e.g.*, *Brown v. Food for Life Baking Co.*,

6    658 F. Supp. 3d 732, 742 (N.D. Cal. 2023) (finding sufficient plaintiffs' allegation that they would

7    "likely purchase [defendant's desserts] again in the future" if "the labels were reformulated to

8    provide non-misleading information"); *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848,

9    863 (N.D. Cal. 2022) (finding threat of future harm sufficiently alleged where plaintiffs pled that

10   they might purchase defendant's alcoholic seltzers in the future if they are reformulated or labeled

11   without unlawful and misleading nutrient claims, or might purchase but pay less for the products).

12        By contrast, some courts have found plaintiffs failed to plead a plausible threat of future

13   harm when the conditions for repurchase cannot be realized, or when plaintiffs can verify a

14   product's representations by checking its packaging.  *See, e.g.*, *Renn v. Otay Lakes Brewery, LLC*,

15   2024 WL 331616, at *1 (S.D. Cal. 2024) (no standing where plaintiff's allegation that "there is no

16   safe level of alcohol consumption" indicated "[p]laintiff ha[d] not plausibly alleged a desire or

17   intent to purchase the Products with their levels of alcohol" "even if the health and wellness

18   representations were removed"); *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *3–5 (N.D. Cal.

19   2019) (no standing where plaintiffs did "not allege they want or intend to purchase the Products in

20   the future" and could check the ingredient list of defendant's energy bars to determine whether they

21   contain white chocolate).

22        Here, plaintiffs' allegations more closely resemble *Renn* rather than *Brown* or *Marek*.

23   Plaintiffs allege that they would like to repurchase the Products once they no longer "pose severe

24   health risks for children," or if the Products' labels "allowed Plaintiff[s] to make a fully informed

25   purchase decision."  (FAC ¶¶ 3, 13(b), 14(b), 15(b).)[13]  Yet, in the same pleading, plaintiffs are

26   adamant that there is no safe level of microplastic exposure, and that risk of harm increases with

27

28        [13] Plaintiffs do *not* allege, as in *Marek*, that they might purchase the products but pay less for
     them in the future.

United States District Court
Northern District of California

1  increased exposure.  Thus, plaintiffs alleged conditions for repurchase are contradictory—there is

2  no plausibly alleged scenario where defendant's polypropylene products, under plaintiffs'

3  allegations, are safe in their ordinary use, nor would a change in labelling appear to change

4  plaintiffs' assessment of the risks at this point.  Nor is there a proposed "reformulation" of the

5  Products in the complaint to render it safe.[14]

6        Plaintiffs thus fail to plausibly allege actual and imminent injury meriting injunctive relief.

7  The Court **GRANTS** defendant's motion to dismiss plaintiffs' claims of injunctive relief as

8  requested.[15]  To the extent plaintiffs can allege other relief not inconsistent with its pleading, the

9  Court will consider.

10 **III.     MOTION TO STRIKE**

11       Motions to strike are disfavored.  *See Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965

12 (9th Cir. 2014).  This Court rarely grants them.  At best, the purpose of a Rule 12(f) motion to strike

13 is to "avoid the expenditure of time and money that must arise from litigating spurious issues by

14 dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970,

16     [14] Hypothetically, the Products could not contain plastics, but as a different product, namely those that are made with "glass or silicone."  Mot. at 33.

18     [15] Defendant's other counterarguments do not persuade.  *One*, defendant argues that plaintiffs' allegations are vague and lack specificity as to when the purchase would be made.  *See In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4 ("Under Ninth Circuit authority, a some day intention—without any description of concrete plans, or indeed even any specification of *when* the some day will be—does not support a finding of the actual or imminent injury that Article III requires." (cleaned up)) (summary judgment).  Plaintiffs' allegations, read in a light most favorable to them, indicate a willingness to repurchase at any time as needed, should the deceptive deficiencies in the product labeling be corrected.  *Two*, defendant argues that plaintiffs are now fully aware of and can easily identify and avoid the alleged risk.  *See* FAC ¶¶ 28–41.  However, mere awareness of deceptive conduct is precisely the standard the Ninth Circuit declined to endorse in *Davidson*.  *See Davidson*, 873 F.3d at 1114.  At any rate, the Court will not assume on a motion to dismiss that a consumer can identify by sight or touch the composition of a plastic product and gauge its susceptibility to microplastic leaching under ordinary conditions of use or otherwise consent to a different level of use.  *Three*, defendant argues that plaintiffs are also unlikely to re-purchase the Products because their children are now too old to use baby bottles, given the purchases were made in early 2022 through early 2023.  (Mot. at 15 n.11.)  Parents can have multiple children.

1  973 (9th Cir. 2010) (internal quotation marks and citations omitted).  Rule 12(f) "does not authorize

2  a district court to strike a claim for damages on the ground that such damages are precluded as a

3  matter of law."  *Id.* at 971.  Whether to grant a motion to strike ultimately lies within the discretion

4  of the district court.  *See id.* at 973.

5  Here, defendant moves to strike plaintiffs' request for nationwide class certification based

6  on differences in states' unjust enrichment and breach of warranty laws.

7  In a different procedural posture, the Ninth Circuit in *Mazza v. American Honda Motor Co.,*

8  *Inc.*, the Ninth Circuit overruled a district court's decision to certify a nationwide class involving

9  unjust enrichment claims, noting that the "elements necessary to establish a claim for unjust

10  enrichment . . . vary materially from state to state."  666 F.3d 581, 591 (9th Cir. 2012).  However,

11  some courts have "consistently declined to apply *Mazza* at the motion to dismiss stage to strike

12  nationwide class allegations."  *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *3 (N.D.

13  Cal. Sept. 8, 2016).  Nor is there a blanket rule that nationwide classes for unjust enrichment claims

14  are inherently "uncertifiable."  *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal.

15  2012).

16  In short, defendant's arguments are premature and the Court is not inclined to encourage the

17  use of a disfavored motion for this purpose.  The Court **DENIES** defendant's motion to strike

18  plaintiffs' requests for nationwide class certification.

19  **IV.    CONCLUSION**

20  For the reasons set forth above, defendant's motion is **GRANTED IN PART AND DENIED IN**

21  **PART WITH LEAVE TO AMEND**.  In summary:

22  • Counts 1, 2 and 3, more precisely, the fraud-based theories of UCL, FAL, and

23  CLRA violations fail.

24  ○ As to affirmative misrepresentations, plaintiffs' allegations fail for a failure

25  to plead reliance on both the "BPA FREE" and "#1 Pediatrician

26  Recommended" labels.  Leave to amend is granted.

27  ○ As to fraudulent omissions, plaintiffs' allegations fail for failure to plausibly

28  allege (i) an unreasonable safety hazard and/or (ii) duty to disclose and

defendant's actual knowledge.  Any amendment of plaintiffs' "central function" theory under the duty to disclose is futile.  Leave to amend is therefore granted only as to the unreasonable safety hazard theory.

- Count 4, plaintiffs' breach of warranty claims also fail for a failure to plead reliance on both the "BPA FREE" and "#1 Pediatrician Recommended" labels.  Leave to amend is granted.

- Count 5, plaintiffs' unjust enrichment claim may be pled in the alternative.

- As to injunctive relief, plaintiffs fail to plausibly allege actual and imminent injury and standing for claims as to unpurchased products.  Thus, the motion to strike in this regard is granted with leave to amend.

- As to the nationwide class allegations, the Court declines to strike the allegations due to variances in state-law requirements to establish unjust enrichment, finding that question better suited for resolution at the class certification stage.

Within twenty-one (21) days of the date of this Order, plaintiffs may file an amended complaint, if any, remedying the claims dismissed in this Order.  Defendant shall respond with fourteen (14) days of plaintiffs' filing.  Further, plaintiffs shall comply with the Court's Standing Order ¶ 13.  Parties shall not renew arguments already made and resolved in this Order.  Nor may defendant assert new arguments that could have been asserted in the first instance.

A case management conference is hereby scheduled for July 7, 2025, at 2:00 p.m. via videoconference.

This terminates Docket No. 33.

**IT IS SO ORDERED.**

Dated:  April 29, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**